**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JUAN LOPEZ,
*on behalf of himself, FLSA Collective Plaintiffs,*
*and the Class,*

        Plaintiff,

v.                                        20-cv-9113 (LTS) (BCM)

THERMO TECH MECHANICAL INC.,
GOWKARRAN BUDHU and SHANTI BUDHU,

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS' COUNSEL AND**
**DEFENDANTS**

Lee Litigation Group, PLLC
C. K. Lee, Esq. (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

# **TABLE OF CONTENTS**

EXHIBIT LIST .................................................................................................................................ii

TABLE OF AUTHORITIES ......................................................................................................... iii

I.  INTRODUCTION ............................................................................................................... 1

II. BACKGROUND ................................................................................................................. 1

III. APPLICABLE LEGAL STANDARDS ............................................................................. 2

   A. 28 U.S.C. § 1927................................................................................................... 2

   B. Court's Inherent Power to Sanction ...................................................................... 3

IV. DEFENDANTS' COUNSEL AND DEFENDANTS UNREASONABLY DELAYED THE PROCEEDINGS BY PRODUCING AN ARBITRATION AGREEMENT WITH WHICH THEY FAILED TO COMPLY ................................................................................................................ 4

V.  THE TIMING OF DEFENDANTS' CONDUCT SHOWS DILATORY TACTICS AND BAD FAITH ............................................................................................................................... 6

VI. SANCTIONS ARE WARRANTED AGAINST DEFENDANTS' COUNSEL AND DEFENDANTS ........................................................................................................................ 8

VII. FEES AND COSTS INCURRED BY PLAINTIFF'S COUNSEL AS A RESULT OF THE CONDUCT OF DEFENDANTS AND THEIR COUNSEL ......................................................... 9

VIII. CONCLUSION................................................................................................................. 11

# EXHIBIT LIST

**Exhibit 1-A**  Plaintiff's Arbitration Agreement, from Defendants' Employee handbook

**Exhibit 1-B**  Plaintiff's Arbitration Demand filed with the AAA

**Exhibit 2**  The Arbitrator's Order regarding suspension and termination of Plaintiff's Arbitration and AAA's correspondence of the same, dated May 17, 2022 and May 18, 2022, respectively.

**Exhibit 3**  AAA's correspondence regarding the appointment of Arbitrator Sheindlin and Defendants obligation to promptly pay required fees, dated November 8, 2021

**Exhibit 4**  Email correspondence between counsel for the parties and AAA regarding Defendants' consent to the appointment of a new arbitrator in the Arbitration, dated, November 1, 2021, through November 4, 2021.

**Exhibit 5**  Email correspondence between counsel for the parties regarding Defendants' objections to the Arbitrator's fees, dated April 21, 2022.

**Exhibit 6**  Correspondence from Plaintiff's counsel to Arbitrator, dated April 18, 2022, regarding Defendants' failure to comply with the Arbitrator's April 5, 2022 Order.

**Exhibit 7**  The Stipulation of voluntary dismissal filed in the federal action, dated July 7, 2021.

**Exhibit 8**  Email correspondence between counsel for the parties regarding the unconscionability of Defendants' arbitration agreement, dated June 23, 2021 through June 30, 2021.

**Exhibit 9**  Email correspondence between counsel for the parties regarding Arbitrator Scheindlin's reduced fees, dated May 17, 2022.

**Exhibit 10**  Copies of invoices for Mr. Lee's services.

**Exhibit 11**  Detailed billing of all hours, expenses and fees incurred by counsel for Plaintiff.

# TABLE OF AUTHORITIES

**Cases**

*Baiul v. NBC Sports*, 708 Fed. App'x 710 (2d Cir. 2017).................................................................. 9

Carrasco v. Sompo America Insurance Services LLC et al., Case No. 17-cv-7319 (S.D.N.Y.) .... 9

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) ...................... 3

Chang v. Philips Bryant Park LLC et al., Case No. 17-cv-8816 (S.D.N.Y.).................................. 9

Delijanin v. Wolfgang's Steakhouse Inc. et al., Case No. 18-cv-7854 (S.D.N.Y.) ....................... 10

Estrada v. Kingsbridge Marketplace Corp. et al., Case No. 17-cv-9890 (S.D.N.Y.) .................... 9

*Forman v. Mt. Sinai Med. Ctr.,* 128 F.R.D. 591 (S.D.N.Y. 1989) .................................................. 3

Fteja v. Nusret New York LLC et al., Case No. 19-cv-429 (S.D.N.Y.) ......................................... 9

Garcia v. Roti Restaurants, LLC, Case No. 18-cv-9820 (S.D.N.Y.) .............................................. 9

Gonzalez v. Scalinatella, Inc., No. 13 Civ. 3629 (S.D.N.Y.) ....................................................... 10

*In re Air Disaster at Lockerbie*, 144 F.R.D. 613 (E.D.N.Y. 1992)................................................. 3

*Int'l Controls & Measurements Corp. v. Watsco, Inc.*, 853 F. Supp. 585 (N.D.N.Y. 1994) .......... 3

*Morgan v. Sundance, Inc.*, 2022 U.S. LEXIS 2514 (2022) ............................................................ 4

*Oliveri v. Thompson,* 803 F.2d 1265 (2d Cir. 1986).................................................................. 3, 8

Pacheco et al. v. Chickpea at 14th Street Inc. et al., Case No. 18-cv-251 (S.D.N.Y.) ................. 10

Patterson v. Chipotle Mexican Grill, Inc. et al., Index No. 54446/2020 (Westchester County) .. 10

*Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71 (2d Cir. 2000)...................................................... 2

*Riley v. City of N.Y.*, No. 10-CV-2513(MKB), 2015 U.S. Dist. LEXIS 16025 (E.D.N.Y. Feb. 10, 2015)............................................................................................................................................ 3

Salazar v. P.V. Bakery, Inc. et al., Case No. 18-cv-4153 (S.D.N.Y.)............................................. 9

*Sibley v. Jamestown Bd. of Pub. Utils.*, 2012 U.S. Dist. LEXIS 134166 (W.D.N.Y. Sep. 19, 2012) ........................................................................................................................................................ 3

Tavera v. 18 Greenwich Avenue, LLC et al., Case No. 19-cv-8258 (S.D.N.Y.) ........................... 9

Tendilla et al. v. Pearlstone Restaurant, LLC et al., Case No. 18-cv-8900 (S.D.N.Y.).................. 9

Vazquez et al. v. Eataly America Inc. et al., Index No. 156933/2018 (New York County)......... 10

*Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009)............................. 3, 4

Yi Mei Ke v. J R Sushi 2 Inc., 2022 U.S. Dist. LEXIS 22776 (S.D.N.Y. Feb. 7, 2022)............ 8, 9

**Statutes**

28 U.S.C. § 1927................................................................................................................... 1, 2, 11

29 U.S.C. § 216(b) ............................................................................................................... 8

## I.  INTRODUCTION

Plaintiff hereby submits his Memorandum of Law in Support of Plaintiff's Motion for Sanctions Against Defendants' counsel and Defendants, pursuant to 28 U.S.C. § 1927, and the Court's inherent power to sanction. Plaintiff requests the relief specified in the Proposed Order attached as **Exhibit A** to Plaintiff's Notice of Motion.

## II.  BACKGROUND

Plaintiff filed the Complaint with this Court on October 30, 2020, alleging violations of Fair Labor Standards Act and New York Labor Law, and failure to pay prevailing wages on public works projects (Dkt. No. 1). Plaintiff brought these claims as a class and collective action on behalf of all non-exempt HVAC (Heating, Ventilation, and Air Conditioning) workers employed by Defendants during the relevant statutory period.

Nearly a year after Plaintiff's filing of the Complaint, following extensive litigation and appearances before the Court, Defendants produced to Plaintiff an employee handbook signed by Plaintiff with an arbitration provision. Although troubled by the delay, Plaintiff voluntarily dismissed the matter without prejudice on July 1, 2021, (Dkt. Nos. 43 and 44), so that Plaintiff could seek relief in an arbitration forum. Your Honor So Ordered the parties' stipulation on July 7, 2021. (Dkt. No. 45).

Pursuant to the arbitration agreement, attached as **Exhibit 1-A,** on July 26, 2021, Plaintiff initiated an arbitration proceeding with the American Arbitration Association ("AAA"), Case No. 01-21-0004-9203 (the "Arbitration"). See **Exhibit 1-B.** This Arbitration was suspended by AAA on May 17, 2022, due to Defendants' non-payment of required arbitration fees, and was ultimately terminated by AAA on June 17, 2022, for the same reason. See **Exhibit 2**. Defendants were well aware of their obligation to pay required arbitration fees yet did not do so. See **Exhibit 3.** Instead,

1

several months into the Arbitration, Defendants contested the arbitrator's fees (*See* **Exhibit 4**), notwithstanding that they had consented to the appointment of Arbitrator Scheindlin several months previously and did not raise any issues with her fees then or during the litigation. *See* **Exhibit 5.** Significantly, it was not until after Plaintiff raised several discovery related issues regarding Defendants' production, and Arbitrator Scheindlin Ordered Defendants to produce specific documents related to Plaintiff's contract rates (*See* **Exhibit 6**), did Defendants contest Scheindlin's fees and cause the Arbitration to come to a complete halt by failing to pay such required fees. *See* **Exhibit 2**.

The dilatory and bad faith conduct of Defendants and Defendants' counsel has prejudiced Plaintiff and potential collective and class members from obtaining relief due to Defendants' wage violations. Such willful conduct has multiplied the proceedings, frustrated the litigation process and the Court should order Defendants and their counsel to bear all of Plaintiff's fees and costs incurred to date. Even such relief does not completely compensate Plaintiff and Class member who have suffered years of delay and still are looking at continued litigation to prosecute their unresolved claims. This conduct warrants sanctions.

### III.   APPLICABLE LEGAL STANDARDS

#### A.  28 U.S.C. § 1927

"Under § 1927, '[a]ny attorney or other person admitted to conduct cases . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) (quoting 28 U.S.C. § 1927). The principal purpose of Section 1927 is to deter attorneys from engaging in conduct that causes unnecessary delay or generates needless proceedings. *Sibley v. Jamestown Bd.*

*of Pub. Utils.*, 2012 U.S. Dist. LEXIS 134166, at *2-3 (W.D.N.Y. Sep. 19, 2012). "An award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *In re Air Disaster at Lockerbie*, 144 F.R.D. 613, 616 (E.D.N.Y. 1992) (quoting *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir. 1986)). However, "a district judge need not apply a subjective standard of bad faith, but may find bad faith where an attorney engages in conduct that is so objectively unreasonable that he necessarily must have been acting in bad faith." *Forman v. Mt. Sinai Med. Ctr.,* 128 F.R.D. 591, 599 (S.D.N.Y. 1989) (citing *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir. 1986)).

### B. Court's Inherent Power to Sanction

A court has the inherent power to sanction a party "for conduct which abuses the judicial process." *Riley v. City of N.Y.*, No. 10-CV-2513(MKB), 2015 U.S. Dist. LEXIS 16025, at *19-20 (E.D.N.Y. Feb. 10, 2015) (citing *Chambers v. NASCO, Inc*., 501 U.S. 32, 44-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). "Inherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Id*. (citing *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009)). "Although not capable of precise definition, clear and convincing evidence has been described as evidence which produced in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.'" *Id*. (citing *Int'l Controls & Measurements Corp. v. Watsco, Inc*., 853 F. Supp. 585, 587 (N.D.N.Y. 1994)). "A finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings." *Id*. (citing *Scivantage*, 564 F.3d at 114). "Conduct is entirely without color when it lacks any legal or factual basis; it is colorable when it

3

has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue." *Scivantage*, 564 F.3d at 114.

### IV. DEFENDANTS' COUNSEL AND DEFENDANTS UNREASONABLY DELAYED THE PROCEEDINGS BY PRODUCING AN ARBITRATION AGREEMENT WITH WHICH THEY FAILED TO COMPLY

When the parties were first litigating this matter before Your Honor, approximately eight months into the litigation, after the parties had appeared before the Court and also initiated motion practice, Defendants produced to Plaintiff an employee handbook signed by Plaintiff with an arbitration provision. Significantly, although this handbook was in Defendants' possession during the entire course of the litigation, it was not produced until the parties were already engaged in the briefing of Plaintiff's motion for conditional collective certification. Plaintiff was not the only employee of Defendants to sign such an agreement and to whom the employee handbook was provided. Rather Defendants knew or should have known about the existence of the arbitration agreement in their employee handbook as it appears to be a standard form used in their onboarding process, and the employee handbook is regularly maintained by Defendants. Defendants' production of the arbitration agreement at such a late stage in the litigation can only be the result of dilatory motives and bad faith.

Despite the bad faith and since it was prior to the Supreme Court's case *Morgan v. Sundance, Inc.*, 2022 U.S. LEXIS 2514 (2022), issued on May 23, 2022, which precluded defendants from arbitrating if they delayed in enforcement (to avoid cherry-picking), Plainitff agreed to the arbitration agreement, and Plaintiff brought his claims to AAA on an individual basis. However, notwithstanding their contractual obligations, Defendants further acted in bad faith by refusing to comply with the arbitration agreement that they sought to enforce, and the terms to which the parties stipulated when Plaintiff voluntarily dismissed his claims in federal court—

4

namely, that Defendants would waive the provision requiring the parties to equally bear the costs of the arbitration. *See* **Exhibit 7**, *see also* Dkt No. 45. This provision is plainly unconscionable, and if not for Defendants' agreement to waive it, Plaintiff would have contested its enforcement on such grounds. In fact, prior to the stipulated dismissal of Plaintiff's federal case, counsel for Plaintiff raised the unconscionability of Defendants' arbitration provision with Defendants' counsel. Defendants' counsel consulted with Defendants regarding Plaintiff's issues with the arbitration provision and the parties eliminated it from the arbitration agreement. *See* **Exhibit 8**. But for Defendants eliminating this unconscionable provision, Plaintiff would have remained in federal court and contested the provision.

Defendants initially complied and paid all costs of the arbitration, but once significant fees began to accrue, Defendants thereafter refused to comply with the agreement and they further unreasonably delayed the litigation. In reliance on Defendants' waiver and empty promise to arbitrate Plaintiff's claims, Plaintiff was prejudiced by voluntarily dismissing the federal action rather than contesting the enforceability of the arbitration provision and pursuing his class claims in federal court as he initially intended to do. Plaintiff paid initial arbitration filing fee, and Defendants stipulated to paying the remaining arbitration costs. *See* **Exhibit 7**. Despite these clear terms, several months into the Arbitration litigation, Defendants objected to the arbitrator's fees and failed to comply with their contractual obligation. Their failure to comply with their contractual payment obligations necessitated numerous interactions and correspondence with AAA, and ultimately brought the Arbitration to a complete standstill—effectively foreclosing Plaintiff's opportunity for relief in that forum and to re-file in this Court.

As Defendants consented to the appointment of Arbitrator Scheindlin (*See* **Exhibits 5**), they were on notice of the Arbitrator Scheindlin's rates and their obligation to pay the Arbitrator's

fees long before they raised issues about such fees with AAA several months into the Arbitration litigation. *See* **Exhibit 3**. Additionally, Defendants paid their share of required fees to commence the Arbitration, and only later objected to paying additional required fees. Following Defendants' objections to the fees, Arbitrator Scheindlin offered to reduce her fees. *See* **Exhibit 9**. However, Defendants still did not fulfil their contractual obligation to pay their share of the fees, resulting in AAA suspending and ultimately terminating the Arbitration. *See* **Exhibit 2**. Similar to Defendants' production of the Plaintiff's arbitration agreement late in the litigation, Defendants allowed the Arbitration to continue for several months before ultimately engaging in conduct that prevented Plaintiff from continuing his litigation in that forum. Such conduct not only prejudiced Plaintiff, but also delayed the litigation and multiplied the proceedings, forcing Plaintiff to incur legal fees and costs. Further, given the timing, it was clearly undertaken with bad faith and unreasonably resulted in Plaintiff's counsel expending significant costs and expenses unnecessarily.

**V.  THE TIMING OF DEFENDANTS' CONDUCT SHOWS DILATORY TACTICS AND BAD FAITH**

During the course of the federal litigation and the Arbitration, Defendants have engaged in a pattern of conduct that can only be understood as being motivated by bad faith, and dilatory purposes aimed at evading prosecution for their wage and hour violations. In the first instance, Defendants produced the arbitration agreement not at the outset of the litigation, although they were in possession of it at that time, but rather after Plaintiff had already moved for conditional collective certification. Thus, rather than potentially having to ultimately answer for wage and hour violations committed against a class of employees, Defendants requested an extension of time to oppose Plaintiff's motion for conditional collective certification, and shortly thereafter, produced an arbitration agreement signed by Plaintiff.

This pattern of evading prosecution for their wage and hour violations was similarly continued in the Arbitration. As has been detailed, Defendants produced an arbitration agreement and then failed to comply with it. Equally significant and demonstrative of their bad faith is the timing of their objections to Arbitrator Scheindlin's fees and non-compliance with the arbitration agreement.

Significantly, Defendants did not take issue with fees and their required payment obligations at the outset of the Arbitration. Instead, they paid the fees and AAA commenced the Arbitration. The first time Defendants raised issues to the arbitrator's fees was on April 11, 2022. This was after AAA notified Defendants on April 8, 2022, that a fee deposit was due—which Defendants should have already known they were required to pay, and more importantly after the April 5, 2022 status conference at which Plaintiff requested leave to file a motion for summary judgment, and Arbitrator Scheindlin Ordered Defendants to: (1) respond to Plaintiff's deficiency letter, served on March 21, 2022; and (2) supplement their document production with Plaintiff's wage records and documentation related to the public works contracts. This is a wage and hour case. Plaintiff's wage records and the documents related to Plaintiff's rates for the public contracts on which he worked are critical issues. However, Defendants did not comply with the Arbitrator's Order, but instead circumvented compliance and the production of public works contracts by objecting to the Arbitrator's fees and causing the Arbitration to come to an abrupt stop.

Defendants and their counsel should be sanctioned not only because they prejudiced Plaintiff, but also because they multiplied the proceedings and engaged in a demonstrated pattern of conduct motivated by bad faith, dilatory tactics and abuse of judicial processes. Plainly, the conduct of Defendants' counsel has "multiplie[d] the proceedings in [this] case unreasonably and

7

vexatiously" by forcing Plaintiff to expend valuable resources in his attempt to obtain relief for Defendants' violations. 28 U.S.C. § 1927.

## VI. SANCTIONS ARE WARRANTED AGAINST DEFENDANTS' COUNSEL AND DEFENDANTS

"To impose sanctions against an attorney under either § 1927 or its inherent authority, the court must find that 'the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" Yi Mei Ke v. J R Sushi 2 Inc., 2022 U.S. Dist. LEXIS 22776, *23 (S.D.N.Y. Feb. 7, 2022) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). Here, Defendants' counsel is liable because they assisted Defendants' bad faith maneuvering to delay this litigation and cause Plaintiff and Plaintiff's counsel to waste substantial resources. The first instance of such maneuvering was when Defendants' and Defendants' counsel apprised Plaintiff of the arbitration agreement in June 2021, over three months after answering the complaint and after Plaintiff had already drafted and filed both a first amended complaint and a motion for 216(b) collective certification. Notwithstanding this, Plaintiff agreed to take the case to arbitration if Defendants agreed to waive what they agreed was an unconscionable provision that would have imposed massive arbitration costs on Plaintiff.

Even if Defendants' counsel believed at this time that their clients were going to honor their waiver of the unconscionable provisions, counsel later learned the truth when Defendants refused to pay for the arbitration costs pursuant to the AAA rules that <u>Defendants themselves</u> had selected, in a further ploy to delay the resolution of Plaintiff's claims and drain the resources of Plaintiff's counsel.  At this point, Defendants' counsel was obligated to terminate their relationship with clients who had demonstrated that they were prepared to just ignore their own stipulated agreements whenever it served their interests. But Defendants' counsel did not do this and

8

therefore endorsed their client's bad faith conduct. Accordingly, they are just a liable for Defendants' misconduct as Defendants' themselves. *See id*. at *23 (the "standard [for sanctions] is met if an attorney becomes 'aware of the meritless nature of [his client's] claims,' yet continues to pursue the litigation") (quoting *Baiul v. NBC Sports*, 708 Fed. App'x 710, 715 (2d Cir. 2017)).

## VII. FEES AND COSTS INCURRED BY PLAINTIFF'S COUNSEL AS A RESULT OF THE CONDUCT OF DEFENDANTS AND THEIR COUNSEL

Given Defendants' and their counsel's bad faith conduct, and their deliberate frustration and multiplication of the proceedings, causing an unreasonable delay and the wasting of Plaintiff's, the Arbitrator's and the Court's time and resources, the Court should sanction Defendants and Defendants' counsel for the attorneys' fees and costs Plaintiff has spent on the proceedings to date, including this sanctions motion, currently amounting to $137,506.80.

At all times, Plaintiff was entitled to an arbitration on his claim. For Defendants to produce the arbitration agreement, proceed to arbitration, consent to the appointment of Arbitrator Scheindlin and then ultimately, months later, decide to contest the fees charged to delay proceedings, evidence why LLG is entitled to its legal fees incurred as an appropriate sanction.

Counsel has substantial experience prosecuting wage and hour class and collective actions. Counsel has been routinely approved for a rate of $800 per hour, in connection with both class and individual actions. See Estrada v. Kingsbridge Marketplace Corp. et al., Case No. 17-cv-9890 (S.D.N.Y.), Tendilla et al. v. Pearlstone Restaurant, LLC et al., Case No. 18-cv-8900 (S.D.N.Y.), Chang v. Philips Bryant Park LLC et al., Case No. 17-cv-8816 (S.D.N.Y.), Fteja v. Nusret New York LLC et al., Case No. 19-cv-429 (S.D.N.Y.), Garcia v. Roti Restaurants, LLC, Case No. 18-cv-9820 (S.D.N.Y.), Carrasco v. Sompo America Insurance Services LLC et al., Case No. 17-cv-7319 (S.D.N.Y.), Salazar v. P.V. Bakery, Inc. et al., Case No. 18-cv-4153 (S.D.N.Y.), Tavera v. 18 Greenwich Avenue, LLC et al., Case No. 19-cv-8258 (S.D.N.Y.), Patterson v. Chipotle

9

Mexican Grill, Inc. et al., Index No. 54446/2020 (Westchester County), and Pacheco et al. v. Chickpea at 14th Street Inc. et al., Case No. 18-cv-251 (S.D.N.Y.), Vazquez et al. v. Eataly America Inc. et al., Index No. 156933/2018 (New York County), Delijanin v. Wolfgang's Steakhouse Inc. et al., Case No. 18-cv-7854 (S.D.N.Y.). For the avoidance of doubt, it should be noted that such cited cases involve fees that were based on a percentage of the fund method with a lodestar cross check. But see, Gonzalez v. Scalinatella, Inc., No. 13 Civ. 3629 (S.D.N.Y.), among others, in which the hourly rates of Lee Litigation Group counsel and paralegals were reduced.

Given the competitive nature of the legal practice, it is imperative that courts award well regarded Plaintiff's firms for appropriate rates. Lee Litigation Group rarely takes on hourly work, given its specialty in Plaintiff-side class litigation, but when it does, Mr. Lee's hourly rate is currently between $1,200 to $1,600 per hour. Such a rate is barely competitive with current partner rates at bulge bracket firms who are billing approximately $2,000 per hour. Sample invoices billed to defense clients, showing the rates that LLG clients pay are attached as **Exhibit 10** to the Declaration of C.K. Lee. Mr. Lee's hourly rate is appropriate because has worked at some of the most prestigious law firms in New York City, and is an Ivy League graduate who speaks English, Mandarin, and Spanish. Mr. Lee has been recognized as one of the hardest working and talented Plaintiff-side attorneys in New York City.

The combined impact of rising inflation and the COVID-19 Pandemic has decimated the market and caused operating expenses to skyrocket, which in turn has negatively impacted LLG. When courts are unwilling to adequately compensate plaintiff-side attorneys their hourly rates (that are competitive with prevailing market rates), it is low-wage workers that will lose out, as they will ultimately not be able to find firms to prosecute their rights. It also motivates Defendants to game the system, force plaintiff's lawyers to unnecessarily incur fees and costs, and suffer negative

repercussions. This Court must preclude Defendants from their notorious actions and sanction them appropriately.

For the foregoing reasons, sanctions in the amount of $137,506.80. representing the time spent by LLG in this matter are appropriate. Attached as **Exhibit 11** is a detailed billing of all hours, expenses and fees incurred by counsel for Plaintiff.

### VIII.   CONCLUSION

For all the foregoing reason, the Court should impose sanctions on Defendants and Defendants' counsel pursuant to 28 U.S.C. § 1927, and the Court's inherent power to sanction, including reasonable attorneys' fees for the time spent writing the instant Motion for Sanctions.

Dated: July 15, 2022

        Respectfully submitted,

        */s/ C.K. Lee*
        By:  C.K. Lee, Esq.

        **LEE LITIGATION GROUP, PLLC**
        C.K. Lee (CL 4086)
        Anne Seelig (AS 3976)
        148 West 24th Street, Eighth Floor
        New York, NY 10011
        Tel.: 212-465-1188
        Fax: 212-465-1181

        *Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*