# EXHIBIT 1-B

7/26/2021                                AAA WebFile

Home

# THANK YOU!

YOUR AAA CASE NUMBER : 01-21-0004-9203

Thank you for choosing American Arbitration Association.
Please print a copy of this page for your record.

Print

**Basic Filing Information:**

CK Lee
2124651188
cklee@leelitigation.com
Arbitration

| | | |
|---|---|---|
| **Filing Fee Charged** | $300.00 | **Documents received on 2021-07-26 17:27:54.0 Eastern Time** |

## What's Next

- This acknowledges receipt of your documentation on 2021-07-26 17:27:54.0 Eastern Time. This notice does not constitute the AAA's initiation of the case or satisfaction of all AAA administrative filing requirements. An email copy of this

AAA Arbitration
Employment Arbitration Rules

---

JUAN LOPEZ,
*on behalf of himself, FLSA Collective Claimants, and the Class,*

    Claimant,

        v.

THERMO TECH MECHANICAL, INC.,
GOWKARRAN BUDHU, and SHANTI BUDHU

    Respondents.

Case No.:

**Arbitration Demand**

---

Claimant JUAN LOPEZ ("Claimant" or "Claimant LOPEZ"), hereby files this Arbitration Demand against Respondents THERMO TECH MECHANICAL, INC., GOWKARRAN BUDHU, and SHANTI BUDHU (collectively, "Respondents") and states as follows:

## INTRODUCTION

1.     Claimant LOPEZ alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Respondents: (1) unpaid wages for all hours worked due to improper rounding down of hours, (2) liquidated damages and (3) attorneys' fees and costs.

2.     Claimant LOPEZ further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Respondents: (1) unpaid wages for all hours worked due to improper rounding down of hours, (2) liquidated damages, (3) statutory penalties, and (4) attorneys' fees and costs.

1

3. Claimant LOPEZ also alleges that Respondents failed to pay him and Class members prevailing wages for work done on multiple public works projects. In doing so, Respondents (1) breached the implied covenant of good faith and fair dealing with Claimant and Class Members and (2) violated Claimant's and Class Members' rights as third-party beneficiaries of the public works contracts between Respondents and the relevant government instrumentality.

4. Claimant LOPEZ is a resident of Queens County, New York.

5. Corporate Respondent THERMO TECH MECHANICAL, INC. is a business specializing in the installation, maintenance, and repair of heating, ventilation, and air conditioning (HVAC) systems. Its principal place of business and address for service of process are at 2323 Haviland Avenue, Bronx, NY, 10462.

6. Individual Respondent GOWKARRAN BUDHU is the president and owner of THERMO TECH MECHANICAL, INC.

7. GOWKARRAN BUDHU exercised functional control over the business and financial operations of THERMO TECH MECHANICAL, INC. and over the terms and conditions of Claimant's employment and those of FLSA Collective Claimants and Class Members. With respect to Claimant, FLSA Collective Claimants, and Class Members, GOWKARRAN BUDHU exercised his power to (and also delegated to managers and supervisors the power to) (i) fire and hire, (ii) determine rate and method of pay, (iii) supervise and control employee work schedules or conditions of employment, (iv) maintain employment records, and (iv) otherwise affect the quality of employment. Individual Respondent GOWKARRAN BUDHU had ultimate authority over employee-related decisions, including personnel, workplace conditions, payroll, and wage and hour policies concerning Claimant, FLSA Collective Claimants and Class Members.

8. Individual Respondent SHANTI BUDHU is the accountant of THERMO TECH MECHANICAL INC.

9. SHANTI BUDHU exercised functional control over the business and financial operations of THERMO TECH MECHANICAL, INC. and over the terms and conditions of Claimant's employment and those of FLSA Collective Claimants and Class Members. With respect to Claimant, FLSA Collective Claimants, and Class Members, SHANTI BUDHU exercised her power to (and also delegated to managers and supervisors the power to) (i) fire and hire, (ii) determine rate and method of pay, (iii) supervise and control employee work schedules or conditions of employment, (iv) maintain employment records, and (iv) otherwise affect the quality of employment. Individual Respondent SHANTI BUDHU had ultimate authority over employee-related decisions, including personnel, workplace conditions, payroll, and wage and hour policies concerning Claimant, FLSA Collective Claimants and Class Members.

10. At all relevant times, Respondents were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

11. At all relevant times, the work performed by Claimant was directly essential to the business operated by Respondents.

## STATEMENT OF FACTS

12. From in or about January 2016 until in or about August 2018, Claimant LOPEZ was employed by Respondents as an HVAC installation worker.

13. Throughout this period, Claimant LOPEZ usually worked five days a week, most often from 7:00 am to 4:00 pm. He worked at different sites, and the pay varied according to the project, but it often hovered around $23.00/hr.

3

14. Up until around May 2018, Claimant and other employees of Respondents would fill in their timesheets manually, writing down start and end times on a standard form provided by Respondents.

15. However, Respondent Shanti Budhu, the company's accountant, would prevent Claimant and other employees from writing down the precise time they finished working. If Claimant tried to do so, Respondent Shanti Budhu would tell him, "No, we don't do that here." Instead, Claimant was required to round down his time worked to the nearest half-hour. So, if he finished working at 4:25, he would have to write down 4:00. Respondent Shanti Budhu would tell Claimant, "you have to complete the half-hour for it to count."

16. As a result, several times a week Claimant would have to work 10-25 minutes past his scheduled shift but would not be compensated for this.

17. The same thing would happen at the beginning of shifts. Claimant and other employees would often be required to begin working 5-10 minutes before their scheduled shift, but they would not be compensated for this extra time worked because it did not add up to a full half-hour.

18. Claimant and other employees would also be time-shaved through their meal breaks. Claimant would take only a 30-minute break, but Respondents would deduct a full hour from his time. The standard form on which employees wrote down their hours did not contain entries to track the actual time spent in lunch breaks, and Claimant was forced to add up his hours as though he had taken an entire hour for lunch, just as he and others were forced to pretend that they began and ended working exactly on the hour every day. *See* **Exhibit A** for an example of Claimant's timesheets.

19. Around May 2018, Respondents switched to an electronic time keeping system that did record the precise times Claimant and others began and ended work. However, Respondents would continue to time shave Claimant and other employees. For example, Claimant worked 38.75 hours in the week beginning May 21, 2018 and ending May 27, 2018. But his paycheck for that week was for only 38.44 hours. *See* **Exhibit B.** He worked 6.68 hours during the week beginning July 30, 2018 and ending August 5, 2018. But his paycheck for that week was for only 4.5 hours. *See* **Exhibit C**.

20. Through the foregoing policies, Respondents categorically reduced their employees' compensable hours every week. As a result, Claimant, FLSA Collective Claimants, and the Class were not paid compensation for all hours worked.

21. Claimant and Class members would sometimes have to work shifts lasting longer than ten (10) hours, but Respondents did not pay them a spread-of-hours premium as required under NYLL. For example, Claimant worked one shift lasting twelve (12) hours and two shifts lasting eighteen (18) hours during the week of July 24-29, 2017. But the calculations on his paystub did not reflect the spread-of-hours premium to which he was entitled. *See* **Exhibit D**.

22. Respondents also failed to provide Claimant, Collective Claimants, and Class members with wage and hour notices when they were hired or upon any change in their hourly wage. Respondents likewise failed to provide Claimant, Collective Claimants, and Class members with proper wage statements, since the wage statements they did receive did not accurately reflect all the hours they worked.

23. Respondents knowingly and willfully operated their business with a policy of not paying Claimant, FLSA Collective Claimants and the Class for all regular or overtime hours worked due to Respondents' policy of time shaving, in violation of the FLSA and/or the NYLL.

24. Much of the work Claimant performed was for public works projects funded by New York City government instrumentalities. Claimant did HVAC installation work at a number of public schools, including but not limited to:

    a. Bronx Envision Academy

    b. Martin Van Buren High School

    c. Sheepshead Bay High School

    d. Murry Bergtraum High School for Business Careers

    e. August Martin High School

    f. Hamilton Grange Middle School

25. Under NY Labor Law § 220(a), Respondents were required to pay prevailing wages to employees working on public works projects, including work in public schools. This obligation was either expressly included in or incorporated by reference into Respondents' contract with either a New York City government instrumentality (presumably, the Board of Education) or with any general contractor with which the government instrumentality had a contract.

26. While the prevailing wage for HVAC installation depends on the exact classification of the tasks undertaken, the prevailing wage for "Steamfitter" work is generally at least $40.00, and sometimes significantly higher, with supplemental benefits of around the same value.[1]

27. Claimant did not receive the prevailing wage he was owed, however. While the relevant public agency paid Respondents around $90/hour for Claimant's labor, Claimant only received around $23/hour (this varied with the project). Thus, he was paid less than prevailing

---

[1] See https://comptroller.nyc.gov/wp-content/uploads/documents/ConstructionWorkerSchedule-2019-2020.pdf

6

wage on public works projects. For example, Claimant spent at least part of each day of the week of July 24-28, 2017 working on a public works project at a public school, be it August Martin High School, P.S. X097, or Martin Van Buren High School. But his paystub shows that *none* of his hours that week were compensated at the prevailing wage required for public works contracts. The paystub lists prevailing wages (and supplemental benefits) as a category of earnings, but these entries are blank, showing that Claimant was paid only regular and overtime wages. *See* **Exhibit D**.

28. Whatever the exact prevailing wage Claimant and Class members were owed on various project, it was in every case well above the $23/hour they typically earned.

29. That Claimant and Class members were in fact owed prevailing wages for work done at Martin Van Buren High School is proven by **Exhibit E**, a form provided by the New York City School Construction Authority that lists a base wage of "55-88" for work at Martin Van Buren High School and provides a "HOTLINE" phone number for complaints regarding prevailing wages.

30. Throughout his employment with Respondents, Claimant regularly observed and spoke to his co-workers about Respondents' pay practices and policies. Based on Claimant's direct observations and conversations with other employees, FLSA Collective Claimants and Class Members, other employees were subjected to the same unlawful employment practices as Claimant, who were time shaved in the same manner as he. They also were not paid prevailing wages when they worked on public works projects.

31. Claimant retained Lee Litigation Group, PLLC to represent Claimant, FLSA Collective Claimants, and the Class in this litigation and has agreed to pay the firm a reasonable fee for its services.

## FLSA COLLECTIVE ACTION ALLEGATIONS

32. Claimant brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt HVAC installation, maintenance, and repair workers employed by Respondents on or after the date that is three (3) years before the filing of this Complaint ("FLSA Collective Claimants").

33. At all relevant times, Claimant and FLSA Collective Claimants are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Respondents' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them regular and overtime wages for all hours worked due to time shaving through the improper rounding down of hours. The claims of Claimant stated herein are essentially the same as those of FLSA Collective Claimants.

34. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Claimants are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Respondents. Notice can be provided to the FLSA Collective Claimants via first class mail to the last address known to Respondents.

## RULE 23 CLASS ALLEGATIONS

35. Claimant brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt HVAC installation, maintenance, and repair workers employed by Respondents on or after the date that is six (6) years (or a shorter period

8

depending on where the individual class member is located) before the filing of this Complaint (the "Class" or "Class Members").

37. At all relevant times, Claimant and Class Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Respondents' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in (1) a willful failure and refusal to pay them regular and overtime wages for all hours worked due to time shaving through the improper rounding down of hours, and (2) a willful failure to pay them prevailing wages for public works projects. The claims of Claimant stated herein are essentially the same as those of Class Members.

37. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Respondents. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Respondents' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Respondents. Notice can be provided by means permissible under F.R.C.P. 23.

38. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Respondents, there is no doubt that there are more than forty (40) Class Members in the Class.

39. Claimant's claims are typical of claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class or in separate actions. All Class Members were subject to the same corporate practices of

Respondents, as alleged herein, of (1) failing to pay them regular and overtime wages for all hours worked due to time shaving through the improper rounding down of hours and (2) failing to pay prevailing wages on public works projects.

40. Respondents failed to provide proper wage notices and failed to provide proper wage statements to Class Members in violation of the NYLL.

41. Respondents' corporate-wide policies and practices affected all Class Members similarly, and Respondents benefited from the same type of unfair and/or wrongful acts as to each Class Member. Claimant and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

42. Claimant is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Claimant is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Claimants in wage and hour cases.

43. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate Respondent. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing

the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Respondents and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

44. Respondents and other employers throughout the country violate their respective states' labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

45. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a) Whether Respondents employed Claimant and Class Members within the meaning of the NYLL and FLSA;

   b) What are and were the policies, practices, programs, procedures, protocols and plans of Respondents regarding the types of work and labor for which Respondents did not pay Claimant and Class Members properly;

   c) At what common rate, or rates subject to common methods of calculation, were and are Respondents required to pay Claimant and Class Members for their work;

d) Whether Respondents paid Claimant and Class Members for all hours worked given Respondents' policy of time shaving through the improper rounding down of hours;

e) Whether Respondents provided proper wage statements to Class Members per requirements of the NYLL;

f) Whether Respondents provided proper wage notices to Class Members per requirements of the NYLL;

g) Whether Respondents paid Class Members prevailing wages on public works projects and, if not, the difference between these wages and the wages actually received by Class Members.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

46. Claimant realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

47. At all relevant times, Respondents were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Claimant and FLSA Collective Claimants are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

48. At all relevant times, Respondents employed Claimant and FLSA Collective Claimants within the meaning of the FLSA.

49. At all relevant times, Respondents had gross annual revenues in excess of $500,000.

50. At all relevant times, Respondents had a policy and practice of failing to pay Claimant and FLSA Collective Claimants the full amount of wages due to a policy of rounding down hours worked to the nearest hour, in violation of the FLSA.

51. Records, if any, concerning the number of hours worked by Claimant and FLSA Collective Claimants and the actual compensation paid to Claimant and FLSA Collective Claimants should be in the possession and custody of Respondents. Claimant intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

52. Respondents knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Claimant and FLSA Collective Claimants for all hours worked, including overtime hours, when Respondents knew or should have known such was due.

53. Respondents failed to properly disclose or apprise Claimant and FLSA Collective Claimants of their rights under the FLSA.

54. As a direct and proximate result of Respondents' willful disregard of the FLSA, Claimant and FLSA Collective Claimants are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

55. Due to the intentional, willful, and unlawful acts of Respondents, Claimant and FLSA Collective Claimants suffered damages in an amount not presently ascertainable of unpaid regular and overtime wages, plus an equal amount as liquidated damages.

56. Claimant and FLSA Collective Claimants are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## **VIOLATION OF THE NEW YORK LABOR LAW**

57. Claimant realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

58. At all relevant times, Class Members were employed by Respondents within the meaning of the New York Labor Law §§ 2 and 651.

59. Respondents knowingly and willfully failed to pay Claimant and Class Members the full amount of regular and overtime wages as a result of time shaving through rounding down hours to the nearest hour worked, in violation of the New York Labor Law.

60. Respondents knowingly and willfully failed to provide Claimant and Class Members with proper wage statements as required under the New York Labor Law.

61. Respondents knowingly and willfully failed to provide Claimant and Class Members with proper wage and hour notices as required under the New York Labor Law.

62. Due to the Respondents' New York Labor Law violations, Claimant and Class Members are entitled to recover from Respondents unpaid wages due to time shaving through the unlawful rounding down of hours, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the New York Labor Law.

## COUNT III

## **BREACH OF CONTRACT**
**(Implied covenant of good faith and fair dealing)**

63. Claimant realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

64. Claimant and the Class entered into a contract with Respondents to sell their labor to Respondents.

65. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance ... This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract ... [T]he duties of good faith and fair dealing ... encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

66. Claimant and Class Members reasonably expected prevailing wages as one of the benefits of entering into a contract with Respondents, which were known to undertake public works projects. Claimant and Class Members reasonably understood that Respondents were agreeing to pay them all legally required wages.

67. Claimant and Class Members supplied their labor to Respondents as contractually required. But Respondents breached their contract with Claimant and Class Members when Respondents failed to pay them legally required prevailing wages.

68. As a result, Claimant and Class members have been damaged in an amount to be proven at trial. Respondent must pay this sum to Claimant and Class Members, along with an award of interests, costs, and attorneys' fees.[2]

---

[2] While Respondents' contractual breach originated in violations of Labor Law § 220, Claimant and Class Members do not bring their claims under Labor Law § 220. Accordingly, they were not required to exhaust administration remedies before bringing this action. *See Pesantez v. Boyle Envtl. Servs., Inc.*, 673 N.Y.S.2d 659, 661, 251 A.D.2d 11, 12, 1998 N.Y. App. Div. LEXIS 6382, *4-5 (1998) ("We note that while plaintiff class can proceed on its common-law breach of contract

15

## COUNT IV

## BREACH OF CONTRACT
**(Brought as third-party beneficiary)**

69. Claimant realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

70. When Respondents entered into a contract with the relevant government instrumentality (or its general contractor) to undertake public works, it agreed to pay employees prevailing wages. *See Wright v. Herb Wright Stucco, Inc.*, 72 A.D.2d 959, 960, 422 N.Y.S.2d 253, 254, 1979 N.Y. App. Div. LEXIS 14775, *4 (1979) ("Subsequent to 1894 contractors doing business in the public sector were required to include in the contract with the public owner a provision that they would pay their employees the prevailing rate of wage.").

71. Claimant and Class Members were the intended beneficiaries of this agreement.

72. Respondents' failure to pay Claimant and Class members the prevailing wage constitutes a material breach of Respondents' contract with the relevant government instrumentality.

As a result, Claimant and Class members have been damaged in an amount to be proven at trial. Respondents must pay this sum to Claimant and Class Members, along with an award of interests, costs, and attorneys' fees.

---

claims for underpayment of wages and benefits (*see, Fata v Healy Co.*, 289 NY 401), a private right of action for underpayment of wages does not exist under Labor Law § 220 until there has been an administrative determination pursuant to subdivision (8) that either has gone unreviewed or been affirmed in the claimants-employees' favor").

## **PRAYER FOR RELIEF**

WHEREFORE, Claimant, on behalf of himself, FLSA Collective Claimants, and Class members respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Respondents and their officers, agents, successors, employees, representatives, including any and all persons acting in concert with them as provided by law, prohibiting them from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid regular and overtime wages due under the FLSA and NYLL;

d. An award of liquidated damages as a result of Respondents' willful failure to pay wages pursuant to the FLSA;

e. An award of liquidated damages as a result of Respondents' willful failure to pay wages, pursuant to the NYLL;

f. An award of compensatory damages for Respondents' failure to pay prevailing wages, in an amount to be determined at trial;

g. An award of pre-judgment and post-judgment interest, costs, and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h. Designation of Claimant as the Representative of FLSA Collective Claimants;

i. Designation of this action as a class action pursuant to F.R.C.P. 23;

j. Designation of Claimant as Representative of the Class; and

k. Such other and further relief as this Court deems just and proper.

Dated: July 26, 2021

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By:   /s/ C.K. Lee

C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 1976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Claimant, FLSA Collective Claimants, and the Class*