UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUAN LOPEZ, *on behalf of himself and all others similarly situated*,<br><br>    Plaintiff,<br><br> -against-<br><br>THERMO TECH MECHANICAL INC., et al.,<br><br>    Defendant. | 20-CV-9113 (LTS) (BCM)<br><br>**MEMORANDUM AND ORDER** |

**BARBARA MOSES, United States Magistrate Judge.**

  Plaintiff Juan Lopez asserts claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, the New York Labor Law (NYLL), N.Y. Lab. Law § 650 *et seq.*, and New York common law against Thermo Tech Mechanical Inc. (Thermo Tech), which is in the business of installing, maintaining, and repairing heating, ventilation, and air conditioning (HVAC) systems; Gowkarran Budhu, its president and owner; and Shanti Budhu, its accountant. *See* Second Amended Complaint (SAC) (Dkt. 83) ¶¶ 1-3, 7-11. Now before the Court are two motions: (1) plaintiff's reinstated motion for conditional certification of an FLSA collective action pursuant to 29 U.S.C. § 216(b) and approval of a form of collective notice, and (2) plaintiff's letter-motion seeking an order compelling defendants to provide "classwide responses and documents" in discovery. Both motions are within the scope of my reference (Dkt. 10) pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). For the reasons that follow, the collective certification motion will be denied, while the discovery motion will be granted in part.

**I.  BACKGROUND**

  **A.  Plaintiff's Claims**

  Lopez worked at Thermo Tech from January 2016 to August 2018 as an HVAC installer. SAC ¶ 14; Lopez Decl. (Dkt. 27) ¶ 1. He usually worked five days per week, typically from 7:00

a.m. to 4:00 p.m., and was paid an average of $23 per hour, well above the minimum wage at that time. SAC ¶ 15; Lopez Decl. ¶ 2. However, he alleges that defendants violated the FLSA and the NYLL by failing to pay him for all of his hours worked, including some of his overtime hours, for which he was entitled to one and one-half times his regular hourly rate. SAC ¶¶ 1-2, 51-67.

According to plaintiff, defendants did this in three ways: initially, by "rounding down" his hours at the beginning and end of his shift, SAC ¶¶ 16-22, and by "time shaving" his lunch hour. *Id*. ¶¶ 22-24. Later, after Thermo Tech began using an electronic time keeping system, it accurately recorded all of the hours he actually worked, but on two occasions paid him for less than all of those hours. *Id*. ¶¶ 25-26. Plaintiff further alleges that defendants failed to provide "proper wage statements" and "proper wage and hour notices," as required by the NYLL, *id*. ¶ 27, 65-66, and paid him less than the statutorily-mandated "prevailing wage" when he performed HVAC installation work at public schools, in violation of Thermo Tech's contracts with the Board of Education (or other governmental entities), as well as the covenant of good faith and fair dealing implied therein. *Id*. ¶¶ 3, 29-34, 68-78.

B.  **Procedural History**

Plaintiff filed this action on October 30, 2020 (more than two years after his Thermo Tech employment ended). *See* Complaint (Dkt. 1). After filing a First Amended Complaint (FAC) (Dkt. 22) on May 17, 2021, plaintiff filed his motion for conditional certification of an FLSA collective on May 19, 2021 (Dkt. 25), supported by a memorandum of law (Pl. Mem.) (Dkt. 26) and the Declaration of Juan Lopez (Lopez Decl.) (Dkt. 27). Thereafter, defendants demanded that plaintiff arbitrate his claims in accordance with the arbitration provision in Thermo Tech's employee handbook, which defendants had produced along with its initial disclosures pursuant to Fed. R. Civ. P. 26(a). *See* Declaration of C.K. Lee (Lee Decl.) (Dkt. 56) Ex. 1-A. After some negotiation, *see id*. Ex. 8, the parties executed and submitted a stipulation, dated June 30, 2021, dismissing

2

plaintiff's claims without prejudice in favor of arbitration before the American Arbitration Association (AAA). (Dkts. 44, 45.) On July 26, 2021, plaintiff filed his statement of claim with the AAA. Lee Decl. Ex. 1-B.

On May 18, 2022, the AAA "suspended" the arbitration due to defendants' failure to deposit the required arbitrator and administrative fees prior to the hearing, Lee Decl. Ex. 2, and on June 14, 2022, acting on a request by plaintiff, the Hon. Laura Taylor Swain, Chief United States District Judge, restored this action to the Court's active calendar. (Dkt. 50.) On July 15, 2022, plaintiff filed a motion for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent power (Dkt. 54), supported by the Lee Declaration and a memorandum of law (Dkt. 55), arguing that defendants and their counsel unreasonably delayed this action, multiplied proceedings, and engaged in dilatory tactics by insisting upon arbitration and then refusing to pay the hearing fees, causing the parties to return to this Court almost one year later.[1] On December 2, 2022, Chief Judge Swain reinstated plaintiff's collective certification motion, "effective as of December 5, 2022." (Dkt. 65.) On January 6, 2023, defendants opposed that motion and cross-moved to dismiss the FAC pursuant to Fed. R. Civ. P. 12(c) (Dkt. 69), arguing that plaintiff failed to allege "a single, specific workweek" in which he was not paid for the overtime hours he worked, and therefore failed to allege any cognizable FLSA claim. Def. Mem. (Dkt. 70) at 1-2.

In his reply memorandum, plaintiff defended his FLSA claim as pled.  *See* Pl. Reply Mem. (Dkt. 75) at 2-6. Nonetheless, after the collective certification motion was fully briefed, plaintiff moved for leave to further amend his complaint (Dkt. 76) so that he could include "[a]dditional allegations regarding Defendants' unlawful rounding down and time shaving, which resulted in a failure to pay employees overtime compensation." Def. Mem. in Supp. of Mot. to Amend (Dkt.

---

[1] The sanctions motion remains pending and undecided.

77) at 2. I granted that motion on February 17, 2023 (Dkt. 82), thereby mooting the motion to dismiss, and plaintiff filed the SAC that same day. Although I also granted defendants leave to file a supplemental brief in opposition to the collective certification motion, "limited to issues arising from the new allegations in the SAC" (*id*.), no supplemental papers were filed. Defendants answered the SAC on March 17, 2023. (Dkt. 84.) On March 20, 2023, at plaintiff's request, I issued a revised discovery schedule, requiring the parties to complete fact discovery by December 15, 2023. (Dkt. 86.)

On May 10, 2023, plaintiff filed a discovery letter-motion complaining that, while defendants had produced "wage and hour records for Plaintiff that are both handwritten and also computer generated," Pl. Ltr. (Dkt. 88) at 3, they refused to produce information and documents concerning all "Covered Employees," defined to mean "all current and former . . . non-exempt HVAC installation, maintenance, and repair, workers employed by Defendants employed by Defendants on or after the date that is six (6) years before the filing of the Arbitration Demand." *Id*. at 1-2.[2] Plaintiff seeks this information in order to prepare a motion to certify a class, pursuant to Fed. R. Civ. P. 23, to pursue his NYLL and other state law claims. *Id*. at 3-4. In their opposition letter, filed on May 16, 2023, defendants seek a stay of all discovery pending the resolution of the collective certification motion, *see* Def. Ltr. (Dkt. 90) at 1-3, but do not address the specifics of the "classwide" discovery sought by plaintiff. Plaintiff filed a reply letter on May 18, 2023, opposing any stay and arguing that the discovery sought would not be burdensome because defendants operate a "single location" and the records were all maintained by the two individual defendants. Pl. Reply Ltr. (Dkt. 91) at 2-3.

---

[2] Elsewhere in the letter, plaintiff seeks discovery concerning events "at any time beginning six (6) years prior to the filing of the Complaint." Pl. Ltr. at 2.

## II.     COLLECTIVE CERTIFICATION MOTION

### A.     Standards

The FLSA provides that "any one or more employees" may bring an action against an employer "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To become parties to such an action, employees other than the named plaintiff must "opt in" by filing written consents in the court in which the action is brought. *Id.* "Although they are not required to do so by FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

Courts in this Circuit apply a "sensible" two-step method for determining whether to exercise this discretion. *See Myers*, 624 F.3d at 554-55. In the first step – commonly, if somewhat imprecisely, known as "conditional certification" – the named plaintiffs must make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law,'" *id.* at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)), at which point the trial court may send (or direct plaintiffs' counsel to send) a notice to potential opt-in plaintiffs. *Id.* At the second stage, which typically occurs after discovery is completed, the court determines whether the plaintiffs who opted in are in fact "similarly situated" to the named plaintiff. *Id.* If not, the court may "de-certif[y]" the collective and dismiss the opt-in plaintiffs' claims without prejudice. *Id.*

During the initial conditional certification stage, the requirement of a "modest factual showing" cannot be satisfied solely by "unsupported assertions" in the plaintiffs' pleading, *Myers*, 624 F.3d at 555, or by allegations made on "information and belief." *McGlone v. Cont. Callers, Inc.*, 867 F. Supp. 2d 438, 444 (S.D.N.Y. 2012). Evidence is required. *Id.*; *see also Cuaya v. VI*

5

*Dev. Grp., LLC*, 2020 WL 5494371, at *3 (S.D.N.Y. Sept. 10, 2020) ("[A] plaintiff must offer 'actual evidence of a factual nexus' between his situation and those of other allegedly similarly situated employees.") (quoting *Qing Gu v. T.C. Chikurin, Inc.*, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014)).  However, because the purpose of this first stage is "merely to determine *whether* 'similarly situated' plaintiffs do in fact exist," the named plaintiff has a low burden of proof. *Prizmic v. Armour, Inc.*, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006); *see also Damassia v. Duane Reade, Inc.*, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) ("[A] plaintiff's burden at this preliminary stage is 'minimal.'") (quoting *Wraga v. Marble Lite, Inc.*, 2006 WL 2443554, at *1-*2 (E.D.N.Y. Aug. 22, 2006)). A showing that plaintiff himself was "subjected to certain wage and hour practices at the defendants' workplace and to the best of [his] knowledge, and on the basis of [his] own observations, [his] experience was shared by members of the proposed [collective]," is a sufficient basis from which to infer the "common policy" required for conditional certification. *Cortes v. New Creators, Inc.*, 2015 WL 7076009, at *3 (S.D.N.Y. Nov. 12, 2015) (citing *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007)).

"Documents properly considered" in this inquiry "include plaintiff['s] 'own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.'" *Trinidad v. Pret A manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557-58 (S.D.N.Y. 2013) (quoting *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013)). "In an appropriate case, conditional collective certification may be based solely on the personal observations of one plaintiff." *Chen v. Dun Huang Corp.*, 2021 WL 5234421, at *4 (S.D.N.Y. Nov. 8, 2021); *Mei Rong Du v. Dingxiang Inc.*, 2020 WL 7404984, at *3 (S.D.N.Y. Dec. 17, 2020) (same).

B.     **Plaintiff's Showing**

In this case, plaintiff relies on his own declaration – which largely tracks his pleading – to show that he and other non-exempt workers at Thermo Tech "were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555.

Rounding Down. Until May 2018 (that is, during all but the last four months of his employment), Lopez and other Thermo Tech hourly employees filled out timesheets manually. SAC ¶ 16; Lopez Decl. ¶ 3. However, according to Lopez, defendant Shanti Budhu, the company's accountant, "would prevent me and others from writing down the exact time we stopped working." Lopez Decl. ¶ 3. The employees were instructed to "round down [their] time worked to the nearest half-hour." *Id.* "The same thing would happen at the beginning of shifts." *Id.* ¶ 4. This deprived plaintiff of pay "[s]everal time[s] a week," when he began work 5-10 minutes before his scheduled shift, or had to work for 10-25 minutes past his scheduled shift, because he was not permitted to record that time. *Id.* ¶¶ 3-4. Because plaintiff "was already regularly working overtime hours, the uncompensated time he spent working 'pre' and 'post' shift resulted in Defendants' failing to pay Plaintiff significant overtime wages." SAC ¶ 20.

Meal Break. Lopez and other Thermo Tech hourly employees were also "time-shaved through their meal breaks," in that their "hours were added up as though [they] had taken exactly an hour for lunch." SAC ¶ 23. Defendants were able to do this because, as plaintiff attests, "[t]he standard form on which we wrote down our hours did not contain entries to track the actual time spent in lunch breaks, and I was forced to add up my hours as though I had taken an entire hour for lunch." Lopez Decl. ¶ 5. In fact, Lopez "would always take only a 30-minute break" for lunch. *Id.*[3]

---

[3] The allegation that plaintiff was "regularly working overtime hours" appears only in the SAC, not the Lopez Declaration. However, Lopez does attest, under oath, that he usually worked "about

7

Reduction in Hours. Thermo Tech switched to an electronic timekeeping system in May 2018, which "did record the precise times Plaintiff and others began and ended work." SAC ¶ 25; Lopez Decl. ¶ 6. However, plaintiff states that on two occasions after the electronic system was introduced (June 1 and August 10, 2018), there was a discrepancy between his weekly paycheck (which he kept) and his underlying electronic timesheet for the corresponding week (which defendants produced in discovery). SAC ¶ 25 & Exs. B, C; Lopez Decl. ¶ 6 & Exs. B, C. As a result, plaintiff asserts, he was not paid for a total of approximately two and one-half hours of work.[4]

Other Employees.  In his declaration, Lopez attests that he "observed and spoke with [his] fellow non-managerial co-workers regarding our wages," including a driver named Ceballos and two mechanics named Juan and Junior,  and that it was "common knowledge that we were all being time shaved and deprived of prevailing wages." Lopez Decl. ¶ 10. In particular, plaintiff recalls "routinely discussing the time shaving with Junior as we were working together." *Id*. However, he

---

forty-five (45) hours per week, from 7:00 a.m. to 4:00 p.m., Lopez Decl. ¶ 2, and provides corroboration in the form of his handwritten timesheet for the week ending January 20, 2017, which shows a uniform start time of 7:00 a.m. each day (Monday through Friday) and a uniform end time of 4:00 p.m. each day. Lopez Decl. Ex. A, at ECF p. 2. The timesheet also shows a total of 8 hours for each day (implying a uniform one-hour lunch break) for a grand total of 40 hours worked that week. If, as plaintiff claims, he started work before 7:00 a.m, on one or more days (for which he was not compensated), finished work after 4:00 p.m  on one or more days (for which he was not compensated), or worked through a portion of his lunch break on one or more days (for which he was not compensated), then defendants' alleged timekeeping practices did in fact result in the non-payment of overtime wages that week.

[4] On June 1, plaintiff was paid for 38.44 hours, although his underlying electronic timesheet for the week of May 21-25 showed 38.75 hours worked – a difference of 0.31 hours. SAC Ex. B; Lopez Decl. Ex. B. On August 10, he was paid for 4.5 hours, although his underlying timesheet for the week of July 30-August 3 showed 6.68 hours worked – a difference of 2.18 hours. SAC Ex. C; Lopez Decl. Ex. C. Taken together, it appears that plaintiff was not paid for a total of 2.49 hours. However, because he worked less than 40 hours in each of these weeks, no overtime wages were unpaid or underpaid. I note as well that the electronic timesheets deduct 0.5 hours, at most, for "lunch break," rather than the full hour routinely deducted before the electronic system was installed. SAC Exs. B, C; Lopez Decl. Exs. B, C.

8

does not provide the dates (even approximately) or the specific contents of any of his conversations with Junior. As to the other two co-workers he identifies, plaintiff says even less, attesting only that at some point he spoke about "wages" with Ceballos and Juan. *Id.* Plaintiff does not state whether these conversations took place before or after Thermo Tech installed the electronic time keeping system. Nor does he reveal whether they had anything to do with defendants' alleged FLSA violations (as opposed to, for example, Thermo Tech alleged failure to pay the correct "prevailing wage" for public works projects, which is irrelevant to plaintiff's FLSA claim).

### C. Analysis

Defendants argue that plaintiff has not demonstrated the existence of a common policy or practice that violates the FLSA because he "never worked more than 40 hours in any workweek at any time relevant to his FLSA claim," and his "'gap-time' claims cannot sustain a cause of action under the FLSA." Def. Mem. at 11. A gap time claim is a claim by an employee who is compensated at or above the minimum wage and who seeks recovery only for "unpaid work under 40 hours," that is, work for which the employee is not entitled to overtime wages. *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). Defendants further argue that, even if plaintiff could pursue an individual FLSA claim, he has not met his burden of showing any common policy or practice that violates the FLSA, because his declaration consists primarily of "self-serving conclusory legal statements," lacks any detail concerning his coworkers' jobs, compensation, or conversations, and relies on payroll records that show, at best, scattered instances of minor calculation discrepancies. Def. Mem. at 12-15. Defendants add that those payroll records do not evidence "any violation at all" because a federal regulation, 29 U.S.C. § 785.48(b), expressly permits an employer to engage in . . . rounding to the nearest quarter." *Id.* at 15.

9

Defendants are correct that "the FLSA does not provide a cause of action for unpaid gap time." *Nakahata*, 723 F.3d at 201; *accord Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) ("An employee who has not worked overtime has no claim under FLSA for hours worked below the 40-hour overtime threshold, unless the average hourly wage falls below the federal minimum wage."); *Franck v. New York Health Care, Inc.*, 2022 WL 4363855, at *12 (S.D.N.Y. Sept. 21, 2022) (since plaintiffs were paid at or above the minimum wage, "any unpaid travel time otherwise compensable is only recoverable under the FLSA if it is alleged to be overtime"), *report and recommendation adopted,* 2023 WL 2474559 (S.D.N.Y. Mar. 11, 2023); *Ahmed v. Domino's Pizza LLC*, 2022 WL 2666005, at *6-*7 (S.D.N.Y. July 11, 2022) (dismissing FLSA claim for unpaid "off the clock" work hours because "[t]he FLSA does not provide a remedy for off-the-clock hours below 40 in a week unless the unpaid hours diluted the hourly wage to below the minimum wage"). However, as noted above, plaintiff now alleges that he "regularly" worked overtime hours. SAC ¶ 20. Moreover, he attests, under oath, that he typically worked five 9-hour shifts (7:00 a.m. to 4:00 p.m.) per week, and that – until Thermo Tech installed an electronic timekeeping system in May 2018 – he was not paid for his additional, unrecorded pre-shift and post-shift work, or for the half-hour that he spent working during his one-hour lunch period. Lopez Decl. ¶¶ 2-4. He also attests that the "rounding down" to which he was subjected was an explicit Thermo Tech policy, communicated to its non-exempt workers by the company's accountant, defendant Shanti Budhu. *Id*. ¶¶ 3-4.

That policy cannot be justified by § 785.48(b), which provides that, "where time clocks are used," an employer may permissibly "record[] the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour," so long as "this arrangement averages out so that the employees are fully compensated for all the time they actually

10

work." 29 C.F.R. § 785.48(b); *see also*, *e.g.*, *Vasquez v. Victor's Cafe 52nd St., Inc.*, 2019 WL 4688698, at *5 (S.D.N.Y. Sept. 26, 2019) (granting summary judgment to employer after finding that it "rounded each punch either up or down to the nearest quarter hour, and that the policy was consistent, neutral on its face, and neutral as applied"). In this case, plaintiff alleges that Thermo Tech (which had no time clock at the time) applied a distinctly non-neutral policy, in that it rounded its employees' time *down*, but not up, and that this regularly cost him as much as 25 minutes of paid time for pre-shift or post-shift work. SAC ¶¶ 17-19; *see also* Lopez Decl. ¶¶ 3-4. This practice constitutes "precisely the kind of unlawful, non-neutral rounding policy prohibited under § 785.48(b)." *Neor v. Acacia Network, Inc.*, 2023 WL 1797267, at *3 (S.D.N.Y. Feb. 7, 2023) (upholding claim based on allegations that employer "rounded up to the next quarter hour at clock-in and rounded down to the previous quarter hour at clock-out").

I therefore conclude that the SAC adequately alleges (and plaintiff's declaration corroborates) an FLSA claim for unpaid overtime wages. However, the limitations period for FLSA claims is three years for "willful" violations, *see* 29 U.S.C. § 255(a)), which means that plaintiff cannot seek damages under the FLSA for any period prior to October 30, 2017. Nor may he seek damages for any period after the date in May 2018 when defendants "switched to an electronic time keeping system that did record the time [Thermo Tech employees] worked precisely," Lopez Decl. ¶ 6, and that deducted only a half-hour for lunch. *Id*. Ex. B.[5] Once the electronic system was installed, plaintiff alleges only that from time to time, he was not paid all of his regular (non-overtime) hours. SAC ¶ 25; Lopez Decl. ¶ 6 & Exs. B, C. Consequently, plaintiff's

---

[5] Although plaintiff does not state when in May the electronic system was installed, the payroll records he submits show that it was functioning by Monday, May 21, 2018. *See* Lopez Decl. Ex. B (recording 8.039 hours for that day).

11

FLSA claim is viable for a period of less than seven months, from October 30, 2017 through (at the latest) Friday, May 18, 2018.[6]

The three-year limitations period applicable to FLSA claims is also fatal to plaintiff's collective certification motion. In an FLSA action, the statute of limitations continues to run with respect to each potential plaintiff's claim until that plaintiff "opts in" by filing a written consent to join the case. 29 U.S.C. § 256(b); *see also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198-99 (S.D.N.Y. 2006) (quoting *Sbarro,* 982 F. Supp. at 260 ("[O]nly by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled[.]"). Although plaintiff has made a "modest factual showing" that he and other Thermo Tech employees, who were told by Shanti Budhu to "round down" the hours on their hand-written timesheets, were "victims of a common policy or plan that violated the law," *Myers*, 624 F.3d at 555 (internal quotation marks omitted), that "common policy or plan" lasted only until defendants installed their electronic time keeping system in May 2018, after which plaintiff has not shown that *any* Thermo Tech employee (including himself) has a valid FLSA claim. Consequently, there are no potential opt-in plaintiffs whose FLSA claims would not be time-barred.

A district court may, in "rare and exceptional circumstances," apply the doctrine of equitable tolling to permit an opt-in plaintiff to join an FLSA collective more than three years after

---

[6] In his reply brief, plaintiff argues that although the two "short" paychecks he submitted – dated June 1 and August 10, 2018 – reflect only "unpaid gap-time [in] those particular weeks," they are "anomalous," and do not undercut his contention "that Defendants had a policy of time-shaving that, most weeks, resulted in the deprivation of overtime wages." Pl. Reply Mem. at 5. I am not persuaded. Plaintiff has received document discovery and was permitted to further amend his complaint for the specific purpose of stating a viable FLSA overtime claim, yet he remains unable to point to a single week in which he – or any other non-exempt Thermo Tech employee – worked more than 40 hours after the date on which defendants installed the electronic timekeeping system. On this record, the Court is not required to accept plaintiff's assertion, made only in his reply brief, that "most weeks" were different from the two he chose to highlight in his pleading and declaration. *See* SAC ¶ 25 & Exs. B, C; Lopez Decl. ¶ 6 & Exs. B, C.

the violation for which he sues. *She Jian Guo v. Tommy's Sushi Inc.*, 2014 WL 5314822, at *6 (S.D.N.Y. Oct. 16, 2014) (quoting *Phillips v. Generations Family Health Ctr.,* 723 F.3d 144, 150 (2d Cir. 2013)). Because "equitable tolling is considered a drastic remedy," *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011), it is typically applied only "where a plaintiff has been 'prevented in some extraordinary way from exercising his rights,'" *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (quoting *Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)), such as when the defendant has concealed the plaintiff's cause of action or – in the FLSA context – where the court grants a long-pending collective certification motion. *See*, *e.g.*, *Cuaya*, 2020 WL 5494371, at *13 (collecting cases and declining to toll the statute where the collective certification motion was decided seven months after it was filed and three months after it became fully briefed).

Plaintiff argues that this case presents the necessary "rare and exceptional" circumstances for equitable tolling, because defendants "belatedly discovered an arbitration agreement, forcing Plaintiff to initiate arbitration proceedings, and then decided they did not wish to pay their legally mandatory share of the arbitration costs, forcing Plaintiff to reinstate the action in this Court." Pl. Reply Mem. at 10. This argument fails because – among other things – the FLSA limitations period expired (at the latest) on May 18, 2021, three years after defendants installed the electronic time keeping system that recorded employee time "precisely." Lopez Decl. ¶ 6. Plaintiff filed his collective certification motion the next day, May 19, 2021. Since the potential opt-in plaintiffs' FLSA claims were already time-barred when the certification motion was filed – before defendants "forc[ed] Plaintiff to initiate arbitration proceedings" or engaged in any other conduct that had the effect of delaying a certification decision – they cannot be revived through tolling. *See Julian v. Les Par.*, 2018 WL 6434524, at *3 (E.D. Mich. Dec. 7, 2018) ("Equitable tolling does not operate

13

to revive an expired limitations period."); *Beckett v. Universal Int'l Music B.V.*, 2015 WL 13918143, at *6 (C.D. Cal. Aug. 17, 2015) ("equitable tolling can only suspend the running of a statute that still has time to run; it cannot revive a statute which has already run out") (internal quotation marks and citation omitted); *Lewis v. United Air Lines, Inc.*, 117 F. Supp. 2d 434, 441 (D.N.J. 2000) ("Equitable tolling functions to halt an already running limitations period that has not yet expired; it does not function to revive a stale claim."). Under these circumstances, it would be a misuse of this Court's discretion to authorize the sending of FLSA notices and opt-in forms to any other present or former Thermo Tech employees.

### III.   DISCOVERY MOTION

Plaintiff's NYLL claims, like his other state law claims, are subject to a six-year statute of limitations. *See* NYLL §§ 198(3), 663(3); *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 260 (S.D.N.Y. 2008) ("New York's statute of limitations for breach of an express or implied contract is six years") (citing N.Y. C.P.L.R. § 213(2)). Moreover, although the Second Circuit has not spoken on the question, many district courts within New York have held that "gap time" claims are actionable under the NYLL. *See, e.g.*, *Bueno v. Buzinover*, 2023 WL 2387113, at *4 n.4 (S.D.N.Y. Mar. 7, 2023); *Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, 2018 WL 1513628, at *10 (E.D.N.Y. Mar. 27, 2018), *as amended* (Mar. 29, 2018); *Cromwell v. New York City Health & Hosps. Corp.*, 983 F. Supp. 2d 269, 271 (S.D.N.Y. 2013). The failure of plaintiff's collective certification motion under the FLSA therefore does not preclude him from seeking to certify his state law claims pursuant to Rule 23. Such a motion would require him to establish, among other things, numerosity, commonality, typicality, and that common issues prevail over individual issues, as required by Rule 23(a)(1)-(4). In anticipation of such a motion, plaintiff is entitled to reasonable "discovery concerning class issues." *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, 2007 WL 1521117, at *3 (S.D.N.Y. May 24, 2007) ("Pre-certification discovery is often necessary

in order to provide the court with sufficient information to determine whether certification is appropriate.").

"Discovery permitted for this purpose 'must be sufficiently broad in order that the plaintiffs have a realistic opportunity to meet [the Rule 23(a)] requirements,' while ensuring that defendants are 'protected from discovery which is overly burdensome, irrelevant, or which invades privileged or confidential areas.'" *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 490-91 (S.D.N.Y. 2016) (quoting *Rahman*, 2007 WL 1521117, at *3). Although plaintiffs often seek the names and addresses of putative class members at this stage, many courts refuse those requests "out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification." *Dziennik v. Sealift, Inc.*, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) (collecting cases).

Here, plaintiff's Interrogatory No. 1 asks for the names and contact information, including emails and telephone numbers, of every non-exempt HVAC installation, maintenance, and repair worker employed by Thermo Tech for the past eight years (since "the date that is six (6) years before the filing of the Arbitration Demand"). Pl. Ltr. at 1. As in *Benavides*, however, plaintiff has "made no showing that communication with individual members of the putative class is necessary to support [his] assertions under Rule 23," 166 F. Supp. 3d at 492, and consequently is not entitled to production of their contact information. *Id.*; *see also Hernandez v. NHR Hum. Res., LLC*, 2021 WL 2535534, at *19 (S.D.N.Y. June 18, 2021) (denying similar request for "contact information for all putative Rule 23 class members").

Nor will defendants be required to answer plaintiff's detailed, multi-party Interrogatory No. 2, which asks them to list, for each "Covered Employee," his or her occupation, detailed weekly schedule, regular and overtime rate, "an explanation of the basis of pay showing the monetary

15

amount paid on a per hour, per day, and per week, respectively," and similarly detailed payroll information. Pl. Ltr. at 2. To the extent this information is relevant to plaintiff's potential class certification motion, it can be obtained more economically from defendants' payroll records and related documents. Consequently, in response to Document Requests Nos. 1 and 9, the Court will require defendants to produce, for all "Covered Employees," their pay stubs/checks, their underlying time records (whether kept manually or electronically), their NYLL wage notices and wage statements, and any employee manuals, memos, or other documents of general application (whether or not signed by the Covered Employees) describing their job duties, hours, wages, and/or required timekeeping obligations.

Because plaintiff has raised express and implied contract claims alleging that Thermo Tech employees were not paid "prevailing wages" on public works projects, defendants must also produce, in response to Document Requests 10 and 11, *see* Pl. Ltr. at 2, documents sufficient to show the "prevailing wages" and supplemental benefits that Thermo Tech was required to pay its employees for work on for each such project undertaken on or after October 30, 2014, as well as the wages and benefits actually paid for such work. The Court expects the parties to meet and confer promptly and in good faith to determine which documents, in defendants' possession, custody, and control, will satisfy this obligation. Production of the documents described above should be made within 30 days of the date of this Order.

## IV.   CONCLUSION

For the reasons set forth above, plaintiff's motion for conditional certification of an FLSA collective (Dkt. 25) is DENIED, Plaintiff's letter-motion to compel classwide discovery (Dkt. 88) is GRANTED IN PART, to the extent described above. Defendants' request for a partial discovery stay pending the outcome of the collective certification motion (Dkt. 90) is DENIED AS MOOT.

The deadline for the parties to complete fact discovery, including depositions, remains **December 15, 2023**.

Dated: New York, New York
       May 31, 2023

                                        **SO ORDERED**.

                                        _____

                                        **BARBARA MOSES**
                                        **United States Magistrate Judge**