UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JUAN LOPEZ,

        Plaintiff,

-v-                                          No. 20-CV-9113-LTS-BCM

THERMO TECH MECHANICAL INC., et al.,

        Defendants.

-------------------------------------------------------x

## MEMORANDUM ORDER

Plaintiff Juan Lopez brings this action against his former employers, Thermo Tech Mechanical Inc. ("Thermo Tech"), Gowkarran Budhu, and Shanti Budhu (collectively, "Defendants"), under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 et seq., and New York common law, alleging various wage and hour violations. Following the termination, on account of Defendant's failure to pay fees, of an arbitration proceeding into which the parties had entered, and the subsequent reopening of this case, Plaintiff requests that the Court impose sanctions on Defendants pursuant to 28 U.S.C. section 1927 and the Court's inherent authority. (See docket entry no. 54 (the "Motion")). The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331. The Court has considered carefully the parties' submissions, and, for the following reasons, Plaintiff's Motion is denied.

## BACKGROUND

Plaintiff worked at Thermo Tech as an HVAC installer from January 2016 to August 2018. (Docket entry no. 83 ("SAC") ¶ 14.) Plaintiff filed this action in October 2020,

more than two years after his employment with Thermo Tech ended.  (Docket entry no. 1.) Defendants' counsel entered their notices of appearance in February 2021 (docket entry nos. 12 and 13) and, in March 2021, Defendants produced to Plaintiff a set of initial disclosures, which included an employee handbook that Plaintiff had signed during his employment with Thermo Tech.  (Docket entry no. 59 ¶ 3.)  The employee handbook contained an arbitration provision, requiring that any claims "arising out of or relating to the employment relationship . . . shall be settled by arbitration," conducted by the American Arbitration Association in New York. (Docket entry no. 59-2 ¶ 10.)  It further provided that "the parties shall initially bear the cost of arbitration equally," but that the prevailing party shall later "be entitled to reimbursement for its share of cost and reasonable attorneys' fees."  (Id.)

        The parties agreed to arbitrate Plaintiff's claims before the AAA, and signed a stipulation of voluntary dismissal in the instant case, agreeing that the arbitration of Plaintiff's claims would go forward before the AAA and that Plaintiff's claims in this case would be dismissed without prejudice.  (Docket entry no. 45.)  The stipulation of dismissal also provided that the parties would "agree to waive" the provision of the arbitration agreement which stated that the parties would initially bear the cost of arbitration equally.  (Id.)  On July 26, 2021, Plaintiff made his initial filing with the AAA.  (Docket entry no. 56-2.)  On September 3, 2021, Defendants made an initial payment of $1,900 to the AAA, and the matter was assigned an arbitrator.  (Docket entry no. 59 ¶ 16-17.)  The parties engaged in the arbitration for several months, exchanged discovery, and conducted depositions.  (Id. ¶ 19-21.)

        On April 8, 2022, the AAA requested that Defendants make an additional fee payment of $25,000.  (Id. ¶ 20-21.)  Defendants informed the AAA that it was not "economically feasible" for their client to pay that amount and, over the next month, Defendants exchanged

"multiple phone calls and emails" with the AAA requesting that a lower-cost arbitrator be appointed. (Id. ¶ 21-23.) Defendants also informed Plaintiff that the arbitrator's fees were "prohibitively expensive" and that their client "simply cannot afford" to pay the fees, which they assert are greater than the total liability in this case. (Docket entry no 56-5.) On May 18, 2022, the AAA suspended the arbitration due to Defendants' nonpayment of fees. (Docket entry nos. 58 and 59 ¶ 24.) On June 1, 2022, Defendants submitted a formal application for the appointment of a new arbitrator with lower fees. (Docket entry no. 59-9.) The AAA did not respond to Defendants' request. On June 14, 2022, this Court granted Plaintiff's motion to reopen this case. (Docket entry no. 50.) Plaintiff's present Motion seeks an award of sanctions in light of Defendants' non-payment of the arbitration fees.

DISCUSSION

Plaintiff moves for sanctions under both 28 U.S.C. section 1927 and the Court's inherent authority. Section 1927 authorizes courts to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. A court also maintains "inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78 (2d Cir. 2000) (citation omitted). "Sanctions under the court's inherent power are appropriate when a party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Walker v. Smith, 277 F. Supp. 2d 297, 301 (S.D.N.Y. 2003) (citation omitted). The only "meaningful difference" between an award of sanctions under section 1927 and one made pursuant to a court's inherent power is that awards under section 1927 can only be made against "attorneys or

other persons authorized to practice before the courts, while an award made under the court's inherent power may be made against an attorney, a party, or both." Enmon v. Prospect Cap. Corp., 675 F.3d 138, 144 (2d Cir. 2012).

Thus, to impose sanctions "under either authority, a court must find *clear evidence* that (1) the offending party's . . . [actions] were entirely without color, and (2) the . . . [party acted] in bad faith—that is, [was] 'motivated by improper purposes such as harassment or delay.'" Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (emphasis added, citation omitted). Both of these elements "must be supported by a high degree of specificity in the factual findings," and "bad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" Enmon, 675 F.3d at 143 (citations omitted). Conduct is considered "without color" when it "lacks any legal or factual basis; it is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue." Wolters Kluwer Fin. Servs. Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009).

Plaintiff argues that Defendants' conduct is sanctionable in several respects, asserting that Defendants acted in bad faith by: (1) failing to produce the employee handbook until 8 months into the litigation; (2) refusing to comply with the arbitration agreement that they themselves sought to enforce; and (3) not raising their objection to the arbitration fees until months after the initiation of the arbitration. Defendants argue that they acted upon reasonable factual and legal bases.

Plaintiff first argues that Defendants acted in bad faith by waiting until 8 months after the initiation of this litigation to produce the employee handbook, which contained the key

arbitration provision. Defendants, however, argue that their delay in production of the handbook was reasonable and was, in fact, mostly due to Plaintiff's own delay.

The Court concludes that the timing of Defendants' disclosure of the employee handbook does not warrant sanctions, as there is no indication that Defendants acted with unreasonable delay or intentionally dilatory tactics. As Defendants note, although Plaintiff filed the Complaint in October 2020 (docket entry no. 1), litigation did not begin in earnest until December 2020 / January 2021 because Plaintiff waited approximately 45 days to effectuate service of process upon Defendants. (See docket entry no. 9.) Defendants' counsel appeared in this action on February 10, 2021 (docket entry nos. 12 and 13), and Defendants produced their initial set of discovery disclosures, which included the employee handbook, on March 10, 2021 (docket entry no. 59 ¶ 3).

Thus, Defendants' counsel produced the employee handbook only one month after appearing in this action—which does not constitute an unreasonable delay. Typically, courts will not impose sanctions on parties who delay discovery or document production unless the delay was intentionally obstructive or in violation of a court order—neither of which is the case here. See, e.g., Source Enterprises, Inc. v. Tanners Ave. Corp., No. 04-CV-1788-HB, 2004 WL 2471536, at *4-5 (S.D.N.Y. Nov. 3, 2004) (imposing sanctions on defendant for its "unashamed violations of numerous discovery orders," which included ignoring several relevant documents requests); Apex Oil Co. v. Belcher Co. of New York, Inc., 855 F.2d 1009, 1019–20 (2d Cir. 1988) (affirming award of sanctions on defendant for failing to comply with the plaintiff's reasonable discovery requests on three separate occasions); Izzo v. ING Life Ins. & Annuity Co., 235 F.R.D. 177, 189 (E.D.N.Y. 2005) ("Courts in this jurisdiction have held that [] repeated failure to produce documents, particularly after the entry of a court order directing

production of the documents, constitutes bad faith on the part of defendant's counsel."). Nor is Defendants' failure to raise the issue of arbitration until several months after their initial document production indicative of vexatious or bad faith behavior designed only to delay the proceedings.

Next, Plaintiff argues that Defendants acted in bad faith by refusing to comply with arbitration (i.e., by failing to pay their required arbitration fees), and by waiting until months after arbitration had begun to raise objections to the fee rates. Plaintiff notes that Defendants stopped paying their fees several months into the arbitration, ultimately causing the arbitration to be suspended. Plaintiff argues that he suffered prejudice as a result of these tactics, and that he would not have voluntarily dismissed his federal action had he known Defendants would impede the arbitration by failing to pay their fees. Defendants argue that they did not act in bad faith by failing to pay the fees, but that their client (who is a small business owner) simply could not afford the $25,000 fee requested. Defendants also assert that they did not intentionally delay the proceedings, as they promptly raised their fee objection (and made Plaintiff aware of such objection) after being informed of the fee.

The Court concludes that Defendants' non-payment of arbitration fees does not merit sanctions. Plaintiff has made no persuasive showing that Defendants' non-payment was undertaken for purpose of delay—rather, as represented in email communications between Defendants, Plaintiff, and the AAA—Defendants "simply [could not] afford" to pay the $25,000 fee amount, which they believed was greater than the total liability in this case. (Docket entry no 56-5; 56-10.) There is also no indication in the record that Defendants knew about the fee amount at an earlier time but delayed raising an objection, notwithstanding Plaintiff's suggestion to the contrary. Defendants represent that they "first learned about the $25,000 advancement on

April 8, 2022" in an email from the AAA, and they responded three days later by stating that the amount was not "economically feasible" for their client.  (Docket entry no. 59 ¶ 20 – 21; docket entry no. 59-7.)  Over the next month, Defendants kept in consistent communication with the AAA about this fee matter, reiterating their inability to pay and requesting the appointment of a new arbitrator with a lower fee requirement.  (Docket entry no. 59 ¶ 20 – 25.)

While it is regrettable that the arbitration was ultimately suspended due to Defendants' non-payment, Plaintiff has not shown that Defendants' conduct was motivated by bad faith or a desire to cause undue multiplication or delay of proceedings.  Courts in this district have held that a party's non-payment of arbitration fees is not sanctionable unless there is clear indication that such non-payment was motivated by bad faith; and a party's legitimate inability to pay the costs of arbitration does not qualify as bad faith.  See, e.g., Salazar v. Bahche, Inc., No. 21-CV-5257-AMD-VMS, 2023 WL 2349589, at *3 (E.D.N.Y. Mar. 3, 2023) (denying sections motion that was brought based on defendants' non-payment of arbitration fees, noting that the defendants' failure to pay their fees did not "rise to the level of bad faith" because the defendants "were in difficult financial situations and could not bear the cost of arbitration," and the defendants' "explanation for the non-payment of fees was repeatedly related to plaintiff's counsel"); Polit v. Glob. Foods Int'l Corp., No. 14-CV-7360-JPO, 2016 WL 632251, at *2 (S.D.N.Y. Feb. 17, 2016) (denying sanctions motion that was brought based on defendant's non-payment of arbitration fees, even though defendant had "demand[ed] arbitration and then default[ed] in the arbitration proceeding," which necessitated that the plaintiff reopen his case in federal court).  In sum, because there is no clear evidence that Defendants acted in bad faith, sanctions are inappropriate, under either section 1927 or this Court's inherent authority.  Plaintiff's Motion is denied.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion is denied. This Memorandum Order resolves docket entry number 54. This case remains referred to Magistrate Judge Moses for general pretrial management.

SO ORDERED.

Dated: New York, New York
August 29, 2023

<u>/s/ Laura Taylor Swain</u>
LAURA TAYLOR SWAIN
Chief United States District Judge
