**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------

JUAN LOPEZ,
*on behalf of himself, FLSA Collective Plaintiffs*
*and the Class*,

                Plaintiff,

            -against-           Case No. 1:20-cv-09113

THERMO TECH MECHANICAL, INC.,
GOWKARRAN BUDHU, and SHANTI BUDHU,

                Defendants.

-------------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23**

C.K. Lee, Esq.
Lee Litigation Group, PLLC
148 West 24th Street, 8th Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs*
*and the Class*

## TABLE OF CONTENTS

EXHIBITS ............................................................................................................. ii

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ........................................................................... 1

I.   PLAINTIFF'S NEW YORK LABOR LAW CLAIMS ................................. 1

   A.   Failure to Pay Proper Wages Due to Impermissible Rounding ..................... 3

   B.   Failure to Pay Proper Wages Due to Time Shaving ........................................ 8

   C.   Failure to Pay Prevailing Wages ................................................................... 12

   D.   Failure to Provide Proper Wage and Hour Notices ....................................... 14

   E.   Failure to Provide Proper Wage Statements ................................................. 15

II.   PLAINTIFF SATISFIES ALL THE REQUIREMENTS OF RULE 23 .......... 16

   A.   Proposed Class Is Identifiable and Ascertainable ........................................ 18

   B.   The Class Is So Numerous that Joinder Is Impracticable .............................. 18

   C.   Commonality and Typicality Requirements Are Met .................................... 19

   D.   Plaintiff(s) Will Adequately Represent the Class ......................................... 22

   E.   Common Questions of Law and Fact Predominate ....................................... 23

   F.   Class Treatment Is Superior to Other Alternatives ....................................... 25

   G.   Plaintiff's Counsel Should Be Appointed as Class Counsel ......................... 25

III.   CONCLUSION ............................................................................................ 26

## EXHIBITS

(All Exhibits listed below are attached to the Declaration of C.K. Lee, Esq.)

**Exhibit 1**      Proposed Notice and Consent Form

**Exhibit 2**      Deposition transcript for Defendant Gowkarran Budhu, dated September 28, 2023

**Exhibit 3**      Plaintiff's timesheets for 2016, produced by Defendants

**Exhibit 4**      Plaintiff's timesheets for 2017, produced by Defendants

**Exhibit 5**      Plaintiff's timesheets for 2018, produced by Defendants

**Exhibit 6**      Sampling of Class Members' time sheets from 2016 – 2020, showing Defendants' unlawful rounding

**Exhibit 7**      Spreadsheet illustrating a sampling of deficiencies in Defendants' production of time sheets and wage statements for Plaintiff and Class Members

**Exhibit 8**      Sampling of Defendants' company-wide weekly payroll data for 2016, 2017, 2019, and 2020

**Exhibit 9**      Sampling of Class Members' time sheets showing Defendants' meal break time shaving of 1 hour or less

**Exhibit 10**     Sampling of Class Members' time sheets showing Defendants' meal break time shaving of more than 1 hour

**Exhibit 11**     Sampling of Class Members' time sheets showing Defendants' failure to pay all prevailing wages due

**Exhibit 12**     Copy of Defendants' Company Insurance Policy Schedule for 2019

**Exhibit 13**     List of class and collective action cases where Plaintiff's counsel has served as lead counsel

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ........................................................ 7

*Ansari v. New York Univ.*, 179 F.R.D. 112 (S.D.N.Y. 1998) ...................................................... 19

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ............................... 21

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000).......................... 22

*Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144 (S.D.N.Y. 2002)................................ 20

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) ....................................... 20

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ................................................................... 16

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ....................................... 18

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008).................................. 20, 22, 24

*Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968) ...................................................... 17

*Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113 (S.D.N.Y. 2011)................................................ 18

*Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012).............................................. 17, 19, 23

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100 (E.D.N.Y. 2011)..... 20, 24, 25

*Gordon v. Kaleida Health*, 299 F.R.D. 380 (W.D.N.Y. 2014).......................................................3

*Gortat v. Capala Bros., Inc.*, 2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9, 2010)............... 18

*Guan Ming Lin v. Benihana N.Y. Corp.*, 2012 U.S. Dist. LEXIS 186526 (S.D.N.Y. Oct. 23, 2012)
.................................................................................................................................. 18

*Guzman v. VLM, Inc.*, 2008 U.S. Dist. LEXIS 15821 (E.D.N.Y. Mar. 2, 2008)......................... 24

*Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011)............................. 23

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)................... 18, 24, 25

*In re Fosamax Prod. Liability Litig.*, 248 F.R.D. 389 (S.D.N.Y. 2008)...................................... 16

*In Re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ........................................... 16

*Jankowski v. Castaldi,* 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. Jan. 11, 2006) ......................... 16

*Kowalski v. YellowPages.com, LLC*, 2012 U.S. Dist. LEXIS 46539 (S.D.N.Y. Mar. 31, 2012) . 17

*Leone v. Ashwood Fin., Inc.*, 257 F.R.D. 343 (E.D.N.Y. 2009) ................................................. 23

*Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242 (2d Cir. 2011)
.................................................................................................................................. 23

*Marisol A. v. Guiliani*, 126 F.3d 372 (2d Cir. 1997) ........................................................... 17, 20

*Martinez v. Ayken, Inc.*, No. 13 Civ. 7411, 2016 U.S. Dist. LEXIS 25556 (E.D.N.Y. Feb. 29, 2016)
.................................................................................................................... 21, 23, 24, 25

*Mendoza v. Casa De Cambio Delgado, Inc.*, 2008 U.S. Dist. LEXIS 61557 (S.D.N.Y. Aug. 12,
2008) ...................................................................................................................... 24

*Mentor v. Imperial Parking Sys.*, 246 F.R.D. 178 (S.D.N.Y. 2007)........................................... 24

*Moore v. Painewebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) ...................................................... 24

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................... 24

*Morris v. Alle Processing Corp.*, 2013 U.S. Dist. LEXIS 64534 (E.D.N.Y. 2013) ..................... 17

*Niemiec v. Ann Bendick Realty*, No. 04 Civ. 897, 2007 U.S. Dist. LEXIS 98840 (E.D.N.Y. Mar.
30, 2007) .................................................................................................................. 17

*Noble v. 93 University Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004)....................................... 24

*Perez v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 130214 (E.D.N.Y. Sep. 16, 2014)................ 25

*Poplawski v. Metroplex on the Atl., LLC*, 2012 U.S. Dist. LEXIS 46408 (E.D.N.Y. Apr. 2, 2012)
.................................................................................................................................. 24

*Rosario v. Valentine Ave. Disc. Store, Co.*, 2013 U.S. Dist. LEXIS 77183 (E.D.N.Y. May 31, 2013) ................................................................................................................................................... 24
*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ................................................... 23
*Spencer v. No Parking Today, Inc.*, 2013 U.S. Dist. LEXIS 36357 (S.D.N.Y. Mar. 15, 2013) ... 18
*Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54 (E.D.N.Y. 2014) ....... 17
*Trinidad v. Breakaway Courier Sys., Inc.*, 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. 2007) ... 23, 25
*Velez v. Majik Cleaning Serv.*, 2005 U.S. Dist. LEXIS 709 (S.D.N.Y. Jan. 18, 2005) ............... 20
*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................................ 20
*Wal-Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.)*, 280 F.3d 124 (2d Cir. 2001) ..................................................................................................................... 22
*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011) ............................ 25
*Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240 (S.D.N.Y. 2008) ...................................... 7, 8

**STATUTES**

29 U.S.C. § 206 ............................................................................................................................... 8
N.Y. Lab. L. § 195 .............................................................................................................. 8, 15, 18
N.Y. Lab. L. § 195-1 ............................................................................................................... 14, 15
N.Y. Lab. L. § 195-2 ..................................................................................................................... 14
N.Y. Lab. L. § 220-a ..................................................................................................................... 12
N.Y. Lab. L. § 230(6) .................................................................................................................... 13
N.Y. Lab. L. § 231(1) .................................................................................................................... 13
N.Y. Lab. L. § 652 ........................................................................................................................... 8

**RULES**

Fed. R. Civ. P. 23 .................................................................................................................... passim
Fed. R. Civ. P. 23(a) ....................................................................................................... 16, 20, 22
Fed. R. Civ. P. 23(b) ....................................................................................................... 16, 23, 25
Fed. R. Civ. P. 23(g) ...................................................................................................................... 25

**REGULATIONS**

12 N.Y.C.R.R. § 142-2.6 ......................................................................................................... 14, 15
12 N.Y.C.R.R. § 142-2.7 ................................................................................................................ 15
12 N.Y.C.R.R. § 146-2.1 ................................................................................................................ 18
29 C.F.R. § 785.48(b) ................................................................................................................ 3, 8

## PRELIMINARY STATEMENT

Plaintiff JUAN LOPEZ submits this memorandum of law in support of his motion for certification of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure as to his claims under the New York Labor Law. On October 30, 2020, Plaintiff LOPEZ filed a Class and Collective Action Complaint against THERMO TECH MECHANICAL INC., (hereinafter, "Corporate Defendant") GOWKARRAN BUDHU, and SHANTI BUDHU (hereinafter, "Individual Defendants," and together with Corporate Defendant, "Defendants"), seeking unpaid wages under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), due to improper rounding down of hours and time shaving. Plaintiff also sought damages due to Defendants' failure to pay prevailing wages on public projects. Plaintiff LOPEZ brought the NYLL claims on behalf of himself and all non-exempt employees, including HVAC installation, maintenance, and repair workers employed by Defendants ("Class Members" or the "Class").

## I.   PLAINTIFF'S NEW YORK LABOR LAW CLAIMS

From in or about January 2016 until in or about August 2018, Plaintiff JUAN LOPEZ ("Plaintiff") was employed by Defendants as an HVAC installation worker. Throughout this period, Plaintiff usually worked five days a week, most often from 7:00 am to 4:00 pm. He worked at different sites, and the pay varied according to the project, but it often hovered around $23.00/hr. *See* Declaration of Juan Lopez ("Lopez Decl.") ¶ 1-2.

Until around May 2018, Plaintiff and other employees of Defendants would fill in their timesheets manually, writing down start and end times on a standard form provided by Defendants. However, Defendant Shanti Budhu, the company's accountant, would prevent Plaintiff and his coworkers from writing down the precise time they finished working. If Plaintiff tried to do so, Defendant Shanti Budhu would tell him, "No, we don't do that here." Instead, Plaintiff was required to round down his time worked to the nearest half-hour. *See* Lopez Decl. **Exhibit A**. So,

1

if he finished working at 4:25, he would have to write down 4:00. Defendant Shanti Budhu would tell Plaintiff, "You have to complete the half-hour for it to count." As a result, several times a week Plaintiff would have to work 10-25 minutes past his scheduled shift but would not be compensated for this. *See* Lopez Decl. ¶ 3. The same unlawful policy was also applied at the beginning of shifts. Plaintiff and other employees would often be required to begin working 5-10 minutes before their scheduled shift, but they would not be compensated for this because this extra time did not add up to a full half-hour. *See* Lopez Decl. ¶ 4.

Around May 2018, Defendants switched to an electronic time keeping system that did record the precise times Plaintiff and others began and ended work. However, Defendants would continue to time shave Plaintiff and other employees. For example, Plaintiff worked 38.75 hours in the week beginning May 21, 2018, and ending May 27, 2018. But his paycheck for that week was for only 38.44 hours. *See* Lopez Decl., **Exhibit B**. He worked 6.68 hours during the week beginning July 30, 2018, and ending August 5, 2018. But his paycheck that week was for only 4.5 hours. *See* Lopez Decl., **Exhibit C**.

Plaintiff and other employees would also be time-shaved through their meal breaks. Plaintiff would take only a 30 minute break, but Defendants would deduct a full hour from his time. *See* Lopez Decl. ¶ 5. The standard form on which employees wrote down their hours prior to around May 2018 did not contain entries to track the actual time spent on lunch breaks, and Plaintiff was forced to add up his hours as though he had taken an entire hour for lunch, just as he and others were forced to pretend that they began and ended working exactly on the hour every day. *See* Lopez Decl., ¶ 5, **Exhibit A** for an example of Plaintiff's timesheets.

During his employment, Plaintiff and other employees also spent a significant amount of time working on public projects for which they was supposed to be paid at various prevailing wage

rates, depending on the contract and the job site, which were most often at public schools. However, Defendants frequently failed to pay Plaintiff and other employees the prevailing wage rates for work performed on these jobs. *See* Lopez Decl., ¶ 9.

Due to the above unlawful practices of Defendants, Plaintiff and Class Members were subjected to Defendants' common practices that (i) failed to pay proper wages due to time shaving, (ii) failed to pay proper wages due to impermissible rounding, (iii) failed to pay prevailing wages to third party beneficiaries in breach of public works contracts, (iv) failed to provide proper wage and hour notices, and (vi) failed to provide proper wage statements, in violation of the NYLL. Plaintiff's declaration in combination with the documentary evidence provided herewith show that Defendants' violations of the NYLL were willful and the result of systematic practices that were applied across the board to all employees.

## A.      Failure to Pay Proper Wages Due to Impermissible Rounding

Federal regulations state that "…there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. … For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." *See* 29 C.F.R. § 785.48(b). It has been noted that while "no New York statute or regulation addresses the permissibility of rounding policies, New York's Department of Labor generally follows the FLSA and related regulations." *Gordon v. Kaleida Health*, 299 F.R.D. 380, 405 n.25 (W.D.N.Y. 2014).

Defendants improperly rounded Plaintiff's and Class Members' hours to the nearest half hour. *See* Lopez Decl. ¶¶ 3-4; *see also* Deposition transcript of Gowkarran Budhu ("Budhu Dep.")

3

24:15-31:25, attached to the Declaration of C.K. Lee ("Lee Decl.") as **Exhibit 2**. This rounding was always done to the employees' detriment, and not in a neutral manner. *See* Lopez Decl. ¶¶ 3-6. Defendant Gowkarran Budhu testified in his deposition that he was in charge of payroll for Corporate Defendant and was the individual who reviewed employees' times before it was entered into their payroll records. Budhu Dep. 24:6-9; 33:2-13, attached to the Lee Decl. as **Exhibit 2**.

Mr. Budhu further testified that with regard to the information on the wage statements, employees entering time on their time sheets and the way in which Defendants' employees were paid, Defendants and all of their employees followed the same protocol. *See* **Exhibit 2,** Budhu Dep. 37:22-39:10, 38:19-39:1. Specifically,

> 22.     Q. And so generally, are the pay statements
> 23.     with these similar earnings details what's
> 24.     provided to all of your HVAC installers and
> 25.     servicers and those kind of guys?
> 1.      A. Yeah. Those pay rates are based on the
> 2.      task that was performed.
> 3.      Q. Okay. I'm just talking about the
> 4.      information. The information that's provided on
> 5.      your earnings statements to your employees are
> 6.      generally the same, right, outside of office
> 7.      workers; right?
> 8.      A. Yeah. Those line items tell you your
> 9.      prevailing wage rates and your regular hours
> 10.     rates.
> …
> 19.     Q. And the way [Plaintiff] was required to input his
> 20.     time or to report this hours worked was similar to
> 21.     other employees also; is that correct?
> 25.     THE WITNESS: We have one protocol for
> 1.      all employees.
> 3.      Q. Okay. And you don't treat Mr. Lopez any
> 4.      worse or better than any of your other employees;
> 5.      is that right?
> 6.      A. Absolutely not.
> 7.      Q. You treat all your employees the same;
> 8.      right?
> 9.      A. Absolutely.

**Exhibit 2,** Budhu Dep. 37:22-39:10, 38:19-39:1.

Defendant Gowkarran Budhu testified that Defendants only compensated employees for their scheduled hours and not their actual time worked if they clocked in before their shift started or if they clocked out after their shift ended. *See* **Exhibit 2,** Budhu Dep. 24:15-31:25. Despite this, Mr Budhu admits that, when employees clock in slightly before their shift or if they clock out slightly after their scheduled shift, they **should be paid their actual hours worked and not their scheduled work shift**. *See* **Exhibit 2,** Budhu Dep. 26:10-26:15. Mr. Budhu testified that all employees were subject to the same employment policies. *See* **Exhibit 2,** Budhu Dep. 29:5-8, 37:22-39:10, 38:19-39:1.

Significantly, Defendant Budhu explained at deposition that Defendants' policy was that an employees' scheduled time *is* their actual time. *See* **Exhibit 2,** Budhu Dep. 28:5-18. However, in reality, Plaintiff and Class Members never started and finished work exactly on the whole or half hour, as Defendants' time sheets suggest. These statements by Defendant Budhu underscore Defendants' clear policy and practice of rounding employees' hours down to the employees' detriment, which fails to account for the time spent by Plaintiff and Class Members working before and after their scheduled shifts.

Defendants' production of wage records for Plaintiff and Class Members confirms this improper rounding policy. For example, in 2016, Plaintiff's time sheets all show shifts running from 7:00-4:00 p.m., for which Plaintiff was paid 8 hours, and also overtime during some weeks for hours worked after 4 pm, but always rounded to the whole or half hour. *See* **Exhibit 3**. Defendants' practice of requiring employees to record their time to the whole or half hour and paying only for shifts, rather than actual hours worked also continued in 2017 and 2018. *See* **Exhibit 4**, and **Exhibit 5**, which are Plaintiff's time sheets for 2017 and 2018, respectively.

Consistent with Defendant Gowkarran Budhu's testimony that there was one policy for inputting time and wages (**Exhibit 2**, Budhu Dep. 38:19-39:1), Class Members were similarly paid only for their scheduled hours, which were also rounded to the nearest half or whole hour. Attached as **Exhibit 6** is a sampling of Class Members' time sheets from Defendants' production. This sampling shows that in 2016, 2017, 2018, and 2020, similar to Plaintiff, the hours of Class Members were also recorded to the exact whole or half hour. *Id*. This applied regardless of whether Class Members were required to handwrite their hours, or whether as in the sampling shown for 2020, Class Members' time was recorded electronically. *Id*.

Defendants' policy of rounding persists even when their employees record the exact time they start and end work. *See* **Exhibit 6**. Defendants' 2019 production shows that Defendants impermissibly round all their employees' time on a non-neutral basis, and only pay for scheduled shifts and not actual punch times. For example:

- 3/18/19 – 3/22/19 (**Exhibit 6**, 001865), Celso Campos's time input and rounded as follows:

| Date | In | Out | **Total** | Scheduled/ Paid Time |
|---|---|---|---|---|
| 3/18/2019 | 6:44 AM | 3:31 PM | **8.78** | 8.00 |
| 3/19/2019 | 6:49 AM | 3:25 PM | **8.6** | 8.00 |
| 3/20/2019 | 6:45 AM | 3:32 PM | **8.78** | 8.00 |
| 3/21/2019 | 6:45 AM | 3:17 PM | **8.53** | 8.00 |
| 3/22/2019 | 6:46 AM | 3:23 PM | **8.62** | 8.00 |

- 3/18/19 – 3/23/19 (**Exhibit 6**, 001859), Eric Cevalles's time input and rounded as follows:

| Date | In | Out | **Total** | Scheduled/ Paid Time |
|---|---|---|---|---|
| 3/18/19 | 6:56 AM | 3:55 PM | **8.98** | 8.50 |
| 3/19/19 | 7:16 AM | 2:17 PM | **7.02** | 7.00 |
| 3/20/19 | 6:06 AM | 2:37 PM | **8.52** | 11.00* |
| 3/21/19 | 5:50 AM | 2:30 PM | **8.67** | 8.00 |
| 3/22/19 | 6:51 AM | 3:07 PM | **8.27** | 8.00 |
| 3/23/19 | 5:53 AM | 1:27 PM | **7.57** | 7.50 |

*Eric Cevalle also recorded and worked 3 hours on 3/20/19 at the Supply House. *Id*.

- 3/18/19 – 3/23/19 (**Exhibit 6**, 001863), Wilfredo Ortiz's time input and rounded as follows:

| Date | In | Out | **Total** | Scheduled/ Paid Time |
|---|---|---|---|---|
| 3/18/19 | 6:57 AM | 3:54 PM | **8.95** | 8.00 |
| 3/19/19 | 7:15 AM | 2:17 PM | **7.03** | 7.00 |
| 3/21/19 | 7:54 AM | 3:52 PM | **7.97** | 8.00 |
| 3/22/19 | 6:41 AM | 2:46 PM | **8.08** | 8.00 |

- 3/18/19 – 3/23/19 (**Exhibit 6**, 001862), Victor Taylor's time input and rounded as follows:

| Date | In | Out | **Total** | Scheduled/ Paid Time |
|---|---|---|---|---|
| 3/18/19 | 8:07 AM | 3:44 PM | **7.62** | 7.50 |
| 3/19/19 | 7:09 AM | 3:26 PM | **8.28** | 8.00 |
| 3/20/19 | 6:59 AM | 3:12 PM | **8.22** | 8.00 |
| 3/21/19 | 6:56 AM | 2:02 PM | **7.10** | 7.00 |
| 3/22/19 | 6:49 AM | 3:16 PM | **8.45** | 8.00 |
| 3/23/19 | 6:56 AM | 11:26 AM | **4.50** | 4.50 |

Defendants' Classwide production reveals their failure to maintain employment records for all Class Members during the entire statutory period. Defendants did not produce any records for 2014 or 2015, and the records they did produce for 2016-2021 were missing large amounts of timesheets or wage statements. Attached to the Lee Declaration as **Exhibit 7** is a spreadsheet illustrating a sampling of deficiencies in Defendants' production for Plaintiff and Class Members. For Plaintiff alone, Defendants failed to maintain any wage statements for September 2016 – June 2017; September 2017; or April 2018 – July 2018; or any time sheets for Plaintiff for October 2016, or from February 2017 – May 2017. *Id*. In addition, for many Class Members, Defendants simply had no records at all, or the production was incomplete *See* **Exhibit 7.**

"[I]n determining whether the plaintiffs received the minimum wage and overtime, we start with the premise that the employer is obligated to maintain records of wages and hours." *Yu G. Ke v. Saigon Grill, Inc*., 595 F. Supp. 2d 240, 254-55 (S.D.N.Y. 2008) (citing *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687 (1946)). "In the absence of documentation, the employee may rely on [their] own recollection to meet [their] initial burden, in which case the employer must proffer

evidence sufficient to rebut that recollection." *Id.* In this case, Defendants failed to keep <u>complete</u> wage and hour records <u>for Plaintiff and a substantial number of Class Members</u>, in violation of the employer's recordkeeping obligations under the NYLL. N.Y. LAB. L. § 195. In the absence of Defendants' records, the Court must draw an adverse inference against the Defendants and rely on Plaintiffs' recollection and supporting evidence with respect to their hours worked and wages paid. N.Y. LAB. L. § 195.

Despite the lack of wage statements for all Class Members, that Defendants rounded employees' hours and actually only compensated them based on their scheduled shifts is confirmed by Defendants' production of company-wide payroll records. *See* **Exhibit 8**. This sampling of Defendants' company-wide weekly payroll data for 2016, 2017, 2019, and 2020, shows that Defendants only paid Class Members' hours by rounding to the whole or half hour, instead of accurately accounting for all actual hours worked before, during and after their shifts. *Id.*

29 C.F.R. § 785.48(b), and by extension the New York Department of Labor, permit rounding only when the policy "will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." However, here, Defendants only rounded employees' hours to the employers benefit alone, instead of in a neutral manner, thus utilizing an impermissible rounding policy. Therefore, Plaintiff and Class Members all suffered from Defendants' impermissible policy of rounding employees' hours to their scheduled shift and failure to pay for actual hours worked. Lopez Decl. ¶¶ 3-6.

## B. Failure to Pay Proper Wages Due to Time Shaving

The FLSA and the NYLL both require that an employer pay their employees for "all hours" worked. *See* 29 U.S.C. § 206; NYLL § 652. Here, Defendants failed to compensate Plaintiff and Class Members for all hours worked due to routine time shaving practices. Lopez Decl. ¶¶ 3-6.

Defendants purposely failed to compensate Plaintiff for pre-shift and post-shift work; and automatically deducted daily meal breaks in excess of the 30 minute unpaid meal break that employees were entitled to, even though Plaintiff and Class Members resumed working after their 30 minute breaks were over, and never took breaks over 30 minutes. Lopez Decl. ¶¶ 3-6**.**

Defendant Gowkarran Budhu testified in his deposition that he was in charge of payroll **and** was the individual who reviewed employees' time entries before they were entered into Defendants' payroll records. *See* **Exhibit 2**, Budhu Dep. 24:6-9; 33:2-13. Individual Defendant Gowkarran Budhu further testified that with regard to the information on the wage statements, employees entering time on their time sheets, and the way in which Defendants' employees were paid, Defendants and all of their employees followed the same protocol. *See* **Exhibit 2**, Budhu Dep. 37:22-39:10, 38:19-39:1. For all Class Members, Defendants' production confirms that Defendants implemented a policy of applying automatic meal break deductions to employees' hours worked. Defendants' production shows that these meal break deductions varied. However, regardless of the length of the meal break deduction, Plaintiff attests that he never took breaks exceeding the unpaid 30 minutes that were allowed by Defendants. See Lopez Decl. ¶ 5.

As shown by Defendants' production of Plaintiff's records for 2016, 2017, and 2018, Plaintiff's time sheets generally show shifts running from 7:00-4:00 p.m., for which Plaintiff was paid 8 hours, notwithstanding that Plaintiff worked at least a 9 hour day. *See* **Exhibits 3-5**, Plaintiff's time sheets for 2016, 2017 and 2018, respectively. Defendants' production shows that they failed to maintain large amounts of records for Plaintiff and Class Members. For example, Plaintiff began working for Defendants in January 2016, but Defendants' time sheets for Plaintiff do not begin until July 2016, and Defendants' wage statements for Plaintiff do not begin until June 2017. *See* **Exhibits 3-4**. Moreover, Defendants failed to maintain any wage statements for

Plaintiff from September 2016 – June 2017; September 2017; or April 2018 – July 2018; Defendants also did not maintain any time sheets for Plaintiff for October 2016, or from February 2017 – May 2017. *See* **Exhibits 3-5**. For Class Members, Defendants did not produce any records for 2014 or 2015, and their produced records were missing large gaps of time. *See* **Exhibit 7**.

Notwithstanding Defendants' incomplete production, examples of Defendants' practice of meal break time shaving due to automatic deductions are widely prevalent in Defendants' records. At times this unlawful meal break time shaving occurred for the entire week, or part of the week, and was either for 1 complete hour, or various times between 30 minutes and 1 hour, always adding up the employee's scheduled shift. This unlawful meal break time shaving policy also applied to Class Members. Below are examples of Defendants' meal break time shaving where the deduction for various amounts exceeding 30 minutes was generally applied the entire week:

- 10/3/16 – 10/7/16 (**Exhibit 9**, 003203), Eric Cevallos' time input and rounded as follows:

| Date | In | Out | Total | Scheduled/ Paid Time | Meal Break Deductions |
|------|------|---------|-------|----------------------|-----------------------|
| 10/3/16 | 7:00 AM | 4:00 PM | 9.00 | 8.00 | 1.00 |
| 10/4/16 | 7:00 AM | 8:00 PM | 13.00 | 12.00 | 1.00 |
| 10/5/16 | 7:00 AM | 10:00 PM | 15.00 | 14.00 | 1.00 |
| 10/6/16 | 7:00 AM | 6:00 PM | 11.00 | 10.00 | 1.00 |
| 10/7/16 | 7:00 AM | 4:00 PM | 9.00 | 8.00 | 1.00 |
| | | | **57.00** | **52.00** | **5.00** |

- 7/19/17 -7/23/17 (**Exhibit 9**, 003158), Frank [LNU] time input and rounded as follows:

| Date | In | Out | Total | Scheduled/ Paid Time | Meal Break Deductions |
|------|------|---------|-------|----------------------|-----------------------|
| 7/19/17 | 7:30 AM | 9:00 PM | 13.50 | 13.00 | 0.50 |
| 7/20/17 | 7:30 AM | 5:00 PM | 9.50 | 8.00 | 1.50 |
| 7/21/17 | 7:30 AM | 4:30 PM | 9.00 | 8.00 | 1.00 |
| 7/22/17 | 7:30 AM | 4:30 PM | 9.00 | 8.00 | 1.00 |
| 7/23/17 | 7:30 AM | 4:30 PM | 9.00 | 8.00 | 1.00 |
| | | | **50.00** | **45.00** | **5.00** |

- 7/1/19 -7/5/19 (**Exhibit 8**, 001997), Compton Mohabir's time input and rounded as follows:

| Date | In | Out | Total | Scheduled/ Paid Time | Meal Break Deductions |
|------|-----|------|-------|----------------------|-----------------------|
| 7/1/19 | 7:22 AM | 3:27 PM | 8.08 | 7.50 | 0.58 |
| 7/2/19 | 7:14 AM | 5:30 PM | 10.27 | 9.50 | 0.77 |
| 7/3/19 | 7:35 AM | 2:50 PM | 7.25 | 6.50 | 0.75 |
| 7/5/19 | 4:35 AM | 1:38 PM | 9.05 | 8.50 | 0.55 |
| | | | **34.65** | **32.00** | **2.65** |

Below are examples of Defendants' meal break time shaving where the deduction for various amounts exceeding 30 minutes was applied each day, and exceeded 1 hour at times:

- April 5, 2019, Wilfredo Ortiz worked from 6:25 A.M. until 3:30 P.M. for a total of nine (9) hours and five (5) minutes, but Defendants automatically deducted 1 and 8 minutes hour from his pay and compensated him for eight (8) hours. **Exhibit 10**, 001884.

- April 16, 2019, Shamkumar Budhu worked from 8:00 A.M. until 5:00 P.M. for a total of nine (9) hours, but Defendants automatically deducted 1 hour from his pay and compensated him for eight (8) hours. **Exhibit 10**, 001898.

- June 20, 2019, Victor Taylor worked from 6:42 A.M. until 4:00 P.M. for a total of nine (9) hours and eighteen (18) minutes, but Defendants automatically deducted 1 hour and 30 minutes from his pay and compensated him for eight (8) hours. **Exhibit 10**, 001987.

- October 9, 2019, Compton Mohabir worked from 7:05 A.M. until 4:11 P.M. for a total of nine (9) hours and six (6) minutes, but Defendants automatically deducted 1 hour and 10 minutes from his pay and compensated him for eight (8) hours. **Exhibit 10**, 002144.

Moreover, Defendants required Plaintiff and Class Members to perform approximately ten to twenty-five (10 - 25) minutes of off-the-clock work before their shift started and five to ten (5-10) minutes after their scheduled shift ended, for which they were not compensated. Lopez Decl. ¶¶ 3, 4. As a result of Defendants requiring employees to perform off-the-clock work before and after they clocked in and out of their shifts, Plaintiff and Class Members were time shaved thirty-five (35) minutes of compensable time daily, *Id.* But since each instance of off-the-clock work before and after their shift was less than thirty (30) minutes, Defendants did not include it as part of the time worked by Plaintiff and Class Members. *Id.*

11

At deposition, Defendant Gowkarran Budhu testified that Defendants also routinely texted employees outside of their working hours. *See* **Exhibit 2**, Budhu Dep. 45:2-13. The purpose of the text was to inform employees of the jobsite locations that they are supposed to show up to at their next scheduled shift. *Id.* Despite the need to review these texts as it related an essential part of employees' upcoming schedule, Defendant Gowkarran Budhu testified that this sort of work was not compensable. *See* **Exhibit 2**, Budhu Dep. 46:21-47:13. Regardless of whether employees responded to the texts while off the clock, such texts were essential to Class Members figuring out their worksites, which directly relates to their job performance. As such, Defendants further time shaved Plaintiff and Class Members due to after-hours correspondence.

Therefore, it is clear that Defendants failed to pay Plaintiff and Class Members for all of their hours worked. Defendants automatically deducted meal breaks from the compensable hours worked by Plaintiff and Class Members each day, regardless of how long each individual employee actually took for the lunch break. Furthermore, Defendants required employees to perform off-the-clock work before and after their shifts, and also required employees to review essential work-related messages outside of their working hours. Due to the foregoing, Defendants failed to pay Plaintiff and Class Members for all hours worked, in violation of the NYLL.

### C.    Failure to Pay Prevailing Wages

Under the regulations implemented by the NYLL, an employee is entitled prevailing wages when engaged by a "public improvement contractor or its subcontractors" in a public building or project shall be compensated by the schedule of wages and supplements specified in that public contract, N.Y. Lab. Law § 220-a. Prevailing wages are defined as the pay rate set by law for work on public work projects.  New York State Department of Labor, Public Work and Prevailing

Wages[1]; *See also* N.Y. Lab. Law § 230(6). Prevailing wages is "appli[cable] to all laborers, workers or mechanics employed under a public work contract." *Id.* An employer is in violation if they fail to "pay a service employee under a contract for building service work of a wage not less than the prevailing wage in the locality for the craft, trade, or occupation of the service employee." N.Y. Lab. Law § 231(1).

Defendant Gowkarran Budhu, as the individual in charge of the payroll, testified in his deposition that he knew what prevailing wages was. *See* **Exhibit 2**, Budhu Dep. 36:12-15. However, although Plaintiff and Class Members regularly worked on public work projects, Defendants failed to pay Plaintiff and Class Members prevailing wages for all projects as mandated by law. Lopez Decl. ¶ 9. Moreover, Defendants' records, illustrate Defendants' failure to pay all prevailing wages due. *See* **Exhibit 10**.

Below is a sampling from Defendants' production illustrating Defendants' failure to pay all prevailing wages due:

- 12/27/17 - 12/30/17 – Plaintiff recorded 48 hours, including 8 hours for work at IS98 which should have been paid at the prevailing wage rate, but Defendants paid Plaintiff 40 hours at his regular rate, and 6 hours at an overtime rate. **Exhibit 11**, Defendants 0101, 0102.

- 11/27/17 - 12/3/17 – Plaintiff recorded 54 hours, including 14 hours for work at IS98 which should have been paid at the prevailing wage rate, but Defendants paid Plaintiff 40 hours at his regular rate, and 14 hours at an overtime rate. **Exhibit 11**, Defendants 0089, 0090.

- 8/4/19 - 8/16/19 – Compton Mohabir recorded 15 hours for work at IS 231, and JFK Elementary School which should have been paid at the prevailing wage rate, but Defendants paid him only 13 hours at the prevailing wage rate (which they titled as a regular rate of $39.40). **Exhibit 11**, Defendants 002058, 002059.

- 8/25/19 - 9/8/19 – Shamkumar Budhu recorded 17 hours for work at JFK Elementary School which should have been paid at the prevailing wage rate, but Defendants paid him only 16 hours at the prevailing wage rate (which they titled as a regular rate of $39.40). **Exhibit 11**, Defendants 002058, 002059.

---

[1] New York State Department of Labor,: Public Work and Prevailing Wages, https://dol.ny.gov/public-work-and-prevailing-wage#:~:text=Prevailing%20wage%20is%20the%20pay,Article%20208%20covers%20public%20construction (last visited Nov. 1, 2023)

- 9/29/19 - 10/11/19 – Shamkumar Budhu recorded 14 hours for work at JHS 190 School which should have been paid at the prevailing wage rate, but Defendants paid him only 13.5 hours at the prevailing wage rate (which they titled as a regular rate of $42.35). **Exhibit 11**, Defendants 002131, 002132.

- 7/28/19 - 8/9/19 – Compton Mohabir recorded 28.5 hours for work at PS 477, and JFK Elementary School, IS 231, all of which should have been paid at the prevailing wage rate, but Defendants paid him only 25.5 hours at the prevailing wage rate (which they titled as regular rates of $39.40; and $42.55). **Exhibit 11**, Defendants 002051, 002052.

Despite Defendants' knowledge of their obligation to compensate employees prevailing wages, as shown by the sampling above, Defendants nevertheless still failed to pay Plaintiff and Class Members all prevailing wages due. Moreover, Defendant Gowkarran Budhu testified that all employees were subject to the same employment policies and this failure to pay all prevailing wages therefore applied to all Class Members. *See* **Exhibit 2**, Budhu Dep. 29:5-8.

Therefore, based on the foregoing, it is clear that Defendants failed to pay Plaintiff and Class Members' all prevailing wages in relation to public projects on which they performed work, and they are entitled to damages under the NYLL.

### D.  Failure to Provide Proper Wage and Hour Notices

Under the Wage Theft Prevention Act ("WTPA"), every employer is required to provide employees a written notice at the time of hiring and prior to any changes in the information on the notice. *See* N.Y. LAB. L. §§ 195-1,2; 12 N.Y.C.R.R. § 142-2.6. The notice must contain, among others, the regular hourly pay rate; overtime hourly pay rate; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business; the mailing address if different; and the telephone number of the employer. N.Y. LAB. L. § 195-1. The notice must be provided in writing in English and in the primary language of the employee. *Id*. The employer must also obtain from the employee a signed and dated written acknowledgement of receipt of such notice, which the

14

employer must keep for six years. *Id*. The "employer shall establish, maintain and preserve" records consistent with this requirement. 12 N.Y.C.R.R. § 142-2.6. (emphasis added).

Plaintiff and Class Members did not receive any wage and hour notice from Defendants throughout their employment. Lopez Decl. ¶ 7. Defendants' lack of such notices in their Class production confirms this. Defendants have the burden of proving compliance with the WTPA, and by not producing any other wages notices for Plaintiff and additionally failing to provide any wage notices for Class Members, Defendants have failed to satisfy that burden. Therefore, based on the foregoing, Defendants violated the wage and hour notice requirement, and Plaintiff and Class Members are owed statutory penalties under the NYLL.

### E.    Failure to Provide Proper Wage Statements

Under the WTPA, employers must furnish each employee with wage statements, commonly known as paystubs, listing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; regular hourly pay rate; overtime hourly pay rate; hours worked; gross wages; and net wages. *See* N.Y. Lab. L. § 195-3; 12 N.Y.C.R.R. § 142-2.7.

Throughout their employment, Plaintiff and Class Members did not receive proper wage statements from Defendants. Lopez Decl. ¶ 8**.** The wage statements provided to employees by Defendants were clearly defective because they failed to accurately reflect their proper compensation, as Defendants failed to pay all prevailing wages and failed to compensate employees for all hours worked due to Defendants impermissible policies of time shaving and rounding. *See* **Exhibit 1-11**, attached to the Declaration of C.K. Lee, and **Exhibits A-C**, attached to the Declaration of Juan Lopez.

Since Defendants have failed to produce proper wages statements Plaintiff and Class Members are owed statutory penalties for Defendants' failure under the NYLL.

## II.     PLAINTIFF SATISFIES ALL THE REQUIREMENTS OF RULE 23

Rule 23 provides that a court should certify a class where, as here, plaintiff satisfies each of the four conditions of Rule 23(a) as well as one of the three requirements of Rule 23(b). *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *In Re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006).

Specifically, under Rule 23(a), plaintiffs must demonstrate that:

(1)    the class is so numerous that joinder of all members is impracticable;
(2)    there are questions of law or fact common to the class;
(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)    the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). These requirements are generally referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. In addition, Rule 23(a) implicitly requires that class members be "identifiable and ascertainable." *Jankowski v. Castaldi*, 2006 U.S. Dist. LEXIS 4237, at *14 (E.D.N.Y. Jan. 11, 2006). Under Rule 23(b)(3), plaintiffs must demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23 (b)(3).

When considering whether the requirements of Rule 23 have been met, "a court may not address the merits of the action except to the extent that a merits issue overlaps with a Rule 23 requirement." *In re Fosamax Prod. Liability Litig.*, 248 F.R.D. 389, 395 (S.D.N.Y. 2008). Ultimately, "[t]he dispositive question is not whether the plaintiff has stated a cause of action or

will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Kowalski v. YellowPages.com, LLC*, 2012 U.S. Dist. LEXIS 46539, at *37 (S.D.N.Y. Mar. 31, 2012).

The requirements of Rule 23 tend to overlap or merge with each other, so courts are to "adopt a standard of flexibility," *Marisol A. v. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997), and "are encouraged to construe the requirements of Rule 23 liberally in order to effectuate its overall purpose." *Niemiec v. Ann Bendick Realty*, 2007 U.S. Dist. LEXIS 98840, at *16 (E.D.N.Y. Mar. 30, 2007). "These purposes include the protection of small claims through aggregation and promoting judicial economy." *Id.*; *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560 (2d Cir. 1968). In addition, "it is appropriate for the court to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually." *Id.* (citation omitted).

Accordingly, courts generally "take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies Rule 23's requirements and may exercise broad discretion when determining whether to certify a class." *Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 66 (E.D.N.Y. 2014) (citing *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012). Indeed, "[c]ourts in this Circuit have displayed a preference for granting rather than denying class certification." *Morris v. Alle Processing Corp.*, 2013 U.S. Dist. LEXIS 64534, at *15 (E.D.N.Y. 2013).

The facts provided in this memorandum, based on deposition testimony and document production, in addition to Plaintiff's supporting declaration, demonstrate a systematic pattern of non-compliance with the NYLL applicable to Class Members.

## A.       Proposed Class Is Identifiable and Ascertainable

A class is identifiable and ascertainable where "the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Spencer v. No Parking Today, Inc.*, 2013 U.S. Dist. LEXIS 36357, at *95 (S.D.N.Y. Mar. 15, 2013). The standard "is not demanding" and the Court "need only be able to ascertain the general boundaries of the proposed class." *Gortat v. Capala Bros., Inc.*, 2010 U.S. Dist. LEXIS 35451, at *5 (E.D.N.Y. Apr. 9, 2010). Here, Plaintiff unambiguously defines "Class Members" as "all non-exempt employees, including HVAC installation, maintenance, and repair workers employed by Defendants, on or after October 20, 2014. *See supra* 1.

Class Members can easily be identified based on Defendants' employment records. *See Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 n.85 (S.D.N.Y. 2011) ("The class . . . is easily identified from [defendant's] payroll records. Thus, the implied requirement of ascertainability is satisfied."); *Guan Ming Lin v. Benihana N.Y. Corp.*, 2012 U.S. Dist. LEXIS 186526, at *36 (S.D.N.Y. Oct. 23, 2012); *Spencer*, 2013 U.S. Dist. LEXIS 36357, at *95-96. Under the NYLL, all employers are required to maintain and preserve payroll records for each employee for at least six years. *See* N.Y. LAB. L. § 195; 12 N.Y.C.R.R. § 146-2.1. Therefore, non-exempt employees are identifiable from Defendants' payroll records. As such, the proposed class is identifiable and ascertainable.

## B.       The Class Is So Numerous that Joinder Is Impracticable

Although there is no rigid numerical threshold for measuring the impracticability of joinder, the Second Circuit has stated that "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y. 2007). *See Ansari v. New York Univ.*, 179

F.R.D. 112, 114 (S.D.N.Y. 1998) ("courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer"). "[P]laintiff need not present a precise calculation of the number of class members" or and the Court may "rely on reasonable inferences drawn from available facts," provided that Plaintiff presents "some evidence of or reasonably estimate the number of class members." *Flores*, 284 F.R.D. at 123.

Based on the deposition testimony of Defendant Gowkarran Budhu, at any given time, Defendants employ between 15-18 employees, which includes 10 HVAC employees. *See* **Exhibit 2**, Budhu Dep. 16:14-19. Mr. Budhu testified that due to the nature of Defendants' business and their projects, they had an extremely high turnover rate, sometimes employing individuals for only a couple of days or just a week. *See* **Exhibit** 2, Budhu Dep. 16:4-13. Further, Mr. Budhu testified that accounting for the high turnover, the actual headcount at year end is approximately 50-60 people. *See* **Exhibit** 2, Budhu Dep. 18:17-19:2.  Moreover, this statement is supported by Defendants' own Company Insurance documents, confirming that Defendants employ more than 40 employees. *See* **Exhibit 12**.

Therefore, the size of the putative Rule 23 class, which would go back six (6) years to October 30, 2014, instead of the three (3) years stipulated to for conditional collective under the FLSA, is well over forty (40), thus satisfying the numerosity requirement.

### C.    Commonality and Typicality Requirements Are Met

The commonality and typicality requirements "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *See Wal-Mart Stores,*

*Inc. v. Dukes*, 131 S. Ct. 2541, 2551 n. 5 (2011). "As a result, the commonality and typicality requirements tend to merge into one another, and similar considerations animate the analysis" of the two requirements. *Marisol A.*, 126 F.3d at 376.

Commonality is met when there are "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). It requires that the claims of the proposed class "depend upon a common contention" "that is capable of classwide resolution." *Dukes*, 131 S. Ct. at 2551. It "does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 105 (E.D.N.Y. 2011) (citing *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008)). *See Velez v. Majik Cleaning Serv.*, 2005 U.S. Dist. LEXIS 709, at *9 (S.D.N.Y. Jan. 18, 2005) ("The commonality requirement may be met when individual circumstances of class members differ, but their injuries derive from a unitary course of conduct."). "[C]ourts have <u>liberally construed</u> the commonality requirement to mandate a <u>minimum of one issue common</u> to all class members." *Garcia*, 281 F.R.D. at 105 (emphasis added). *See Dukes*, 131 S. Ct. at 2556 ("Even a single [common] question will do.").

Typicality requires that the claims of Plaintiff are typical of the claims of the Class. *See* FED. R. CIV. P. 23(a)(3). It is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376. "As with commonality, typicality need not be complete." *Damassia*, 250 F.R.D. at 157. Typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999). *See Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) ("Since the claims only need to share the same essential

characteristics, and need not be identical, the typicality requirement is <u>not highly demanding</u>.");
*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86-87 (S.D.N.Y. 2001).

    Plaintiff demonstrates commonality and typicality through (1) his declaration affirming his experience, conversations, and observations of Defendants' failure to comply with the NYLL with respect to other non-exempt employees in Defendants' employment; (2) Defendants' Class wide production that shows companywide violations; and (3) Defendants' deposition testimony regarding uniform wage and hour policies and practices. *See Martinez v. Ayken, Inc.*, 2016 U.S. Dist. LEXIS 25556, at *28 (E.D.N.Y. Feb. 29, 2016) ("When viewed as a whole, the deposition testimony, declarations and time/payroll records are sufficient proof to meet both the commonality and typicality requirements as they adequately establish that, at minimum, there is at least 'one issue common to all class members' that provides the 'unifying thread' which serves to bind the claims of the class members together."). Furthermore, Mr. Budhu specifically testified that Defendants treated Class Members the same way they treated Plaintiff. *See* **Exhibit** 2, Budhu Dep. 37:22-39:10, 38:19-39:1.

    *(a) **Unpaid Wages Due to Impermissible Rounding.*** Plaintiff and Class Members suffered from Defendants' companywide policy of impermissible rounding. *See supra* 3-9.

    *(b) **Unpaid Wages Due to Timeshaving.*** Plaintiff and Class Members suffered from time shaving as a result of Defendants' policy of (i) requiring employees to work off-the-clock before and after their shift; (ii) automatically deducting meal breaks from Plaintiff and Class Member's hours worked; and (iii) having Plaintiff and Class Members review and respond to work-related texts off-the-clock. *See supra* 9-13.

    *(c) **Unpaid Prevailing Wages.*** Plaintiff and Class Members suffered from Defendants' companywide policy of failing to pay all prevailing wages due. *See supra* 13-15.

**(d) Improper Wage and Hour Notices.** Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices. *See supra* 15-16.

**(e) Improper Wage Statements.** Defendants failed to provide Plaintiff and Class Members with proper wage statements by failing to provide wage statements with the proper compensation, due to Defendants' policy of time shaving, rounding, improperly deducting meal breaks, and failing to pay all prevailing wages due. *See supra* 16.

In sum, because the above claims of Plaintiff and non-exempted employees employed by Defendants are common and typical to the claims of Class Members, and because these claims can be resolved with generalized answer and proof revolving around the legality of Defendants' companywide wage policies, the commonality and typicality requirements are met.

### D.        Plaintiff(s) Will Adequately Represent the Class

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This requirement is satisfied where "(1) plaintiff's interests are [not] antagonistic to the interests of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson*, *Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Satisfaction of the typicality requirement "is strong evidence that [the plaintiffs'] interests are not antagonistic to those of the class; the same strategies that will vindicate [the plaintiffs'] claims will vindicate those of the class." *Damassia*, 250 F.R.D. at 158.

In order to defeat class certification, "the conflict [of interests] must be 'fundamental.'" *See Wal-Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.)*, 280 F.3d 124, 145 (2d Cir. 2001). While the courts have yet to explicitly define a "fundamental" conflict, it was held to exist when "the interests of the class representative can be pursued only at

the expense of the interests of all the class members." *Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 259 (2d Cir. 2011). Further, it is worth noting that even "in the event a fundamental conflict does exist, it can be ameliorated by separating the class into 'homogeneous subclasses . . . with separate representation to eliminate conflicting interests.'" *Martinez*, 2016 U.S. Dist. LEXIS 25556, at *31 (quoting *Literary Works*, 654 F.3d at 259).

Here, Plaintiff has stated his willingness and ability to act as a class representative, Lopez Decl. ¶¶ 12-13; *see Flores*, 284 F.R.D. at 130 ("Courts in this [C]ircuit have found that plaintiffs' affidavits can properly satisfy evidence adequacy."); *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 396 (N.D.N.Y. 2011); *Leone v. Ashwood Fin., Inc.*, 257 F.R.D. 343, 352 (E.D.N.Y. 2009). Plaintiff was subject to the same policy and practice as the Class and has no interests that are antagonistic to those of the Class. Lopez Decl. ¶¶ 12-13. The same legal arguments and strategies will be used to vindicate their claims and those of the Class.

### E.    Common Questions of Law and Fact Predominate

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members, and . . . class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). Plaintiff has met the various criteria under Rule 23(a), and this is perhaps the best indicator that Rule 23(b)(3) is satisfied. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986); *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 U.S. Dist. LEXIS 2914, at *22 (S.D.N.Y. 2007).

Under Rule 23(b)(3), common questions of law or fact predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than

the issues subject only to individual proof." *Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *Mendoza v. Casa De Cambio Delgado, Inc.*, 2008 U.S. Dist. LEXIS 61557, at *24 (S.D.N.Y. Aug. 12, 2008); *Rosario v. Valentine Ave. Disc. Store, Co*., 2013 U.S. Dist. LEXIS 77183, at *31 (E.D.N.Y. May 31, 2013)

Courts routinely find that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer, alleging unlawful policies and practices. *See, e.g*., *Rosario*, 2013 U.S. Dist. LEXIS 77183, at *32[2]. In fact, "numerous courts have found that wage claims are especially suited to class litigation—perhaps the most perfect questions for class treatment—despite differences in hours worked, wages paid, and wages due." *Poplawski v. Metroplex on the Atl., LLC*, 2012 U.S. Dist. LEXIS 46408, at *27 (E.D.N.Y. Apr. 2, 2012).

Here, Plaintiff has alleged that Defendants engaged in a common policy of (1) failing to pay wages for all hours worked due to time shaving, (2) failing to pay proper wages due to an impermissible policy of rounding, (3) failing to pay prevailing wages, (4) failing to provide proper wage and hour notices, and (5) failing to provide proper wage statements. "These types of claims are about the most perfect questions for class treatment." *Martinez*, 2016 U.S. Dist. LEXIS 25556, at *39 (citing *Iglesias-Mendoza*, 239 F.R.D. at 373). To the extent that Plaintiff and Class Members "have different damages, depending on the length of time they were employed, the wages they received, and the hours they worked, such questions do not defeat predominance." *Id.*

---

[2] See also *Morris v. Affinity Health Plan, Inc*., 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012); *Garcia*, 281 F.R.D. at 108; *Damassia*, 250 F.R.D. at 161; *Guzman v. VLM, Inc.*, 2008 U.S. Dist. LEXIS 15821, at *24 (E.D.N.Y. Mar. 2, 2008); *Mentor v. Imperial Parking Sys*., 246 F.R.D. 178, 184 (S.D.N.Y. 2007); *Iglesias-Mendoza*, 239 F.R.D. at 373; *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 345 (S.D.N.Y. 2004).

In sum, common questions regarding the legality of Defendants' compensation policies and practices predominate over any individual inquiries that may arise. Accordingly, Plaintiff have satisfied the predominance requirement under Rule 23(b)(3).

### F.   Class Treatment Is Superior to Other Alternatives

"Courts in this Circuit . . . have found that permitting New York Labor Law claims to proceed as Rule 23(b)(3) class actions, along with FLSA collective actions, is a superior method." *Trinidad*, 2007 U.S. Dist. LEXIS 2914, at *25 (collecting cases). "Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by [the] Defendant." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011).

Not only would a class action in the instant case allow for a "more cost-efficient and fair litigation of common disputes" than individual actions, but "it is likely the only device by which many of the proposed class members would obtain relief." *Garcia*, 281 F.R.D. at 108; *Martinez*, 2016 U.S. Dist. LEXIS 25556, at *42. *See Iglesias-Mendoza*, 239 F.R.D. at 373; *Perez v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 130214, at *67 (E.D.N.Y. Sep. 16, 2014). Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

### G.   Plaintiff's Counsel Should Be Appointed as Class Counsel

Rule 23(g) requires that an attorney appointed to serve as class counsel "must fairly and adequately represent the interests of the class." Plaintiff's counsel has been approved as class counsel in over 60 class actions and is amply serving the interest of the Class. *See* C.K. Lee Declaration.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff has satisfied all of the requirements under Fed. R. Civ.

P. 23. Therefore, Plaintiff respectfully request that Plaintiff's motion for class certification be

granted in its entirety.

Dated: New York, New York                    Respectfully submitted,
      December 1, 2023

                                    LEE LITIGATION GROUP, PLLC

                      By:   */s/ C.K. Lee*
                                    C.K. Lee, Esq. (CL 4086)
                                    Lee Litigation Group, PLLC
                                    148 West 24th Street, 8th Floor
                                    New York, NY 10011
                                    Tel: (212) 465-1188
                                    Fax: (212) 465-1181
                                    *Attorneys for Plaintiff, FLSA Collective*
                                    *Plaintiffs and the Class*