**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
Juan Lopez, *on behalf of himself, FLSA Collective*
*Plaintiffs and the Class*,                                    Case No.: 20-cv-09113

                                   *Plaintiff*,

                 *-against-*

Thermo Tech Mechanical Inc. Gowkarran Budhu, and
Shanti Budhu,

                                   *Defendants*.
-------------------------------------------------------------------------X

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR <u>CLASS CERTIFICATION  PURSUANT TO FED.R.CIV.P. 23</u>

**LEVIN-EPSTEIN & ASSOCIATES, P.C.**
Jason Mizrahi, Esq.
Joshua Levin-Epstein, Esq.
60 East 42nd Street, Suite 4700
New York, New York 10165
Tel. No.: (212) 792-0048
Email:   Jason@levinepstein.com
         Joshua@levinepstein.com
*Attorneys for Defendants*

Dated: New York, New York
       January 4, 2024

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................................... 1

RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................... 4

    A.  Thermo Tech has Robust Policies and Training to Ensure Proper Payment for all Time Worked ................................................................................................................. 4

       i.  Thermo Tech's Employee Manual ............................................................................. 4

    B.  Plaintiff's May 17, 2021 First Amended Complaint ...................................................... 5

    C.  Defendants' June 16, 2021 Responses and Objections to Plaintiff's Discovery Requests ......................................................................................................................... 5

    D.  Plaintiff's Motion for Conditional Certification of a Collective Action, Plaintiff's Supporting Declaration, Filed Under Penalty of Perjury ............................................. 6

    E.  Plaintiff's Second Amended Complaint ........................................................................ 6

    F.  The May 31, 2023 Memorandum and Order .................................................................. 7

    G.  Defendants' Supplemental Document Productions of 4,273 Pages of Records ........... 7

LEGAL STANDARD ................................................................................................................... 8

  I.  Legal Standard for Certification of a Class Action ............................................................ 8

ARGUMENT ................................................................................................................................. 9

  I.  Plaintiff Lacks Standing to Represent the Purported Class ................................................ 9

  II.  Plaintiff has not Satisfied the Requirements of Fed.R.Civ.P. 23 ...................................... 10

    A.  Plaintiff's Proposed Class is Comprised of an Impermissible Fail-Safe Class, and is Thus, not Ascertainable ............................................................................................. 10

    B.  Plaintiff has not Satisfied the Four (4) Factors of Fed.R.Civ.P. 23(a) ........................ 11

       i.  Numerosity ................................................................................................................. 11

       ii.  Plaintiff's Claims are Neither Common, nor Typical, of the Putative Class ........ 13

1.    The Issues of Liability and Damages Each Non-Exempt Employee at Thermo Tech Must Prove ........................................................................................... 13

2.    Plaintiff Offers no Common Proof to Adjudicate the Issues of Liability and Damages as to all Non-Exempt Employees .................................................... 15

3.    The Factors That Plaintiff Claim Resulted in Off-The-Clock Are Non-Existent or Individualized. ............................................................................... 18

iii.   Plaintiff is not an Adequate Class Representative ................................................. 18

C.   Plaintiff Has not Satisfied Either of the Two (2) Requirements of Fed.R.Civ.P. 23(b) ..................................................................................................... 19

i.    Plaintiff has Failed to Prove That Common Issues Will Predominate Over Individual Issues Under Rule 23(b)(3) ................................................................. 19

ii.   Superiority.............................................................................................................. 22

**CONCLUSION** ....................................................................................................................... **23**

## TABLE OF AUTHORITIES

**Cases**

*Alix v. Wal-Mart Stores, Inc.,*
    838 N.Y.S.2d 885 (N.Y. Sup. Ct. 2007) ................................................................. 17, 22

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) .......................................................................................... 19

*Antonio Onate, Jr., v. AHRC Health Care, Inc.,*
    2023 WL 8648167 (S.D.N.Y. 2023) ........................................................................ 8

*Babineau v. Fed. Ex. Corp.,*
    576 F.3d 1183 (11th Cir. 2009) ............................................................................ 17

*Basco v. Wal-Mart Stores, Inc.,*
    2004 WL 1497709 (E.D. La. 2004) ....................................................................... 14

*Brickey v. Dolgencorp, Inc.,*
    272 F.R.D. 344 (W.D.N.Y. 2011) ......................................................................... 17

*Brown v. ScriptPro, LLC,*
    700 F.3d 1222 (10th Cir. 2012) ....................................................................... 14, 19

*Brumbelow v. Quality Mills, Inc.,*
    462 F.2d 1324 (5th Cir. 1972) ............................................................................. 14

*Burkhart-Deal v. Citifinancial, Inc.,*
    2010 WL 457122 (W.D. Pa. 2010) ................................................................ 3, 20, 22

*Camilotes v. Resurrection Health Care Corp.,*
    286 F.R.D. 339 (N.D. Ill. 2012) ........................................................................... 22

*Cohen v. Beneficial Indus. Loan Corp.,*
    337 U.S. 541 (1949) .......................................................................................... 18

*Comcast Corp. v. Behrend,* 569 U.S. 27 (2013) ........................................................ 2, 19

*Eng-Hatcher v. Sprint Nextel Corp.,*
    2009 WL 7311383 (S.D.N.Y. 2009) ...................................................................... 17

*Espenscheid v. DirectSat USA, LLC,*
    705 F.3d 770 (7th Cir. 2013) .............................................................................. 22

*Fernandez v. Wells Fargo Bank, N.A.,*
    2013 WL 4540521 (S.D.N.Y. 2013) ............................................................ 3, 17, 19, 20

*Ginsburg v. Comcast Cable Commc'ns Mgmt, LLC*,
    2013 WL 1661483 (W.D. Wash. 2013) ........................................................................... 18

*Gordon v. Kaleida Health,*
    2014 WL 1279170 (W.D.N.Y. 2014) ............................................................................. 17

*Hicks v. T.L. Cannon Corp.*,
    35 F.Supp.3d 329 (W.D.N.Y. 2014) .............................................................................. 10

*Hinterberger v. Catholic Health Sys.*,
    2014 WL 1278919 (W.D.N.Y. 2014) ............................................................................. 17

*In re Bank of Am. Wage & Hour Emp. Lit.*,
    286 F.R.D. 572 (D. Kan. 2012) ....................................................................................... 3

*In re Cmty. Bank of N. Va.*,
    622 F.3d 275 (3d Cir. 2010) .......................................................................................... 18

*In re Petrobras Secs.*,
    862 F.3d 250 (2d Cir. 2017) ............................................................................................ 9

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015) ............................................................................................ 8

*Joza v. WW JFK LLC*,
    2010 WL 3619551 (E.D.N.Y. 2010) .................................................................. 14, 15, 21

*Kline v. Wolf*,
    702 F.2d 400 (2d Cir. 1983) .......................................................................................... 18

*Koike v. Starbucks Corp.*,
    378 F. App'x 659 (9th Cir. 2010) .................................................................................. 17

*Maddison v. Comfort Sys. USA (Syracuse)*,
    2018 U.S. Dist. LEXIS 16090 (N.D.N.Y. 2018) ......................................................... 9, 10

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) .......................................................................................... 19

*Newton v. City of Henderson*,
    47 F.3d 746 (5th Cir. 1995) ........................................................................................... 14

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*,
    772 F.3d 111 (2d Cir. 2014) ...................................................................................... 11, 12

iv

*Roach v. T.L. Cannon Corp*,
    2015 U.S. Dist. LEXIS 177286 (N.D.N.Y. 2015) ............................................................ 10

*Romero v. H.B. Auto. Grp., Inc.*,
    2012 WL 1514810 (S.D.N.Y. 2012) ............................................................ 13, 17

*Sanchez v. New York Kimchi Catering, Corp.*,
    320 F.R.D. 366 (S.D.N.Y. 2017) ............................................................ 12

*Seever v. Carrols Corp.,,*
    528 F. Supp. 2d 159 (W.D.N.Y. 2007) ............................................................ 14, 16, 21

*Singh v. City of New York*,
    418 F. Supp. 2d 390 (S.D.N.Y. 2005) ............................................................ 14

*Singh v. City of New York*,
    524 F.3d 361 (2d Cir. 2008) ............................................................ 14

*Smith v. Family Video Movie Club, Inc.*,
    2013 WL 1628176 (N.D. Ill. 2013) ............................................................ 18

*Spread Enters., Inc. v. First Data Merchant Servs. Corp.*,
    298 F.R.D. 54 (E.D.N.Y. 2014) ............................................................ 11

*Vang v. Kohler Co.*,
    488 F. App'x 146 (7th Cir. 2012) ............................................................ 17

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ............................................................ 13

*Whineglass v. Smith*,
    2013 WL 2237841 (M.D. Fla. 2013) ............................................................ 15

*White v. Baptist Mem'l Health Care Corp.*,
    699 F.3d 869 (6th Cir. 2012) ............................................................ 14

*White v. Osmose, Inc.*,
    204 F. Supp. 2d 1309 (M.D. Ala. 2002) ............................................................ 14

*Whiteside v. Hover-Davis, Inc.,*
    995 F.3d 315 (2d Cir. 2021) ............................................................ 15

*Zivali v. AT&T Mobility LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011) ............................................................ 14

**<u>Statutes</u>**

Fed.R.Civ.P. 23(a) ........................................................................................................... 8, 13

Fed.R.Civ.P. 23(b) ............................................................................................................... 19

Defendants Thermo Tech Mechanical Inc. ("Thermo Tech"), Gowkarran Budhu and Shanti Budhu, (collectively, the "Defendants"), by and through the undersigned counsel, Levin-Epstein & Associates, P.C., respectfully submit this Memorandum of Law, together with the Declaration of Jason Mizrahi, Esq., (the "Mizrahi Decl."), and the exhibits annexed thereto, in opposition to Plaintiff Juan Lopez's (the "Plaintiff") motion for class certification filed on December 1, 2023 [Dckt. Nos. 116-119], pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 23 (the "Motion for Class Certification"), and as grounds thereto respectfully state as follows:

## **PRELIMINARY STATEMENT**

Plaintiff seeks to certify a single class of all "non-exempt employees" who have ever worked at Thermotech since October 30, 2014.[1] This broad class is mostly comprised of part-time union members[2], who are subject to collective bargaining agreements – a critical fact that Plaintiff tacitly omits from the instant Motion. To certify a class in this case would mean that the claims of dozens of part-time union members, spanning almost ten (10) years would be adjudicated by Plaintiff (a non-union member), and the facts and circumstances that pertain to him. A class can only be certified where the class representative's claims are so homogeneous with the claims of the absent class members that the adjudication of the representative's claim necessarily will adjudicate the class members' claims and bind both the class members and defendants consistent with Due Process. This extraordinary departure from litigation between named parties is only permitted where the Court finds, after a "rigorous" analysis, that a plaintiff has proven by a preponderance of admissible evidence that each element of Rule 23 is satisfied. *See Comcast Corp.*

---

[1] Plaintiff seeks to certify a class of all non-exempt employees (including but not limited to HVAC installation, maintenance, and repair workers) employed by Thermo Tech. any time between October 20, 2014, to some unspecified date in the future (*i.e.,* for nearly ten (10) years). [*See* Dckt. No. 118-1].

[2] [*See* Mizrahi Decl. at ¶ 4] [Ex. A] [G. Budhu March 2, 2022 Depo. Trans. at 30:7-19; 57:4-10; 58:16-25; 105:20-25; 106:4-25]; [*see also* Dckt. No. 118-2] [G. Budhu September 28, 2023 Depo. Trans. at 16:1-13; 17:2-21; 18:1-11].

*v. Behrend*, 569 U.S. 27, 33 (2013). Because Plaintiff has utterly failed to meet his burden, the instant Motion should be denied.

Plaintiff (a non-union member) seeks the certification of a class (comprised almost exclusively of part-time union members) based on Plaintiff's claims for: (i) unpaid prevailing wages under common law; (ii) unpaid overtime; (iii) wage statement violations; and (iv) wage notice violations, under the NYLL. Plaintiff's overtime claim, in turn, is predicated on the three (3) theories of off-the-clock work, *to wit*: (i) rounding down[3]; (ii) meal breaks[4]; and (iii) reduction in hours.[5] Critically, Plaintiff does not allege that the part-time, unionized class he seeks to certify worked off-the-clock, was not paid prevailing wages, or did not receive notices, *as a class*. Instead, Plaintiff alleges only that during his two (2) year employment, certain unidentified, union employees were sporadically not paid prevailing wages, or worked off-the-clock. [*See* December 1st Lopez Decl. at ¶¶ 3-9]. Plaintiff does not articulate exactly how many "other" unionized class members were similarly situated, and offers no basis on which to adjudicate the issues of liability and damages by proof common to the class.

---

[3] Plaintiff alleges that, until May 2018, Thermo Tech's accountant, Shanti Budhu, "would prevent [Plaintiff] and others from writing down the exact time [they] stopped working[,]" and instructed them to "round down [their] time worked to the nearest half-hour." [*See* Dckt. No. 119 at ¶ 3] (the "December 1st Lopez Decl."). "The same thing would happen at the beginning of shifts." [*Id*. ¶ 4]. This allegedly deprived plaintiff of pay "[s]everal time[s] a week," when he began work 5-10 minutes before his scheduled shift, or had to work for 10-25 minutes past his scheduled shift, because he was not permitted to record that time. [*Id*].

[4] Plaintiff alleges that he, and certain "other" Thermo Tech employees, were also allegedly "time-shaved through their meal breaks," in that their "hours were added up as though [they] had taken exactly an hour for lunch." [*Id*. at ¶ 5]. Defendants were able to do this because, as Plaintiff alleges, "[t]he standard form on which we wrote down our hours did not contain entries to track the actual time spent in lunch breaks, and I was forced to add up my hours as though I had taken an entire hour for lunch." [*Id.*]. Plaintiff allegedly "would always take only a 30-minute break" for lunch. [*Id.*].

[5] Thermo Tech switched to an electronic timekeeping system in May 2018, which "did record the precise times Plaintiff and others began and ended work." [*Id*. at ¶ 6]. However, Plaintiff alleges that on two (2) occasions after the electronic system was introduced (on June 1 and August 10, 2018), there was a discrepancy between his weekly paycheck (which he kept) and his underlying electronic timesheet for the corresponding week (which Defendants produced in discovery). [*Id*.]. As a result, Plaintiff alleges, he was not paid for a total of approximately 2.49 hours of work. [*See* Dckt. Nos. 119-2; 119-3.]. However, because he worked less than 40 hours in each of these weeks, no overtime wages were unpaid or underpaid. [*Id*.].

The only common evidence between Plaintiff and the purported class is Thermo Tech's employee manual (the "Employee Manual"), which every employee is required to review, sign and date at the time-of-hire. The Employee Manual contains Thermo Tech's robust policies requiring that all non-exempt employees record (and be paid for) all time worked. Plaintiff has never offered a theory, much less any evidence, as to how each of the issues of liability and damages could be determined on a class-wide basis. Indeed: (i) whether each class member worked overtime (or when, or how much); (ii) whether the class member recorded that time using the required timekeeping mechanism; (iii) whether the class member was directed to perform the alleged work; (iv) whether the class member requested permission to work overtime and whether the request was approved or denied; (v) whether and to what extent the class member was paid overtime; (vi) whether the alleged uncompensated work was compensable under the applicable standards ; and (vii) whether the manager had actual or constructive knowledge of the alleged uncompensated work, are completely individual inquires.

Courts have consistently denied class certification of off-the-clock claims under circumstances similar to this case – where the employer has published policies requiring the payment of all time worked, and the determination of whether any particular class member worked off-the-clock contrary to those policies would require an individualized inquiry. *See, e.g., Fernandez v. Wells Fargo Bank, N.A.,* 2013 WL 4540521, at \*7 (S.D.N.Y. 2013); *In re Bank of Am. Wage & Hour Emp. Lit*., 286 F.R.D. 572, 585-86, 588 (D. Kan. 2012); *Burkhart-Deal v. CitiFinancial Inc*., 2010 WL 457122, at\*4-5 (W.D. Pa. 2010).

Because Plaintiff has failed their burden to establish that each element of Rule 23 has been satisfied as to the proposed class (comprised mostly of unionized employees), Plaintiff's Motion should be denied in its entirety.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Thermo Tech has Robust Policies and Training to Ensure Proper Payment for all Time Worked

The instant action was filed on October 30, 2020. [*See* Dckt. No. 1]. Defendants' counsel appeared in this action on February 10, 2021. [Dckt. Nos. 12-13]. On March 10, 2021, the undersigned counsel produced the following categories of records as part of Defendants' Fed.R.Civ.P. 26(a) initial disclosures: (i) IRS W-4 Forms for Plaintiff; (ii) a signed and dated employee manual; (iii) payroll records, and (iv) signed and dated weekly time sheets. [Mizrahi Decl. at ¶ 3]. These documents evidence Thermo Tech's robust policies and training to ensure that all non-exempt employees are paid for all time worked.

### i.    Thermo Tech's Employee Manual

At all relevant times, all non-exempt employees at Thermo Tech were subject to policies and training that required them to accurately record all of their time worked, including overtime. [Mizrahi Decl. at ¶ 4] [Ex. A] [G. Budhu March 2, 2022 Depo. Trans. at 30: 23-25-31:1-11]; [Dckt. No. 118-2] [G. Budhu September 28, 2023 Depo. Trans. at 50:2-10]. Thermo Tech's Employee Manual provides that all regular and overtime hours worked must be recorded, and paid. [Mizrahi Decl. at ¶ 5] [Ex. B] [Employee Manual at § 7.1]. Furthermore, the Employee Manual provides that off-the-clock work is strictly prohibited, and is considered non-compensable. [*Id*.]. Non-exempt employees at Thermo Tech are also expressly advised that they are allowed a daily 30-minute unpaid meal break. [Mizrahi Decl. at ¶ 5] [Ex. B] [Employee Manual at § 4.4]. The Employee Manual further provides that if employees have "any questions with respect to any of the…provisions of this Employee Manual" they should contact their "immediate supervisor or management." [Mizrahi Decl. at ¶ 5] [Ex. B] [Employee Manual at § 9.6]. Employees are expressly informed that they are "entitled and encouraged to express [their] point of view on work-related

4

matters in a constructive manner, as well as to make any productive suggestions in any of the communication avenues available within the Company." [*Id*.].

The record is replete with evidence that non-exempt employees at Thermo Tech followed these policies. As set forth more fully in § IV(B)(ii), *infra*, these facts directly contradict any claim of a class-wide policy or practice of requiring off-the-clock work.

### B. Plaintiff's May 17, 2021 First Amended Complaint

On May 17, 2021, *i.e.,* approximately two (2) months after the production of Defendants' Rule 26(a) disclosures, Plaintiff filed an amended complaint (the "First Amended Complaint", or *FAC*]. [*See* Dckt. No. 22]. The First Amended Complaint principally alleges that Plaintiff worked at Thermo Tech as an HVAC installation worker, and, from January 2016 until May 2018, was not compensated for alleged "gap-time" work performed 5 to 10 minutes before his scheduled shift, 30 minutes after his lunch break, and 10 to 25 minutes past his scheduled shift. [*FAC* at ¶¶ 14, 18-19]. As a result, Plaintiff alleges that he, and the purported FLSA collective, were not paid "for all regular or overtime hours" under the FLSA. [*Id*. at ¶ 24].

### C. Defendants' June 16, 2021 Responses and Objections to Plaintiff's Discovery Requests

On June 16, 2021, Defendants' produced responses and objections to Plaintiff's document requests and interrogatories. [Mizrahi Decl. at ¶ 6]. Defendants' June 16, 2021 responses included hundreds of pages of payroll records, time keeping records, sign-in, sign-out sheets, text messages, emails, employee manuals, and tax filings, undermining Plaintiff's *de minimis* claims. [*Id*.].

Thus, Plaintiff has been in possession of hundreds of pages of payroll and timekeeping records for nearly three (3) years.

### D. Plaintiff's Motion for Conditional Certification of a Collective Action, Plaintiff's Supporting Declaration, Filed Under Penalty of Perjury

On May 19, 2021, Plaintiff filed a motion for conditional certification of a collective action pursuant to 29 U.S.C. § 216(b) (the "Motion for Conditional Certification"). [Dckt. Nos. 25-27]. This motion was filed "on behalf of all non-exempt HVAC installation, maintenance, and repair workers employed by Defendants[.]" [Dckt. No. 26 at p. 1]. The factual predicate of the Motion for conditional certification tracks the allegations of the First Amended Complaint, *i.e.*, that from January 2016 to, through and including May 2018, Plaintiff worked off-the-clock, and as a result, was not paid for all overtime hours worked.  [*Id.* at p. 2; Dckt. No. 27 at ¶ 1]. In support of the Motion for Conditional Certification, Plaintiff filed a declaration, under penalty of perjury, averring that around May 2018, Defendants started using an electronic time keeping system, that precisely recorded all of the hours that Plaintiff actually worked. [*See* Dckt. No. 27 at ¶ 6]. With the exception of two (2) occasions (on June 1, 2018 and August 10, 2018)[6], Plaintiff was paid for all regular and overtime hours worked, since the introduction of the electronic time keeping system in May 2018. [*Id.*]. On December 2, 2022, the Honorable Chief Judge Laura Taylor Swain reinstated Plaintiff's Motion for Conditional Certification, "effective as of December 5, 2022." [*See* Dckt. No. 65].

### E.  Plaintiff's Second Amended Complaint

On February 18, 2023, Plaintiff – on Defendants' consent [*see* Dckt. No. 80] – filed the Second Amended Complaint. As previously set forth in §§ A, and C, *supra,* as of the date of

---

[6] On June 1, Plaintiff was allegedly paid for 38.44 hours, although his underlying electronic timesheet for the week of May 21-25 showed 38.75 hours worked – a difference of 0.31 hours. [*See* Dckt. No. 119-2]. On August 10, he was paid for 4.5 hours, although his underlying timesheet for the week of July 30-August 3 showed 6.68 hours worked – a difference of 2.18 hours. [*See* Dckt. No. 119-3]. Taken together, it appears that Plaintiff was allegedly not paid for a total of 2.49 hours. [*Id.*]. However, because he worked less than 40 hours in each of these weeks, no overtime wages were unpaid or underpaid.

Second Amended Complaint, Plaintiff had been in possession of **hundreds** of pages of payroll records, time keeping records, sign-in, sign-out sheets, text messages, emails, employee manuals, and tax filings.

Of critical importance, the factual predicate of the Second Amended Complaint mirrored the allegations of the First Amended Complaint, and the Motion for Conditional Certification, *i.e.,* that from January 2016 to, through and including May 2018, Plaintiff worked off-the-clock, and thus, was not paid for all overtime hours worked. [*SAC* at ¶¶14-16, 25].

### F.   The May 31, 2023 Memorandum and Order

On May 31, 2023, the Honorable Magistrate Judge Moses entered a memorandum and order [Dckt. No. 92] (the "May 31st Memorandum and Order"), *inter alia*, denying Plaintiff's Motion for Conditional Certification. The May 31st Memorandum and Order concluded, in pertinent part, that:

> "Plaintiff has received document discovery and was permitted to further amend his complaint for the specific purpose of stating a viable FLSA overtime claim, yet he remains unable to point to a single week in which he – or any other non-exempt Thermo Tech employee – worked more than 40 hours after the date on which defendants installed the electronic timekeeping system. On this record, the Court is not required to accept plaintiff's assertion, made only in his reply brief, that 'most weeks' were different from the two he chose to highlight in his pleading and declaration."

[May 31st Memorandum and Order at p. 12, fn. 6].

### G.  Defendants' Supplemental Document Productions of 4,273 Pages of Records

Pursuant to the directives in § IV of the May 31st Memorandum and Order [*id.* at p. 16], on June 17, 2023 and June 18, 2023, Defendants' supplemented their document production with approximately 4,273 individual pages of business records for all current and former…non-exempt HVAC installation, maintenance, and repair, workers employed by Defendants on or after the date that is six (6) years before July 26, 2021 ("Covered Employees"). [Mizrahi Decl. at ¶ 7].

7

Specifically, Defendants produced pay stubs/checks, their underlying time records, their NYLL wage notices and wage statements, and any employee manuals, memos, or other documents of general application, describing the job duties, hours, wages, and/or required timekeeping obligations, for all Covered Employees. [*Id.*].

Thus, as of the filing of the Motion for Class Certification (*i.e.,* December 1, 2023), Plaintiff had been in possession of nearly 4,500 individual pages of payroll records, time keeping records, sign-in, sign-out sheets, text messages, emails, employee manuals, and tax filings. Plaintiff has also deposed the Individual Defendant twice, once on March 2, 2022, and again on September 28, 2023. [*See* Mizrahi Decl. at ¶ 4] [Ex. A]; [*see also* Dckt. No. 118-2].

## LEGAL STANDARD

### I.  Legal Standard for Certification of a Class Action

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). In total, a plaintiff must satisfy seven (7) requirements. First, "A class may be certified only if, 'after a rigorous analysis,' the district court is satisfied that the [four] prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met." *Antonio Onate, Jr.*, v. *AHRC Health Care, Inc.*, 2023 WL 8648167, at *2–3 (S.D.N.Y. 2023) (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)) (internal citation omitted). Those prerequisites are a showing that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Next, a plaintiff must satisfy two (2) more requirements under Rule 23(b)(3) – predominance and superiority. *AHRC Health Care, Inc.*, 2023 WL 8648167 at *6 (citing Fed.R.Civ.P. 23(b)(3)) . Finally, a plaintiff must also satisfy "an implied requirement of

ascertainability" to ensure that the class is sufficiently definite so that the Court can determine whether a particular individual is a member. *See In re Petrobras Secs*., 862 F.3d 250, 260 (2d Cir. 2017).

### ARGUMENT

### I.    Plaintiff Lacks Standing to Represent the Purported Class

"A class cannot be certified if a named plaintiff lacks Article III standing." *Maddison v. Comfort Sys. USA (Syracuse)*, 2018 U.S. Dist. LEXIS 16090, at \*26 (N.D.N.Y. 2018) (citing *Vaccariello v. XM Satellite Radio, Inc*., 295 F.R.D. 62, 68 (S.D.N.Y. 2013)). "Accordingly, the named plaintiff must 'allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id*.  (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

In the instant pending Motion, Plaintiff seeks certification of, and purports to represent, a Rule 23 subclass of all "non-exempt employees" employed at Thermotech since October 30, 2014.[7] [*See* Dckt. No. 118-1 at p. 2]. This broad class is nearly entirely comprised of part-time union members[8], who are each subject to collective bargaining agreements – a fact that Plaintiff tacitly omits from the instant Motion. Accepting Plaintiff's own allegations, his employment spanned "from in or about January 2016 until in or about August 2018." [*See* December 1st Lopez Decl. at ¶ 1].  The purported class, however, spans approximately one (1) year before and over four (4) years after Plaintiff's alleged employment with Defendants.

Plaintiff cannot claim to be injured by Defendants' alleged actions as to its employees before or after his dates of employment. *See Maddison*, 2018 U.S. Dist. LEXIS 16090 at \*27

---

[7] Plaintiff seeks to certify a class of all non-exempt employees (including but not limited to HVAC installation, maintenance, and repair workers) employed by Thermo Tech. any time between October 20, 2014, to some unspecified date in the future (*i.e.,* for nearly ten (10) years). [*See* Dckt. No. 118-1].

[8] [*See* Mizrahi Decl. at ¶ 4] [Ex. A] [G. Budhu March 2, 2022 Depo. Trans. at 30:7-19; 57:4-10; 58:16-25; 105:20-25; 106:4-25]; [*see also* Dckt. No. 118-2] [G. Budhu September 28, 2023 Depo. Trans. at 16:1-13; 17:2-21; 18:1-11].

("Plaintiff cannot claim to have been injured by any underpayment made by Defendant to its employees before or after his dates of employment."). Therefore, Plaintiff only has standing (if at all) to represent the putative Rule 23 class for injuries incurred during his employment from January 2016 until in or about August 2018. *See Maddison*, 2018 U.S. Dist. LEXIS 16090 at \*27 (holding "Plaintiff only has standing to represent the Rule 23 and FLSA Classes regarding injuries that the putative classes incurred between May 2011 and May 2015"); *Roach v. T.L. Cannon Corp*, 2015 U.S. Dist. LEXIS 177286, \*19-20 (N.D.N.Y. 2015) (narrowing the "temporal scope" of Rule 23 class claims because named plaintiffs did not have standing to represent the class on dates outside of their employment with defendant).

Accordingly, the Court should deny certification of the Rule 23 class for claims outside the dates of Plaintiff's employment with Defendants.

## II.    Plaintiff has not Satisfied the Requirements of Fed.R.Civ.P. 23

As set forth more fully below, Plaintiff has not carried his burden of establishing each of the requirements of Fed.R.Civ.P. 23.

### A. Plaintiff's Proposed Class is Comprised of an Impermissible Fail-Safe Class, and is Thus, not Ascertainable

"A fail-safe class is one whose definition shields the putative class members from receiving an adverse judgment." *Hicks v. T.L. Cannon Corp*., 35 F.Supp.3d 329, 356 (W.D.N.Y. 2014) (internal quotation marks omitted). "In a fail-safe class, either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment." *Id*. at 357. "A proposed 'fail-safe' class should not be certified because it is unfair to defendants, it prevents an adverse judgment being entered against plaintiffs, and it is unmanageable because the members of the class could only be known after a determination of liability." *Id*. For example, one court held that a proposed class of merchants who were charged "excessive fees" by defendants constituted

a fail-safe class. *Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 69 (E.D.N.Y. 2014). In other words, the class "turn[ed] on whether the fees that the Merchants were being charged by the Defendants were excessive rather than on whether the Merchants were simply being charged a particular fee regardless of whether it was excessive." *Id*. Given this language, the class definition was not "neutral," in that it "presuppose[s] that the subject fees were excessive, despite the fact that the Defendants dispute this allegation." *Id*. at 69-70. And consequently, "if a jury determined that the fees at issue were not excessive under the terms of the [agreements], then there would no longer be any members of [the class], because a Merchant's membership ... relies upon the fees being excessive and not on whether they were charged the fees at issue." *Id*. at 70. Plaintiff's has defined his proposed class as: "all non-exempt employees, including HVAC installation, maintenance, and repair workers employed by Defendants, on or after October 20, 2014." [9] [Dckt. No. 117 at p. 18].

This broad fail-safe class extends far beyond the alleged off-the-clock allegations at-issue, giving rise to Plaintiff's overtime claim under the NYLL. This broad fail-safe class further extends far beyond Plaintiff's claim that he was not paid prevailing wages, for work performed on prevailing wage sites. This broad fail-safe class is further compromised mostly of part-time union members, who are subject to collective bargaining agreements. Accordingly, this is an impermissible fail-safe class.

### B. Plaintiff has not Satisfied the Four (4) Factors of Fed.R.Civ.P. 23(a)

#### i.    Numerosity

"Numerosity is presumed for classes larger than forty members." *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) (citation omitted).

---

[9] Plaintiff seeks to certify a class of all non-exempt employees (including but not limited to HVAC installation, maintenance, and repair workers) employed by Thermo Tech. any time between October 20, 2014, to some unspecified date in the future (*i.e.,* for nearly ten (10) years). [*See* Dckt. No. 118-1].

By contrast, "[c]ourts will generally decline to certify classes comprising fewer than approximately 25 members absent extraordinary circumstances." *Sanchez v. New York Kimchi Catering, Corp.*, 320 F.R.D. 366 , 374 (S.D.N.Y. 2017) (citation omitted). "However, the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *Pennsylvania Pub. Sch.*, 772 F.3d at 120.

Plaintiff estimated that there are at least 40 individuals in the proposed class, and that this Court should thus presume numerosity. [Dckt. No. 117 at p. 19]. Despite the undisputed fact that Plaintiff is in possession 4,500 individual pages of payroll records, time keeping records, sign-in, sign-out sheets, text messages, emails, employee manuals, and tax filings, pertaining to Plaintiff, and all of the Covered Employees, Plaintiff's tacitly omits any mention that this broad class is nearly entirely comprised of union members[10] – who are each subject to collective bargaining agreements. Plaintiff's estimation is exclusively based off of two (2) sources, *to wit:* (i) a short excerpt from the deposition testimony of Gowkarran Budhu; and (ii) a schedule to a Group Employment Practices Liability Certificate. [*See* Dckt. No. 117 at pp. 18-19].

The Individual Defendant – as a Fed.R.Civ.P. 30(b)(6) witness – was deposed twice: on March 2, 2022, and on September 28, 2023. [*See* Mizrahi Decl. at ¶ 4] [Ex. A]; [*see also* Dckt. No. 118-2]. During both of these depositions, the Individual Defendant, testified at length that Thermo Tech typically employees eight (8) to ten (10) non-union employees. [Mizrahi Decl. at ¶ 4] [Ex. A] [G. Budhu March 2, 2022 Depo. Trans. at 30:7-19; 57:4-10; 58:16-25; 105:20-25; 106:4-25;

---

[10] [*See* Mizrahi Decl. at ¶ 4] [Ex. A] [G. Budhu March 2, 2022 Depo. Trans. at 30:7-19; 57:4-10; 58:16-25; 105:20-25; 106:4-25]; [*see also* Dckt. No. 118-2] [G. Budhu September 28, 2023 Depo. Trans. at 16:1-13; 17:2-21; 18:1-11].

[*see also* Dckt. No. 118-2] [G. Budhu September 28, 2023 Depo. Trans. at 16:1-13; 17:2-21; 18:1-11]. The Individual Defendant further testified that Thermo Tech occasionally hires union members, on a part-time, temporary, basis. [*Id*.]. Assuming, *arguendo*, that there are at least 40 individuals in the proposed class – the majority of the putative class members are part-time union members. [*Id*.]. Any hypothetical claims for overtime, or prevailing wages, would be governed by the collective bargaining agreements contained in their respective union contracts. As set forth more fully in § IV(C)(ii), *infra*, the union grievance process would provide these putative class members with the exclusive (and more efficient) forum to resolve any individual disputes.

### ii.    Plaintiff's Claims are Neither Common, nor Typical, of the Putative Class

Fed.R.Civ.P. 23(a)(2) requires that there be "questions of law or fact common to the class[,]" while Fed.R.Civ.P. 23(a)(3) requires that the claims "of the representative parties are typical of the claims…of the class." *See* Fed.R.Civ.P. 23(a)"The commonality and typicality requirements tend to merge" and are often addressed together. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, at 2551 n. 5 (2011). Commonality "does not mean merely that [class members] have all suffered a violation of the same provision of law." *Id*. at 2551. Rather, to satisfy commonality, a common question must be "of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  "What matters to class certification…is not the raising of common 'questions' – even in droves – but, rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*  (quotation omitted); *Romero v. H.B. Auto. Grp., Inc*., 2012 WL 1514810, at *18 (S.D.N.Y. 2012).

#### 1.  The Issues of Liability and Damages Each Non-Exempt Employee at Thermo Tech Must Prove

Notably, Plaintiff does not identify the issues of liability and damages that he will need to prove for each class member for each work week that he or she worked, or identify any common

evidence that could prove any of those elements for all putative class members. The issues of liability that Plaintiff must prove and the Court must determine include: (i) whether each class member worked overtime (or when, or how much); (ii) whether the class member recorded that time using the required timekeeping mechanism[11] ; (iii) whether the class member was directed to perform the alleged work[12]; (iv) whether the class member requested permission to work overtime and whether the request was approved or denied[13]; (v) whether and to what extent the class member was paid overtime[14]; (vi) whether the alleged uncompensated work was compensable under the applicable standards[15] ; and (vii) whether the manager had actual or constructive knowledge of the alleged uncompensated work.[16]

If a non-exempt employee were able to establish all of these elements, then they must prove damages by offering, in each workweek that he or she worked more than 40 hours without

---

[11] *See, e.g., Joza v. WW JFK LLC*, 2010 WL 3619551, at *7 (E.D.N.Y. 2010) (denying overtime claims in part because employee failed to record her time on time records); *Seever v. Carrols Corp*.,, 528 F. Supp. 2d 159, 170 (W.D.N.Y. 2007) (dismissing off-the-clock claims in part because of "the undisputed fact that plaintiffs never reported this work on their timesheets"); *see also Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230-31 (10th Cir. 2012) ("Under these circumstances, where the employee fails to notify the employer through the established overtime recordkeeping system, the failure to pay overtime is not a FLSA violation"); *White v. Baptist Mem'l Health Care Corp*., 699 F.3d 869, 876 (6th Cir. 2012) (affirming decertification because "[u]nder the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process.").

[12] *Joza*, 2010 WL 3619551, at *3 (overtime claim rejected in part because plaintiff "acknowledged that she had not been asked by any manager to work any of those overtime hours"); *Brumbelow v. Quality Mills, Inc*., 462 F.2d 1324, 1327 (5th Cir. 1972) (affirming dismissal of off-the-clock claim where plaintiff was not directed to perform work off-the-clock, though she was directed to complete duties).

[13] *Newton v. City of Henderson*, 47 F.3d 746, 747 (5th Cir. 1995) (reversing judgment for plaintiff where plaintiff was told not to work unauthorized overtime, but did so and turned in timesheets that did not include overtime).

[14] *Joza*, 2010 WL 3619551, at *3 (overtime claim rejected in part because plaintiff had submitted overtime on her time records, "all of which were paid"); *White v. Osmose, Inc*., 204 F. Supp. 2d 1309, 1318 (M.D. Ala. 2002) ("Because [the employer] did in fact pay some overtime, it is likely that any particular [off-the-clock] claim will require specific, individualized proof as to any hours that [employer] refused to pay.").

[15] *Singh v. City of New York*, 524 F.3d 361, 364 (2d Cir. 2008) (affirming summary judgment for defendant because work time was "de minimis as a matter of law and thus not compensable under the FLSA" and recognizing that preliminary and postliminary activities are not compensable); *Basco v. Wal-Mart Stores, Inc*., 2004 WL 1497709, at *8 (E.D. La. 2004) (denying certification where individualized defenses included whether activities were preliminary or postliminary).

[16] *Singh v. City of New York*, 418 F. Supp. 2d 390, 397 (S.D.N.Y. 2005) (fact finder must determine "how much of that time was spent with the employer's actual or constructive knowledge"); *Zivali v. AT&T Mobility LLC*, 784 F. Supp. 2d 456, 467-68 (S.D.N.Y. 2011) (decertifying FLSA collective action in part because of individualized determination as to whether each individual manager had knowledge of alleged off-the-clock work).

14

compensation, "specific facts establishing when, and for how long, she performed the off-the-clock tasks for which she now seeks compensation."[17] Assuming any non-exempt employee could meet his or her burden of proving each of the above elements, the following additional issues of damages and defenses would have to be proven: (i) whether any unlawful failure to pay overtime to the non-exempt employee was willful, (ii) whether any unlawful failure to pay overtime to any non-exempt employee was based on a good faith belief that it was in compliance with the law (which would defeat a claim for liquidated damages)[18]; and (iii) whether Thermo Tech has an additional defense such as the statute of limitations or a release.[19]

### 2. Plaintiff Offers no Common Proof to Adjudicate the Issues of Liability and Damages as to all Non-Exempt Employees

Plaintiff – the putative class representative – can only prove the elements of liability and damages by his own testimony and documents specific to himself. After Defendants' production of nearly 4,500 individual pages of payroll records, time keeping records, sign-in, sign-out sheets, text messages, emails, employee manuals, and tax filings., Plaintiff is only able to identify two (2) lone instances of unpaid "gap-time" (on June 1, 2018 and August 10, 2018).[20] Plaintiff's other allegations regarding off-the-clock work relating to meal breaks, and rounding down, are not discussed with any specificity. [*See, e.g.,* December 1st Lopez Decl. at ¶¶ 3-5]. Setting aside the tenuous nature of Plaintiff's claims[21], the question on this motion is whether the overtime claims

---

[17] *Joza*, 2010 WL 3619551, at *7 (quoting *Seever*, 528 F. Supp. 2d at 170).

[18] *Whineglass v. Smith*, 2013 WL 2237841, at *9 (M.D. Fla. 2013) (decertifying FLSA collective because the defenses of willfulness and good faith could be determined only with respect to each individual plaintiff).

[19] *Whiteside v. Hover-Davis, Inc.,* 995 F.3d 315, 325 (2d Cir. 2021) (addressing the two- and three-year statute of limitations periods in FLSA claims).

[20] On June 1, Plaintiff was allegedly paid for 38.44 hours, although his underlying electronic timesheet for the week of May 21-25 showed 38.75 hours worked – a difference of 0.31 hours. [*See* Dckt. No. 119-2]. On August 10, he was paid for 4.5 hours, although his underlying timesheet for the week of July 30-August 3 showed 6.68 hours worked – a difference of 2.18 hours. [*See* Dckt. No. 119-3]. Taken together, it appears that Plaintiff was allegedly not paid for a total of 2.49 hours. [*Id.*]. However, because he worked less than 40 hours in each of these weeks, no overtime wages were unpaid or underpaid.

[21] *Joza*, 2010 WL 3619551, at *3 (entering judgment for defendant on off-the-clock overtime claim where plaintiff did not record the overtime she claimed on her timesheet, she was not asked by her manager to work the overtime,

of as many as 41 other non-exempt employees (mostly part-time union members), spanning a 10-year period – can be adjudicated based on Plaintiff's own testimony about himself and his own managers consistent with Due Process. Plainly they cannot.

A putative class member could not be bound by the adjudication of Plaintiff's claim when the facts underlying the claim of each individual are materially different. Similarly, Thermo Tech could not be bound to every absent non-exempt employee without the opportunity to seek admissions that each non-exempt employee did not work any uncompensated overtime / prevailing wage work, or the manager did not know of such alleged uncompensated overtime / prevailing wage work.

The testimony and evidence relating to one non-exempt employee would not establish any element of liability or damages for any other non-exempt employee, and whatever a trier of fact might determine in resolving a credibility dispute between one non-exempt employee and her manager would not determine anything for any other non-exempt employee. Thermo Tech could not, consistent with Due Process, be precluded from seeking to establish that any particular class member did not work overtime, was not asked to work overtime, did not seek approval to work overtime, did not record the time on the timesheet, did not inform his or her manager that he or she worked overtime, did not complain of uncompensated work, cannot establish "specific facts" as to when, and for how long, she performed the alleged off-the-clock tasks, or any of the other issues of liability and damages outlined above that could defeat the claim of that non-exempt employee.

---

she did not inform her manager that she worked the overtime, and she did not complain of uncompensated work); *Seever*, 528 F. Supp. 2d at 171 (dismissing claims of off-the-clock work where plaintiffs never reported the overtime on their timesheets and plaintiffs were unable to provide "specific facts establishing when, and for how long, they performed the off-the-clock tasks").

This Court recently denied class certification of claims involving similar allegations of off-the-clock work. *See Fernandez*, 2013 WL 4540521, at \*2, \*6-9.  A number of other courts in this circuit have also held that where there is a policy prohibiting work off-the-clock, commonality cannot be met where resolution of who worked off-the-clock, for how long, and whether the manager knew about such work required individualized inquiries. *See, e.g., Hinterberger v. Catholic Health Sys*., 2014 WL 1278919, at \*34 (W.D.N.Y. 2014) (denying Rule 23 class certification due to lack of commonality because "NYLL liability will come down to whether, on a department specific basis, a particular supervisor did not follow CHS' directive"); *Gordon v. Kaleida Health,* 2014 WL 1279170, at \*25 (W.D.N.Y. 2014) (denying motion for class certification in off-the-clock case because there was no commonality under *Dukes*); *Romero*, 2012 WL 1514810, at \*18 (holding there was no commonality because "whether putative class members worked overtime, and whether Defendants failed to pay overtime…in violation of the NYLL – are important considerations in this case. But 'they are not common one[s]'"); *Brickey v. Dolgencorp, Inc*., 272 F.R.D. 344, 3347-48 (W.D.N.Y. 2011) (denying class and conditional certification in off-the-clock case despite allegations that limited number of hours allocated to store); *Eng-Hatcher v. Sprint Nextel Corp*., 2009 WL 7311383 (S.D.N.Y. 2009) (denying certification of proposed class and collective action despite allegations that policies to maximize sales and minimize overtime "incentivized" managers to act illegally).[22]

---

[22] *See also Alix v. Wal-Mart Stores, Inc*., 838 N.Y.S.2d 885, 893-94 (N.Y. Sup. Ct. 2007) (holding that in off-the-clock case, common issues did not predominate and so class certification was not warranted because "plaintiffs must adduce specific evidence as to which associates worked 'off-the-clock,' on what occasions, and for how long. Moreover, plaintiffs must also demonstrate that defendant either knew or had reason to know that its employees were thus engaged."); *Vang v. Kohler Co*., 488 F. App'x 146, 147 (7th Cir. 2012) (vacating for second time court's order granting class certification in off-the-clock case); *Koike v. Starbucks Corp*., 378 F. App'x 659, 661 (9th Cir. 2010) (affirming district court order denying Rule 23 motion to certify off-the-clock class because although "business pressures existed that might lead [employees] to work off-the-clock[,]" individualized factual determinations would be required to determine whether the class members in fact engaged in off-the-clock work and whether the employer had actual constructive knowledge of the off-the-clock work); *Babineau v. Fed. Ex. Corp*., 576 F.3d 1183, 1192-94 (11th Cir. 2009) (affirming district court order denying Rule 23 motion to certify off-the-clock class); *Ginsburg v.*

17

### 3.  The Factors That Plaintiff Claim Resulted in Off-The-Clock Are Non-Existent or Individualized.

Plaintiff repeatedly claims that there was a "time shaving" and "rounding" policy at Thermo Tech. [Dckt. No. 117 at p. 21]. Plaintiff further claims that there was a policy of not paying prevailing wages. [*Id.*]. This is a fiction created by Plaintiff and his counsel. There was no such policy, as is confirmed by the fact that: (i) at all relevant times, all non-exempt employees at Thermo Tech were subject to policies and training that required them to accurately record all of their time worked, including overtime; and (ii) Thermo Tech's policies, captured in the Employee Manual, was supported by nearly 4,500 individual pages of payroll records, time keeping records, sign-in, sign-out sheets, text messages, emails, employee manuals, and tax filings.

### iii.    Plaintiff is not an Adequate Class Representative

An adequacy determination under Fed. R. Civ. P. 23(a)(4) includes assessing the credibility of the proposed class representatives and whether there are any potential conflicts of interest between them and proposed class members. *See, e.g., Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). Where a class representative's credibility is significantly vulnerable to attack, they are not adequate representatives. *Kline v. Wolf*, 702 F.2d 400 (2d Cir. 1983).

Plaintiff is not an adequate class representative because he is likely to lose on his claims. *See, e.g., In re Cmty. Bank of N. Va.*, 622 F.3d 275, 294 (3d Cir. 2010) ("named plaintiffs may be inadequate representatives if their claims are extremely weak as compared to the rest of the class.")

---

*Comcast Cable Commc'ns Mgmt, LLC*, 2013 WL 1661483, at \*8 (W.D. Wash. 2013) (concluding that a Rule 23 class action for off-the-clock work was unmanageable based on a systematic efficiency pressure theory because it required individual inquiries about how often, how much, and why employees worked off-the-clock); *Smith v. Family Video Movie Club, Inc*., 2013 WL 1628176, at \*6-9, \*11 (N.D. Ill. 2013) (denying class certification in off-theclock case because company's official policy prohibited off-the-clock work and any violations of that policy were perpetuated by individual managers and thus could not be proven by proof common to the class).

In addition, Plaintiff is not an adequate representative because he has significant credibility and character issues. [*See, e.g.,* May 31st Memorandum and Order at p. 12, fn. 6].

### C. Plaintiff Has not Satisfied Either of the Two (2) Requirements of Fed.R.Civ.P. 23(b)

Even if the four (4) criteria of Fed.R.Civ.P. 23(a) are satisfied, a case may proceed as a class action only if it also qualifies under at least one (1) of the two (2) categories provided in Fed.R.Civ.P. 23(b), *to wit*: (i) predominance; and (ii) superiority. Fed.R.Civ.P. 23(b)

#### i.    Plaintiff has Failed to Prove That Common Issues Will Predominate Over Individual Issues Under Rule 23(b)(3)

"As a general matter, the Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Brown*, 609 F.3d at 476. It is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997); *see also Comcast Corp*, 569 U.S. at 33 . This requirement's "purpose is to ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Myers v. Hertz Corp*., 624 F.3d 537, 547 (2d Cir. 2010). It is met only "if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Brown*, 609 F.3d at 483.

In an off-the-clock case alleging that restrictions on overtime made it impossible to meet sales goals, predominance is not met where "determination of liability turns on a highly individualized, employee-by-employee analysis of what they were told by management and how any time-recording practices were applied" which is the case where plaintiffs "sometimes received overtime pay, but sometimes did not." *Fernandez*, 2013 WL 4540521, at \*14;  *see also Burkhart-*

19

*Deal v. Citifinancial, Inc.,* 2010 WL 457122 (W.D. Pa. 2010) (denying Rule 23 certification because "[c]onflict between sales quotas and a policy of discouraging overtime…does not necessarily raise a predominant issue appropriate for class treatment").

Here, Thermo Tech has produced thousands of pages of documents evidencing their robust policies requiring that all non-exempt employees record (and be paid for) all time worked. These records bely any claim of a consistent policy or practice, and precluding a finding of predominance.

Adjudicating this case will necessarily require highly individualized mini-trials for each class member to determine whether and to what extent he or she worked overtime, whether the overtime work was requested, approved, recorded, and/or paid, whether the non-exempt employees' manager had knowledge of the allegedly uncompensated work, whether the work was compensable under applicable standards, whether any failure to pay overtime was in good faith or was willful, whether Thermo Tech has any other defense to the claim (such as a release or statute of limitations), and whether the non-exempt employee can meet his or her burden to provide specific facts establishing when, and for how long, he or she performed the off-the-clock tasks for which she now seeks compensation.

In addition, there can be no predominance where, as here, there is "no class-wide metric for assessing damages." *Fernandez*, 2013 WL 4540521, at *14-15  (denying class certification of overtime claims under Rule 23(b)(3) where "plaintiffs have not come forward with a meaningful approach to gauging damages on a class-wide basis") (citing *Comcast*, 133 S. Ct. at 1433). As in *Fernandez,* "[i]n essence, plaintiffs posit that sometimes they received full and lawful compensation, and sometimes they did not. They suggest no theory as to why these variations in compensation arose, make no concrete representations as to how often they occurred, and propose no class-wide metric for assessing damages." *Id*.

Plaintiff argues that *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687 (1946), stands for the proposition that once an employee proves an FLSA violation by "just and reasonable inference," the burden then shifts to the employer to show the amount of work performed off-the-clock. [Dckt. No. 117 at p. 7]. But where an employee's time records are inaccurate "solely due to the [employee]'s deliberate failure to accurately report the time she worked," similar to putative class representative Ruiz, *Mt. Clemens* does not apply, and that employee must "provide specific facts establishing when, and for how long, she performed the off-the-clock tasks for which she now seeks compensation." *Joza*, 2010 WL 3619551, at *7  (quotations omitted); *Seever*, 528 F. Supp. 2d at 171 (finding that burden did not shift under *Mt. Clemens* despite the allegation that manager instructed plaintiffs to omit certain time from their timesheets because plaintiffs had the ability to record the time on the timesheet). The failure of a plaintiff to provide such "specific facts" precludes any recovery. *Seever*, 528 F. Supp. 2d at 170- 72.  As a result, an individual inquiry will be needed with respect to each non-exempt employee as to whether his or her time records are inaccurate due to his or her failure to accurately report the time worked, like Plaintiff, and, if so, whether he or she can provide the requisite "specific facts" (which Plaintiff has not been able to do). These damages issues are not just a question of amount – but are an essential element for any liability.

Moreover, even if the burden was shifted to Defendants under *Mt. Clemens*, Defendants still must have the opportunity to offer contrary evidence to negate the inference raised by the non-exempt employee's evidence. *Seever*, 528 F. Supp. 2d at 171-72  (finding that even if the burden shifted to the employer under Anderson, the employer met its burden to negate the inference of off-the-clock work).

### ii.      Superiority

Class certification is not the superior method of adjudication, where plaintiffs can put forward no reasonable trial plan for adjudication of these individualized claims. *See, e.g., Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 773-76 (7th Cir. 2013) (in off-the-clock case affirming decertification of Rule 23 classes because "to extrapolate from the experiences of the 42 [proposed representatives] to that of the 2341 would require that all 2341 have done roughly the same amount of work, including the same amount of overtime work and had been paid the same wage. No one thinks there was such uniformity," and such a "small, unrepresentative sample" cannot "support an inference about the work time of thousands of workers"); *Burkhart-Deal*, 2010 WL 457122, at *3, *6 (holding there was no superiority in an off-the-clock case alleging restricted overtime and unreasonable sales goals because "where common proof is not available, thus requiring individualized 'mini-trials' courts have found that the 'staggering problems of logistics thus created' make the case unmanageable as a class action"); *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 354-55 (N.D. Ill. 2012) (denying certification of off-the-clock meal break claims as unmanageable since plaintiff did not propose a trial plan "to allay the Court's manageability and fairness concerns, especially given the plethora of individualized factual issues in this case").

In addition, the majority of the putative class members are union employees. [Mizrahi Decl. at ¶ 4] [Ex. A] [G. Budhu March 2, 2022 Depo. Trans. at 30:7-19; 57:4-10; 58:16-25; 105:20-25; 106:4-25]; [*see also* Dckt. No. 118-2] [G. Budhu September 28, 2023 Depo. Trans. at 16:1-13; 17:2-21; 18:1-11]. The union grievance process would provide these putative class members with the exclusive (and more efficient and inexpensive) forum to resolve any individual disputes. [*Id.*]. *Alix*, 868 N.Y.S.2d at 376 (affirming denial of class certification in part because "[t]he availability

of this administrative process, and its focus on the particulars applicable to each employee's claim,

make it in many ways a superior method by which the claims made by plaintiffs, and the proposed

members of the class, can be pursued against defendant.").

## **CONCLUSION**

For the reasons stated above, the Court should deny the Motion for Conditional

Certification in its entirety.

Dated: New York, New York
       January 4, 2024

Respectfully Submitted,

LEVIN EPSTEIN & ASSOCIATES, P.C.

*/s Jason Mizrahi*
Jason Mizrahi, Esq.
Joshua Levin-Epstein, Esq.
60 East 42nd Street, Suite 4700
New York, New York 10165
Tel No.: (212) 792-0048
*Attorneys for Defendants*