**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JUAN LOPEZ, *on behalf of himself*
*FLSA Collective Plaintiffs, and the Class*,

**Plaintiff,**

-against-

**Case No.:** 1:20-cv-09113 (LTS)(BCM)

THERMO TECH MECHANICAL, INC.,
GOWKARRAN BUDHU, and
SHANTI BUDHU

**Defendants.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

C.K. Lee, Esq. (CL 4086)
**Lee Litigation Group, PLLC**
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs*
*and the Class*

# TABLE OF CONTENTS

EXHIBITS ................................................................................................................. iii

TABLE OF AUTHORITIES .................................................................................. iv

I.    STATEMENT OF FACTS ........................................................................... 1

II.   PRELIMINARY STATEMENT ................................................................. 1

III.  SUMMARY JUDGMENT STANDARD ..................................................... 2

IV.  ARGUMENTS ............................................................................................. 3

    A.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS ROUNDING CLAIM ......................................................................... 3

    B.   PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES UNDER THE FLSA. ... 12

    C.   DEFENDANTS ARE SUBJECT TO A THREE-YEAR STATUTE OF LIMITATIONS UNDER THE FLSA ................................................ 14

    D.   DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE AS EMPLOYERS UNDER THE FLSA ................................................ 15

        1.   Individual Defendant Gowkarran Budhu Is an Employer with personal liability under the FLSA ......................................... 15

        2.   Corporate Defendant THERMO TECH MECHANICAL, INC, Is an Employer under the FLSA ......................................................... 17

V.   CONCLUSION ......................................................................................... 17

## EXHIBITS

(All Exhibits listed below are attached to the Rule 56.1 Statement of Material Facts)

**Exhibit 1**   Defendants' Answer to Plaintiff's Second Amended Class and Collective Action Complaint

**Exhibit 2**   Defendants' production of Plaintiff's 2017 Wage and Hour Records

**Exhibit 3**   Defendants' production of Plaintiff's 2018 Wage and Hour Records

**Exhibit 4**   Deposition transcript of Individual Defendant GOWKARRAN BUDHU

**Exhibit 5**   Defendants' Employee Manual produced by Defendants

**Exhibit 6**   Plaintiff's Second Amended Complaint

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby. Inc.*,
  477 U.S. 242 (1986) ..................................................................................................... 2

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946) ......................................................................................... 4, 10, 12

*Balderman v. U.S. Veterans Admin.*,
  870 F.2d 57 (2d Cir. 1989) ........................................................................................... 2

*Barfield v. New York City Health and Hosps. Corp.*,
  537 F.3d 132 (2d Cir. 2008) .................................................................................. 12, 13

*Canelas v. World Pizza, Inc.*,
  2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017) ............................................... 2, 3

*Carter v. Dutchess Community College*,
  735 F.2d 8 (2d Cir. 1984) ...................................................................................... 16, 18

*Gordon v. Kaleida Health*, 299 F.R.D.
  380 (W.D.N.Y. 2014) ............................................................................................. 3, 11

*Herman v. RSR Sec. Servs. Ltd.*,
  172 F.3d 132 (2d Cir. 1999) .................................................................................. 15, 16

*Irizarry v. Catsimatidis*,
  722 F.3d 99 (2d Cir. 2013) ......................................................................................... 16

*Jeong Woo Kim v. 511 E. 5th St., LLC*,
  2015 U.S. Dist. LEXIS 135337 (S.D.N.Y. Sep. 26, 2015) ................................... 12, 13

*Keun-Jae Moon v. Joon Gab Kwon*,
  248 F.Supp.2d 201 (S.D.N.Y. Sept. 9, 2002) ............................................................ 15

*Ling Nan Zheng v. Liberty Apparel Co.*,
  355 F.3d 61 (2d Cir. 2003) ......................................................................................... 16

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
  599 F.3d 102 (2d Cir. 2010) ......................................................................................... 2

*Saldarriaga v. IND Glatt, Inc.*,
  2019 U.S. Dist. LEXIS 49365, at *6 (E.D.N.Y. Mar. 25, 2019) .............................. 10

*Velez v. 111 Atlas Rest. Corp.*,
    2016 U.S. Dist. LEXIS 107230, at *43 (E.D.N.Y. Aug. 11, 2016) ........................................ 15

**STATUTES**

29 U.S.C. § 216 ................................................................................................ 12
29 U.S.C. § 255 ................................................................................................ 14
29 U.S.C. § 260 ............................................................................................ 12, 13

**RULES**

Fed. R. Civ. P. 56 ............................................................................................... 2

**REGULATIONS**

29 C.F.R. § 785.48 ..................................................................................... 3, 10, 11

# I.  STATEMENT OF FACTS

The facts set forth in Plaintiffs' Rule 56.1 Statement are fully incorporated by reference herein.

# II.  PRELIMINARY STATEMENT

Plaintiff JUAN LOPEZ ("Plaintiff") submits this memorandum of law in support of his motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Below are various facts relating to Plaintiff's employment with Defendants THERMO TECH MECHANICAL INC., (hereinafter, "Corporate Defendant") GOWKARRAN BUDHU, and SHANTI BUDHU (hereinafter, "Individual Defendants," and together with Corporate Defendant, "Defendants"), which are undisputed based on deposition testimony, Defendants' production of employment records and Defendants' Answer to Plaintiff's Second Amended Complaint.

Corporate Defendant THERMO TECH is a business specializing in the installation, maintenance, and repair of heating, ventilation, and air conditioning (HVAC) systems. *See* Exhibit 1, Def. Ans., ECF No. 84, ¶ 7. Corporate Defendant THERMO TECH MECHANICAL, INC was Plaintiff's employer and listed itself as the employer on all of Plaintiff's wage statements. **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records; **Exhibit 3,** Plaintiff's 2018 Wage and Hour Records. *See* **Exhibit 4,** Deposition Transcript of Gowkarran Budhu ("Budhu Dep.") 35:24-36:3. Defendant GOWKARRAN BUDHU was Plaintiff's employer and the employer of all employees of Corporate Defendant THERMO TECH MECHANICAL, INC. *See* **Exhibit 4,** Budhu Dep. 58:18-24.

Plaintiff was employed by Defendants from in or around June 2016 until July 30, 2018. *See* **Exhibit 1,** Def. Ans., ECF No. 84, ¶14. From May 21, 2017 – October 12, 2017, Plaintiff's regular hourly rate was $21.25, and his overtime hourly rate was $31.875. *See* **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records, Defendants 0054.

From October 13, 2017 – until the end of Plaintiff's employment, Plaintiff's regular hourly rate was $23.50, and his overtime hourly rate was increased to $35.25. *See* **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records, Defendants 0084, **Exhibit 3**, Plaintiff's 2018 Wage and Hour Records, Defendants 0130.

## III. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment on a claim where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (a). It is the moving party's burden to show that no genuine issue of fact exists. *See Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 256 (1986); *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). Rule 56 provides that, in moving for summary judgment, "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . or other materials." FED. R. CIV. P. 56 (c)(1). Whether any disputed issue of material fact exists is for the Court to determine. *Balderman v. U.S. Veterans Admin.*, 870 F.2d 57, 60 (2d Cir. 1989).

"Ordinarily, to establish liability under the FLSA for unpaid minimum wages or unpaid overtime compensation, the employee bears the burden of proving that he performed work for which he was not properly compensated." *Canelas v. World Pizza, Inc.*, No. 14-CV-7748 (ER), 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017) (citation omitted). "However, if his employer's records are inaccurate or inadequate, the employee can satisfy his burden by submitting 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference,'" *Id.* (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011)), including "estimates based on his own recollection." *Id.* (citation omitted). "Once the employee has met his burden, the burden then shifts to the employer to produce 'evidence of the

precise amount of work performed' or 'evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Id*. (citation omitted). "If the employer fails to do so, 'the court may then award damages to the employee, even though the result be only approximate.'" *Id*. (citation omitted).

## IV.    ARGUMENTS

### A.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS ROUNDING CLAIM

Federal regulations state that "…there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. … For enforcement purposes this practice of computing working time will be accepted, <u>provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked</u>." *See* 29 C.F.R. § 785.48(b) (emphasis added). It has been noted that while "no New York statute or regulation addresses the permissibility of rounding policies, New York's Department of Labor generally follows the FLSA and related regulations." *Gordon v. Kaleida Health*, 299 F.R.D. 380, 405 n.25 (W.D.N.Y. 2014).

Here, Defendants produced Plaintiff's wage and hour records for 2017 and 2018. See **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records; **Exhibit 3,** Plaintiff's 2018 Wage and Hour Records. However, these records are insufficient to rebut Plaintiff's claims of unlawful rounding and failure to pay all wages due, as a result of Defendants' failure to compensate Plaintiff for time worked before and after his scheduled shifts. This is because Defendants did not maintain or produce accurate punch-in/punch-out records to demonstrate Plaintiff's actual hours worked. In fact, the records demonstrate across the board rounded whole hours each day from at least January 9, 2017 until April 23, 2018. *See* **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records; Defendants

0049, **Exhibit 3**, Plaintiff's 2018 Wage and Hour Records, Defendants 0129. As such, the Court must credit Plaintiff's allegations and grant Plaintiff summary judgment on his improper rounding claims. "In the absence of documentation, the employee may rely on [her] own recollection to meet [his] initial burden, in which case the employer must proffer evidence sufficient to rebut that recollection." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

At deposition, Defendant GOWKARRAN BUDHU testified that Defendants only permitted employees to log in their scheduled shift start time and scheduled shift end time, rather than actually putting down the exact times they worked, even if employees arrived and worked slightly before their scheduled shift or worked slightly after their scheduled shift. *See* **Exhibit 4**, Deposition Transcript of Gowkarran Budhu ("Budhu Dep.") 25:5-17; 26:1-8; 27:6-22; 29:5-11, 43:16-44:1; **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records; **Exhibit 3**, Plaintiff's 2018 Wage and Hour Records.

> 5    Q. So I believe people, when they're
> 6    filling out their time records, they were required
> 7    to provide rounded times. Is that accurate?
> …
>
> 11    THE WITNESS: No. Your shift is given
> 12    to you. You start at 8:00 and end at 4:30, for
> 13    example. You're going to be at, you know, Battery
> 14    Tunnel bathroom job or you're going to be at parks
> 15    and recreation job. You show up at that time.
> 16    You leave at that time. And that should be on
> 17    your time sheet.

**Exhibit 4**, Budhu Dep. 25:5-17

> 6    Q. But do you agree an individual should be
> 7    logging in their actual time started? For
> 8    example, they might have gotten in a minute or two
> 9    early, right, and started working. Do you think
> 10    that they should be clocking in those times?
> …

13 THE WITNESS: They should clock in when
14 they're supposed to be there, just like a time
15 clock. When you come in and you punch your card
16 in the time clock, that's the way it should be.
17 You walk into the site. You could come to the
18 site two hours before, one hour before. You're
19 outside eating your breakfast, whatever. But when
20 you walk into the site, that's what you have to
21 write on the paper. I walked in the site this
22 time and I walked out of the site that time.

*Id*. at 27:6-22

5 Q. Basically for all of your employees at
6 Thermo Tech, similar to Mr. Lopez, they're logging
7 in at their scheduled start time; right?
8 A. Yes.
9 Q. And they're logging out at their
10 scheduled completion time; right?
11 A. Yes.

*Id.* at 29:5-11

16 Q. Okay. And you don't have a problem that
17 the time being inputted is not exact to the minute
18 and that it's rounded to the nearest hour; is that
19 right?
…
25 A. I don't have any issue there. That's
1 the rule and that's what I see.

Id. at 43:16-44:1

Despite this belief and practice, Defendant GOWKARRAN BUDHU admitted that he is

aware that employees should be paid for their actual time as opposed to their scheduled time.

10 Q. So are you aware that a company is
11 supposed to pay an employee for actual hours
12 worked and not for their scheduled work shift?
13 MR. MIZRAHI: Same objection.
14 Tony, you may respond.
15 THE WITNESS: Absolutely.

*Id*. at 26:11-15

However, compensating employees and Plaintiff for their actual hours worked was not Defendants' practice. Defendant GOWKARRAN BUDHU testified that Defendants only compensated employees for their scheduled hours and not their actual time worked if they clocked in before their shift started or if they clocked out after their shift ended. Specifically, Defendant GOWKARRAN BUDHU admitted at deposition that Defendants' policy was that an employees' scheduled time **is** their actual time. *See* **Exhibit 4,** Budhu Dep. 25:5-17; 26:10-27:22.

Defendant GOWKARRAN BUDHU does the payroll for Corporate Defendant THERMO TECH. *See* **Exhibit 4**, Budhu Dep. 33:8-13. Defendant GOWKARRAN BUDHU reviewed time sheets for all employees of Corporate Defendant THERMO TECH before paying employees. *See* **Exhibit 4**, Budhu Dep. 24:15-25, 42:16-18.

However, in reality, Plaintiff never started and finished work exactly on the whole hour, as Defendants' time sheets suggest. This is apparent on Plaintiff's timesheets after May 18, 2018, when Defendants switched to an electronic timekeeping system. *See* **Exhibit 3**, Plaintiff's 2018 Wage and Hour Records, Defendants 0131-0142. The subsequently installed electronic timekeeping system recorded the precise duration of on-the-clock time worked by Plaintiff each shift, which demonstrates that Plaintiff did not actually start and finish work exactly at his scheduled shift, contrary to Defendants' policy and the belief of Defendant GOWKARRAN BUDHU. *Id*. Defendant GOWKARRAN BUDHU deposition testimony underscore Defendants' clear policy and practice of rounding employees' hours down to the employees' detriment, which fails to account for the time spent by Plaintiff working before and after his scheduled shift.

Plaintiff alleges that nearly each shift, Plaintiff worked 10-25 minutes past his scheduled shift but would not be compensated, and Plaintiff was required to begin working 5-10 minutes before his scheduled shift, but also was not be compensated for this time. *See* **Exhibit 6**, Second

Amended Complaint ("SAC"), ECF No. 83 ¶¶ 17, 18. Here, Defendants have not maintained accurate records to rebut Plaintiff's claims, because the records produced by Defendants do not include the precise start and end times worked by Plaintiff, but simply assumes across the board whole hours for each workday until a punch clock machine was acquired on or after May 18, 2018, which resulted in time records with more precision (see **Exhibit 3**, Plaintiff's 2018 Wage and Hour Records, Defendants 0131-0142), but without corresponding records showing what amounts were actually paid based on such actual punch records. *See* **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records; **Exhibit 3,** Plaintiff's 2018 Wage and Hour Records.

Below is a sampling from Defendants' production of Plaintiff's timesheets for 2017. These show that beginning and end times were being recorded exactly to the whole hour, which resulted in the total regular and overtime hours being recorded to the whole hour as well.

| Date | Start | Time | Regular Hours | Overtime Hours |
|---|---|---|---|---|
| 11/27/2017 | 8:00 A.M. | 12:00 A.M. | 8 | 7 |
| 11/28/2017 | 8:00 A.M. | 12:00 A.M. | 8 | 7 |
| 11/29/2017 | 4:00 P.M. | 12:00 A.M. | 8 | |
| 11/30/2017 | 4:00 P.M. | 12:00 A.M. | 8 | |
| 12/1/2017 | 4:00 P.M. | 12:00 A.M. | 8 | |
| | | Total | 40 | 14 |

**Exhibit 2**, Plaintiff's 2017 Wage and Hour Records, Defendants 0089.

| Date | Start | Time | Regular Hours | Overtime Hours |
|---|---|---|---|---|
| 12/4/2017 | 6:00 A.M. | 12:00 A.M. | 8 | 9 |
| 12/5/2017 | 4:00 P.M. | 12:00 A.M. | 8 | |
| 12/6/2017 | 6:00 A.M. | 12:00 A.M. | 8 | 9 |
| 12/7/2017 | 6:00 A.M. | 12:00 A.M. | 8 | 9 |
| 12/8/2017 | 4:00 P.M. | 12:00 A.M. | 8 | |
| | | Total | 40 | 27 |

**Exhibit 2**, Plaintiff's 2017 Wage and Hour Records, Defendants 0091.

| Date | Start | Time | Regular Hours | Overtime Hours |
|------|-------|------|---------------|----------------|
| 12/18/2017 | 7:00 A.M. | 12:00 A.M. | 8 | 8 |
| 12/19/2017 | 7:00 A.M. | 12:00 A.M. | 8 | 8 |
| 12/20/2017 | 7:00 A.M. | 12:00 A.M. | 8 | 8 |
| 12/21/2017 | 6:00 A.M. | 12:00 A.M. | 8 | 8 |
| 12/22/2017 | 6:00 A.M. | 2:30 P.M. | 8 | |
| | | Total | 40 | 32 |

**Exhibit 2**, Plaintiff's 2017 Wage and Hour Records**,** Defendants 0098.

Defendants' production of Plaintiff's wage statements corresponding to the pay periods cited above show that Plaintiff was only compensated for the rounded hours, recorded to the exact whole hour each shift. See **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records, Defendants 0090, 0092, 0099.  However, Defendants have not maintained any time records to show the exact start and end times worked by Plaintiff to support their rounded hours on his wage statements. That each workday ended precisely in a whole hour is simply unbelievable. *See* **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records; **Exhibit 3,** Plaintiff's 2018 Wage and Hour Records. Defendants' policy of rounding Plaintiff's hours to the whole hour based on his shifts only benefitted Defendants. The examples provided above are only a sampling to illustrate Defendants' rounding practice. Defendants' improper rounding practice occurred at all times of Plaintiff's employment until in or around May 2018. See **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records; **Exhibit 3,** Plaintiff's 2018 Wage and Hour Records. In or around May 2018, Defendants implemented an electronic time keeping system that recorded the precise duration of on-the-clock time worked by Plaintiff each shift. *See* **Exhibit 3**, Plaintiff's 2018 Wage and Hour Records, Defendants 0131-0142. This system, however, still failed to show Plaintiff's start and end time for each shift.

Below are various examples from Defendants' production to illustrate the difference between Defendants' time keeping under the electronic time keeping system and the pre-May 2018 system, when Defendants required employees to record their start and end times manually to the

whole hour based on their shifts. As shown below, the electronic time keeping system recorded

the precise duration of on-the-clock time worked by Plaintiff each shift:

| Date | Shift Duration | Total Weekly Hours |
|---|---|---|
| 5/21/2018 | 8.04 | |
| 5/22/2018 | 7.85 | |
| 5/23/2018 | 7.71 | |
| 5/24/2018 | 7.53 | |
| 5/25/2018 | 7.62 | |
| 5/26/2018 | 0 | |
| 5/27/2018 | 0 | |
| Total | | 38.75 |

**Exhibit 3**, Plaintiff's 2018 Wage and Hour Records, Defendants 0132.

| Date | Shift Duration | Total Weekly Hours |
|---|---|---|
| 5/28/2018 | 0 | |
| 5/29/2018 | 16.52 | |
| 5/30/2018 | 15.52 | |
| 5/31/2018 | 7.4 | |
| 6/1/2018 | 8 | |
| 6/2/2018 | 0 | |
| 6/3/2018 | 0 | |
| | Total | 47.44 |

**Exhibit 3**, Plaintiff's 2018 Wage and Hour Records, Defendants 0133.

This demonstrates that Plaintiff's actual work time was not exactly his scheduled hours,

contrary to Defendant GOWKARRAN BUDHU belief. *See* **Exhibit 4,** Budhu Dep. 25:5-17;

26:10-27:22. Defendants failed to produce any evidence to the contrary. Because Defendants failed

to maintain accurate records of Plaintiff's actual start and end times, and actual time worked,

Plaintiff satisfied the evidentiary burden to succeed on a motion for summary judgment. *See*

*Saldarriaga v. IND Glatt, Inc.,* No. 17-CV-02904 (PKC) (SMG), 2019 U.S. Dist. LEXIS 49365,

at *6 (E.D.N.Y. Mar. 25, 2019) ("An employee can satisfy his burden under *Anderson* by relying

solely on his own recollection. Once an employee has satisfied his burden, even by relying on

recollection alone, the burden shifts to the employer to come forward . . . with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.") (internal citations and quotations omitted). "In the absence of documentation, the employee may rely on [her] own recollection to meet [his] initial burden, in which case the employer must proffer evidence sufficient to rebut that recollection." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

Defendants selectively chose, to their advantage, to only pay employees for their scheduled shifts, even when they worked over their scheduled shift, Defendants refused to pay them for that time worked because Defendant wanted to recklessly ignore that anyone works before or past their scheduled shift. Budhu Dep. 26:17-27:22. As such, Defendants failed to pay Plaintiff for all of his hours worked and Defendants' rounding policy resulted in Plaintiff not being compensated for all regular and overtime hours worked. Defendants' policy directly resulted "over a period of time, in failure to compensate the employees properly for all the time they have actually worked." *See* 29 C.F.R. § 785.48(b).

29 C.F.R. § 785.48(b) permits rounding only when the policy "will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." *Gordon* 299 F.R.D. 405 n.25. However, in this case, Defendants only rounded Plaintiff's hours to Defendants' benefit alone, and, as a result, Defendants' rounding policy was <u>not</u> facially neutral. To date, the time sheets submitted by Defendants for the employment period of Plaintiff pre-May 2018, all include start and end times that are rounded to the exact whole hour, which fail to account for any time spent by Plaintiff working before and after the start and end of his scheduled shift. As Plaintiff was subjected to an impermissible rounding policy, Defendants have failed to maintain or produce any actual time sheets demonstrating that Plaintiff actually always

began and ended his shifts on the exact whole hour. *See* **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records; **Exhibit 3,** Plaintiff's 2018 Wage and Hour Records.

It is clear however, that Plaintiff did not always begin and each shift on the exact whole hour, as demonstrated by Defendants' production of various time sheets post-May 2018. In May 2018, Defendants started to use an electronic time keeping system that recorded the precise duration of on-the-clock time worked by Plaintiff each shift. Defendants produced electronic time sheets for the following pay periods:

- May 14 – 20, 2018,
- May 21 – 27, 2018,
- May 27, June 3, 2018,
- June 4 – 10, 2018,
- June 11 – 17, 2018,
- June 18 – 24 2018,
- June 25 – July 1, 2018,
- July 2 – 8, 2018,
- July 9 – 15, 2018,
- July 16 – 22, 2018,
- July 25 – 29, 2018,
- July 30 – Aug. 5, 2018.

**Exhibit 3**, Plaintiff's 2018 Wage and Hour Records, Defendants 0131-0142.

However, Defendants have not produced corresponding wage statements for all of the pay periods listed above. Instead, Defendants only produced corresponding wage statements for the pay periods July 9 – 15, 2018,  and July 16 – 22, 2018. *Id*. at Defendants 0129-0130. Thus, because of Defendants' failure to produce complete wage records rebutting Plaintiff's rounding allegations, the Court must credit Plaintiff's allegations that Defendants continued impermissibly rounded his hours and failed to pay Plaintiff for all hours worked. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

Therefore, based on the foregoing, Plaintiff is entitled to summary judgment on his rounding claims.

### B.    PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES UNDER THE FLSA.

"Under the FLSA, a district court is generally <u>required</u> to award a plaintiff liquidated damages equal in amount to actual damages." *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008). *See Jeong Woo Kim v. 511 E. 5th St., LLC*, No. 12 Civ. 8096, 2015 U.S. Dist. LEXIS 135337, at *28 (S.D.N.Y. Sep. 26, 2015) (citing 29 U.S.C. §§ 216(b), 260) ("liquidated damages in an amount equal to compensatory damages are <u>mandatory</u>, unless an employer demonstrates that it has acted in good faith and did not willfully violate the statute.") (emphasis added). District courts are afforded "discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield*, 537 F.3d at 140 (citing 29 U.S.C. § 260); *see Yu G. Ke*, 595 F. Supp. 2d at 261. "<u>The employer bears the burden</u> of proving good faith and reasonableness by 'show[ing] that it took active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them.'" *Jeong Woo Kim*, 2015 U.S. Dist. LEXIS 135337, at *28-29 (emphasis added). The employer's burden is "a difficult one," and "double damages are the norm and single damages the exception." *Barfield*, 537 F.3d at 150.

Defendants did not act in subjective good faith with objectively reasonable grounds for believing that they did not violate the FLSA. Defendant GOWKARRAN BUDHU testified that he was in charge of payroll for Thermo Tech. *See* **Exhibit 4,** Budhu Dep. 23:4-24:14, 33:8-13. Defendant GOWKARRAN BUDHU never consulted an attorney regarding proper wage and hour compliance and simply administered payroll himself, despite not having a law degree nor an accounting degree.

> **Q. But if somebody had a question about the wage policies at the company, would they go to you, or would they go to her, or could they go to both people?**

**A. They go to me only.**
**Q. And you would answer the questions regarding people's wage questions?**
**A. Yes.**
**Q. And just to clarify, you're not a – you**
**don't have an accounting degree; right?**
**A. No.**
**Q. And you also don't have a law degree; right?**
**A. No.**
**Q. Okay. And so you were the person responsible for ensuring that Thermo Tech was in compliance with prevailing wage requirements?**
**A. Yes.**
**Q. Okay. And you were the person responsible for ensuring that Thermo Tech's employees were properly paid under federal and state wage laws?**
**A. Yes.**
Q. So what did you do to implement policies to ensure that employees were accurately paid?
A. I would review the sign-in sheets. I review the task that they're doing, if they're steamfitters or they're sheet metal workers or they're laborers. The job description have to match the current prevailing wage that are on the city sites' records, that we don't follow expired wage rates, the most current, and it also have to match exactly the work that that person is doing. If a guy is doing ductwork, he has to have the sheet metal wage rate for that at that time. I'm the guy who made sure all of those things match up.

**Exhibit 4,** Budhu Dep. 23:17-25:4 (emphasis added).

Q. But just to clarify, I guess she was only doing like input for the payroll. **You're actually the person who is responsible for payroll; is that right?**
**A. Yeah. I review the payroll before she inputs it in.**

**Exhibit 4,** Budhu Dep. 33:8-13 (emphasis added).

Further, Defendant GOWKARRAN BUDHU, who was in charge of payroll, testified that he was aware that employees must be paid their actual hours yet still paid Plaintiff only his scheduled hours despite Plaintiff working beyond his scheduled hours. *See* **Exhibit 4,** Budhu Dep. 25:5-17; 26:1-8; 27:6-23; 29:5-11, 43:16-44:11. Moreover, Defendants did not maintain any records to show the actual times at which Plaintiff started and ended working each shift, and therefore cannot justify compensating Plaintiff only for his scheduled shifts with rounded hours. *See* **Exhibit 2** and **Exhibit 3**.

Therefore, Defendants have failed to show a good faith basis for believing that their underpayment of wages was in compliance with the law, and Plaintiff is entitled to liquidated damages under the FLSA.

## C.  DEFENDANTS ARE SUBJECT TO A THREE-YEAR STATUTE OF LIMITATIONS UNDER THE FLSA

As a general matter, the FLSA provides for a two-year statute of limitations on actions to enforce its provisions. *See* 29 U.S.C. § 255(a). However, when the "cause of action aris[es] out of a willful violations," the limitations period is extended to three years. *Id. See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999); *Keun-Jae Moon v. Joon Gab Kwon*, 248 F.Supp.2d 201, 231 (S.D.N.Y. Sept. 9, 2002). In order to determine that a defendant's violations of the FLSA were willful, the court must find that a defendant either knew or showed reckless disregard for whether the conduct was unlawful under the FLSA. *Id.*

Defendants' violations of the FLSA were clearly willful. Defendant GOWKARRAN BUDHU never consulted an attorney regarding proper wage and hour compliance and simply administered payroll himself, despite not having either a law degree nor an accounting degree. *See* **Exhibit 4,** Budhu Dep. 23:17-25:4, 33:8-13; *Velez v. 111 Atlas Rest. Corp.*, 2016 U.S. Dist. LEXIS 107230, at *43 (E.D.N.Y. Aug. 11, 2016) (finding willfulness based on deposition testimony that that defendant never consulted an attorney regarding proper wage and hour compliance). Further, Defendant GOWKARRAN BUDHU, who was in charge of payroll, testified that he was aware that employees must be paid their actual hours yet still paid Plaintiff only his scheduled hours despite Plaintiff working beyond his scheduled hours. *See* **Exhibit 4,** Budhu Dep. 25:5-17; 26:1-8; 27:6-23; 29:5-11, 43:16-44:11. The FLSA violations of Defendant GOWKARRAN BUDHU were therefore willful. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999); *Keun-Jae Moon v. Joon Gab Kwon*, 248 F.Supp.2d 201, 231 (S.D.N.Y. Sept. 9, 2002).

In light of the foregoing evidence, Plaintiff is entitled to recover for a three-year statutory period under the FLSA as Defendants acted willfully in their violations of the FLSA.

### D. DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE AS EMPLOYERS UNDER THE FLSA

#### 1. *Individual Defendant Gowkarran Budhu Is an Employer with personal liability under the FLSA*

To be held liable under the FLSA, a person must be an "employer," which the FLSA defines as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d)(2012). In deciding whether an individual is an employer, "the overarching concern is whether the alleged employer possessed the power to control the workers in question . . . ." *Herman*, 172 F.3d at 139. To determine whether an individual defendant is also an employer under the FLSA, the "economic reality" test inquiries into four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984). The factors are not exclusive, and the district court is "free to consider any other factors it deems relevant to its assessment of the economic realities." *Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003). Extensive personal involvement in the management of the employees or in the violations of labor laws is not required, nor is continuous exercise of authority. *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013) (holding that delegated authority may impute individual liability provided an individual's "role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment").

Defendant GOWKARRAN BUDHU satisfies the *Carter* factors to be an employer under the FLSA. As a preliminary matter, Defendant GOWKARRAN BUDHU is owner and president

of Corporate Defendant THERMO TECH MECHANICAL, INC. ("Thermo Tech"). *See* **Exhibit 4,** Budhu Dep. 10:1-10; **Exhibit 5,** Plaintiff's Employee Manual, Defendants 0002, 0003.

Furthermore, Defendant GOWKARRAN BUDHU had the power to hire and fire employees of Thermo Tech. Mr. Budhu also had the power to set employee pay rates. Defendant GOWKARRAN BUDHU also has the power to supervise and control employee work schedules. Finally, Defendant GOWKARRAN BUDHU had access to the employee records if he needed them:

> Q. And so do you hire staff?
> A. Yes.
> Q. So you hire like these HVAC guys that you work with?
> A. Yes.
> Q. And if they're doing a bad job, you could fire them; right?
> A. Well, we try to keep people as long as we can and train them.
> …
> Q. So if you really wanted to, you can terminate someone at your company; right?
> A. Yes.
> Q. And you set the compensation for your employees?
> A. Yes.
> Q. And you can give people more work hours or less work hours; correct?
> A. Yes.
> Q. And you have access to all the employee records; right?
> A. Yes.

**Exhibit 4,** Budhu Dep. 19:11-20:13.

Defendant GOWKARRAN BUDHU also testified that at all relevant times, employees could address questions about work policies, conditions of employment, and payroll questions to Defendant GOWKARRAN BUDHU. *See* **Exhibit 4,** Budhu Dep. 23:17-24.

Notably, Defendant GOWKARRAN BUDHU admitted during his deposition that he is the employer of Plaintiff JUAN LOPEZ and all employees at Thermo Tech:

> Q. And you agree that you are Juan Lopez's employer; correct?
> A. Yeah.
> Q. And you agree that you're the employer for all of the employees at Thermo Tech Mechanical; correct?

A. Yes.

**Exhibit 4,** Budhu Dep. 58:18-24

Therefore, all of the *Carter* factors are present, and Mr. Budhu should be held liable as an employer under the FLSA. *See Carter*, 735 F.2d at 12.

      **2.**     ***Corporate Defendant THERMO TECH MECHANICAL, INC, Is an Employer under the FLSA***

Corporate Defendant THERMO TECH MECHANICAL, INC. was the corporate entity doing business at 2323 Haviland Avenue, Bronx, NY 10462. *See* **Exhibit 1,** Def. Ans., ECF No. 84, ¶7. Corporate Defendant THERMO TECH MECHANICAL, INC was an employer of Plaintiff. Defendants' wage statements support the employer status of Corporate Defendant. *See* **Exhibit 2-3; Exhibit 4,** Budhu Dep. 35:24-36:3. Therefore, Defendant THERMO TECH MECHANICAL, INC. should also be held liable as an employer under the FLSA.

      V.       **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Plaintiff's motion for Partial Summary Judgment be granted in its entirety.

Dated: New York, New York                      Respectfully submitted,

      July 12, 2024                          **LEE LITIGATION GROUP, PLLC**

                                      By:     */s/ C.K. Lee*
                                            C.K. Lee, Esq. (CL 4086)
                                            Lee Litigation Group, PLLC
                                            148 West 24th Street, Eighth Floor
                                            New York, NY 10012
                                            Tel: (212) 465-1188
                                            Fax: (212) 465-1181
                                            *Attorneys for Plaintiffs,*
                                            *FLSA Collective Plaintiffs,*
                                            *and the Class*