UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------

JUAN LOPEZ,
*on behalf of himself, FLSA Collective Plaintiffs and the Class*,

**Plaintiff,**

-against-

THERMO TECH MECHANICAL, INC.,
GOWKARRAN BUDHU, and SHANTI BUDHU,

**Defendants.**

------------------------------------

Case No. 1:20-cv-09113 (LTS)(BCM)

**PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

Plaintiff JUAN LOPEZ ("Plaintiff") by his attorneys, Lee Litigation Group, PLLC, in support of his motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, submits the following Statement of Material Facts pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York:

1. Corporate Defendant THERMO TECH MECHANICAL, INC. ("THERMO TECH") is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 2323 Haviland Avenue, Bronx, NY 10462. *See* Defendants' Answer to the Second Amended Complaint ("Def. Ans."), ECF. No. 84 ¶7, attached as **Exhibit 1**.

2. Corporate Defendant THERMO TECH is a business specializing in the installation, maintenance, and repair of heating, ventilation, and air conditioning (HVAC) systems. *See* Exhibit 1, Def. Ans., ECF No. 84, ¶ 7.

3. At all times, Corporate Defendant THERMO TECH MECHANICAL, INC was Plaintiff's employer and listed itself as the employer on all of Plaintiff's wage statements. **Exhibit**

**2**, Plaintiff's 2017 Wage and Hour Records; **Exhibit 3,** Plaintiff's 2018 Wage and Hour Records. *See* **Exhibit 4,** Deposition Transcript of Gowkarran Budhu ("Budhu Dep.") 35:24-36:3.

4. At all relevant times, Defendant GOWKARRAN BUDHU was Plaintiff's employer and the employer of all employees of Corporate Defendant THERMO TECH MECHANICAL, INC. *See* **Exhibit 4,** Budhu Dep. 58:18-24.

5. At all relevant times, Defendant GOWKARRAN BUDHU was the one hundred percent (100%) owner and president of Corporate Defendant THERMO TECH MECHANICAL, INC. *See* **Exhibit 4,** Budhu Dep. 10:7-10; **Exhibit 5**, Defendants' Employee Manual, Defendants 0002, 0003.

6. At all relevant times, Defendant GOWKARRAN BUDHU had the power to hire and fire employees of THERMO TECH. *See* **Exhibit 4,** Budhu Dep. 19:11- 20:4.

7. At all relevant times, Defendant GOWKARRAN BUDHU had the power to set employee compensation. *See* **Exhibit 4,** Budhu Dep. 20:5-7.

8. At all relevant times, Defendant GOWKARRAN BUDHU had the power to supervise and control employee work schedules. *See* **Exhibit 4,** Budhu Dep. 20:8-10.

9. At all relevant times Defendant GOWKARRAN BUDHU also had access to the employee records. *See* **Exhibit 4,** Budhu Dep. 20:11-13.

10. At all relevant times employees could address questions about work policies, conditions of employment, and payroll questions to Defendant GOWKARRAN BUDHU. *See* **Exhibit 4,** Budhu Dep. 23:17-24.

11. Defendant GOWKARRAN BUDHU does the payroll for Corporate Defendant THERMO TECH. *See* **Exhibit 4**, Budhu Dep. 33:8-13.

12. Defendant GOWKARRAN BUDHU reviewed time sheets for all employees of Corporate Defendant THERMO TECH before paying employees. *See* **Exhibit 4**, Budhu Dep. 24:15-25, 42:16-18.

13. Defendant GOWKARRAN BUDHU was responsible for ensuring that Defendant THERMO TECH employees were properly paid under federal rules and state wage laws. *See* **Exhibit 4**, Budhu Dep. 24:10-14.

14. Defendant GOWKARRAN BUDHU never consulted an attorney regarding proper wage and hour compliance. *See* **Exhibit 4**, Budhu Dep. 24:15-25:4.

15. Defendant GOWKARRAN BUDHU does not have a law degree or an accounting degree. *See* **Exhibit 4**, Budhu Dep. 23:25-24:6.

16. During the relevant time period, Defendant GOWKARRAN BUDHU only permitted employees to log in their scheduled shift start time and scheduled shift end time, rather than actually putting down the exact times they worked., even if employees arrived and worked slightly before their scheduled shift or worked slightly after their scheduled shift. *See* **Exhibit 4,** Budhu Dep. 25:5-17; 26:1-8; 27:6-22; 29:5-11, 43:16-44:1; **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records; **Exhibit 3**, Plaintiff's 2018 Wage and Hour Records.

17. During the relevant time period, Defendant GOWKARRAN BUDHU, Defendants only compensated employees for their scheduled hours and not their actual time worked if they clocked in before their shift started or if they clocked out after their shift ended. Specifically, Defendant GOWKARRAN BUDHU admitted at deposition that Defendants' policy was that an employees' scheduled time is their actual time. *See* **Exhibit 4,** Budhu Dep. 25:5-17; 26:10-27:22.

18. Defendants' Employee Manual defined a "Normal work day" as consisting of exactly 8 hours. *See* **Exhibit 5**, Defendants' Employee Manual, Bates Numbered Defendants 0013.

19. Defendants did not maintain records to demonstrate the precise start and end times worked by Plaintiff each shift. *See* **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records; **Exhibit 3,** Plaintiff's 2018 Wage and Hour Records.

20. Plaintiff was employed by Defendants from in or around June 2016 until July 30, 2018. *See* **Exhibit 1,** Def. Ans., ECF No. 84, ¶14.

21. During his employment, Plaintiff was paid at various hourly rates for regular wages, overtime wages and prevailing wages. *See* **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records; **Exhibit 3**, Plaintiff's 2018 Wage and Hour Records.

22. Beginning with pay period May 21, 2017 – May 27, 2017, check date June 2, 2017, Plaintiff's regular hourly rate was $21.25, and his overtime hourly rate was $31.875. *See* **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records, Defendants 0054.

23. On or around October 13, 2017, Plaintiff's regular hourly rate was increased to $23.50, and his overtime hourly rate was increased to $35.25. *See* **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records, Defendants 0084. Defendants continued to compensate Plaintiff at these hourly rates for regular and overtime hours until July 27, 2018. *See* **Exhibit 3**, Plaintiff's 2018 Wage and Hour Records, Defendants 0130.

24. Until around May 2018, Plaintiff would fill in his timesheets manually, writing down start and end times, which corresponded to scheduled shifts, on a standard form provided by Defendants. *See* **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records; **Exhibit 3**, Plaintiff's 2018 Wage and Hour Records.

25. Around May 2018, Defendants switched to an electronic time keeping system that recorded the precise duration of on-the-clock time worked by Plaintiff each shift. *See* **Exhibit 3**, Plaintiff's 2018 Wage and Hour Records, Defendants 0131-0142.

26. For the pay periods post-May 2018, Defendants only produced time sheets for the following weeks: May 14 – 20, 2018, May 21 – 27, 2018, May 27, June 3, 2018, June 4 – 10, 2018, June 11 – 17, 2018, June 18 – 24 2018, June 25 – July 1, 2018, July 2 – 8, 2018, July 9 – 15, 2018, July 16 – 22, 2018, July 25 – 29, 2018, July 30 – Aug. 5, 2018. *See* **Exhibit 3**, Plaintiff's 2018 Wage and Hour Records, Defendants 0131-0142. Defendants have only produced corresponding time sheets for the pay periods July 9 – 15, 2018, and July 16 – 22, 2018. *Id*. at Defendants 0129-0130.

27. Prior to the implementation of the electronic time keeping system, Defendants improperly rounded Plaintiff JUAN LOPEZ' hours down to the nearest whole hour, according to his scheduled shift. *See* **Exhibit 2**, Plaintiff's 2017 Wage and Hour Records; **Exhibit 3**, Plaintiff's 2018 Wage and Hour Records; **Exhibit 4**, Budhu Dep. 29:5-11, 43:16-44:11.

Dated: New York, New York
      July 12, 2024

Respectfully submitted,

LEE LITIGATION GROUP, PLLC

By:   */s/ C.K. Lee*
      C.K. Lee, Esq. (CL 4086)
      Lee Litigation Group, PLLC
      148 West 24th Street, Eighth Floor
      New York, NY 10012
      Tel: (212) 465-1188
      Fax: (212) 465-1181

      *Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*