**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JUAN LOPEZ, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

                Plaintiff,

                v.

THERMO TECH MECHANICAL, INC.,
GOWKARRAN BUDHU, and
SHANTI BUDHU

                Defendants.

**Case No.:** 1:20-cv-09113 (LTS)(BCM)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**


LEE LITIGATION GROUP, PLLC
C. K. Lee, Esq. (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...............................................................................................................1

ARGUMENT .......................................................................................................................1

    I.    PLAINTIFF'S RULE 56.1 STATEMENT IS LEGALLY SUFFICIENT ............. 1

    II.    PLAINTIFF SATISFIES THE EVIDENTIARY BURDEN UNDER *MT. CLEMENS* AND *SAIGON GRILL*......................................................................... 3

    III.    PLAINTIFF'S ALLEGATIONS OF UNPAID OVERTIME WORK ARE SUFFICIENT UNDER *LUNDY* ........................................................................ 5

    IV.    THERE IS NO GENUINE DISPUTE THAT PLAINTIFF PERFORMED UNPAID OVERTIME LABOR BETWEEN OCTOBER 30, 2017 AND MAY 18, 2018................................................................................................................ 6

    V.    DEFENDANTS' VIOLATIONS WERE WILLFUL, ENTITLING PLAINTIFF TO A THREE-YEAR LIMITATIONS PERIOD AND LIQUIDATED DAMAGES ................................................................................................................ 9

# **TABLE OF AUTHORITIES**

**CASES**

*Am. Legion Dep't of N.Y. v. United States,* 1993 U.S. Dist. LEXIS 8878 (N.D.N.Y. June 17, 1993) ............................................................................................................................................. 1
*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) .................................................. 3, 5, 6
*Brown v. Scriptpro, LLC,* 700 F.3d 1222 (10th Cir. 2012) ............................................................ 4
*Copantitla v. Fiskardo Estiatorio, Inc*., 788 F. Supp. 2d 253 (S.D.N.Y. 2011) ........................... 10
*Gordon v. Kaleida Health*, 299 F.R.D. 380 (W.D.N.Y. 2014) ...................................................... 8
*Herman v. RSR Sec. Servs. Ltd*., 172 F.3d 132 (2d Cir. 1999) ...................................................... 9
*Jeong Woo Kim v. 511 E. 5th St., LLC*, 133 F. Supp. 3d 654 (S.D.N.Y. 2015) .......................... 10
*Joza v. WW JFK LLC*, 2010 U.S. Dist. LEXIS 94419 (E.D.N.Y. Sep. 9, 2010) ........................... 3
*Keun-Jae Moon v. Joon Gab Kwon*, 248 F.Supp.2d 201 (S.D.N.Y. Sept. 9, 2002) ....................... 9
*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011) ........................................................ 5
*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013) ........................ 5
*Reich v. South New England Telecomm. Corp*., 121 F.3d 58b (2d Cir. 1997) .............................. 3
*Rivera v. Ndola Pharm. Corp*., 497 F. Supp.2d 381 (E.D.N.Y. 2007) .......................................... 3
*Seever v. Carrols Corp.*, 528 F. Supp. 2d 159 (W.D.N.Y. 2007) ................................................... 3
*White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012) .................................... 4
*Yang v. ACBL Corp*., 427 F. Supp.2d 327 (S.D.N.Y. 2005) ......................................................... 3
*Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240 (S.D.N.Y. 2008) .......................................... 3

**STATUTES**

29 U.S.C. § 255(a) ......................................................................................................................... 9

**RULES**

Fed. R. Civ. P. 23 .......................................................................................................................... 2
Fed. R. Civ. P. 56(a) ..................................................................................................................... 1
Fed. R. Civ. P. 56.1 ............................................................................................................... 1, 7, 8

**INTRODUCTION**

Plaintiff submits this Reply Memorandum in response to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Def. Mem."). Plaintiff alleged that Defendants are liable under the Fair Labor Standards Act ("FLSA"), for failing to pay Plaintiff for all overtime hours worked. In the instant case, Plaintiff was subject to underpayment of overtime wages in two consecutive periods of employment: (i) between October 30, 2017, and May 18, 2018, when Plaintiff recorded his time manually with handwritten timesheets; and (ii) between May 18, 2018 and the end of his employment by Defendants, when Plaintiff entered his time with an electronic timekeeping system.

Here, Plaintiff seeks summary judgment on three points. First, there is no genuine question of material fact that Defendants are liable to Plaintiff for failing to compensate all his overtime hours in the period up through May 18, 2018. Second, there is no genuine question of material fact that this failure was willful, entitling Plaintiff to a three-year limitation period and liquidated damages. Finally, there is no genuine question of material fact that Defendants are jointly and severally liable to Plaintiff as his employers (which Defendants do not even contest in their opposition papers). As detailed below, Defendants' various arguments against granting summary judgment are all meritless.

**ARGUMENT**

**I.   PLAINTIFF'S RULE 56.1 STATEMENT IS LEGALLY SUFFICIENT**

Defendants argue that Plaintiff's Rule 56.1 Statement is "fatally deficient" for failure to include an affidavit submitted by Plaintiff. *See* Def. Mem. at 5-6. However, F.R.C.P. 56(a) provides that a party seeking judgment on a claim may move for summary judgment "with or without supporting affidavits." S*ee also Am. Legion Dep't of N.Y. v. United States,* 1993 U.S. Dist. LEXIS 8878 (N.D.N.Y. June 17, 1993). So, there is no per se rule that a party seeking summary

1

judgment must submit an affidavit regardless of the circumstances and evidence provided. Here, Plaintiff has relied on documents provided or produced by Defendants, which are sufficient to support his motion for summary judgment. These documents were obtained by Plaintiff's counsel from Defendants through their legal counsel. The only personal knowledge relevant to these would be that of Plaintiff's counsel, C.K. Lee, who was therefore the proper party to authenticate the documents.

Moreover, in previous briefings, Plaintiff has already attested twice to his personal knowledge of Defendants' illegal policy of improper rounding and time-shaving, including its specific effects on him. This is plainly stated in Plaintiff's Declaration in Support of Motion for Conditional FLSA Collective Certification ("216(b) Decl."), filed on May 19, 2021(Dkt. No. 27). *See* Second Declaration of C.K. Lee ("Lee Decl. II"), **Exhibit 7**. He has also attested to Defendants' practices in his Declaration in Support of Motion for Class Certification Pursuant to Fed. R. Civ. P. 23., filed on December 1, 2023 (Dkt. No. 119). *See* Lee Decl. II, **Exhibit 8.**

In both Declarations, Plaintiff attests that, up until around May 2018, he was required to fill in his timesheets manually and was not permitted to record that time in increments smaller than half an hour. So, even though Plaintiff would typically be required to begin working 5-10 minutes before his scheduled start time, and finish working 10-25 minutes after the end of his scheduled shift, he would be compensated only for his scheduled shift. *See* **Exhibit 7**, ¶¶ 3-4. The handwritten timesheets submitted with this motion, *see* **Exhibit 2**, are entirely consistent with this testimony, as these show him beginning and ending work exactly on the hour, day after day. Needless to say, this does not occur naturally with non-robotic humans. The unnatural regularity self-evidently reflects Defendants' policies rather than the actual times Plaintiff began and ended working. One does not observe the same strict regularity after Defendants transitioned to an electronic

timekeeping system, *see* **Exhibit 3**, which is only one among several reasons why the manual timesheets cannot be taken at face value.

## II. PLAINTIFF SATISFIES THE EVIDENTIARY BURDEN UNDER *MT. CLEMENS* AND *SAIGON GRILL*

It is clear that Plaintiff has met his evidentiary burden as first promulgated in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) and then further elaborated in *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240 (S.D.N.Y. 2008). In *Yu G. Ke*, the court explained:

> In determining whether the plaintiffs received the minimum wage and overtime, we start with the premise that the employer is obligated to maintain records of wages and hours. *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946). In the absence of documentation, the employee may rely on his own recollection to meet his initial burden, *see, e.g., Rivera v. Ndola Pharm. Corp.*, 497 F. Supp.2d 381, 388 (E.D.N.Y. 2007); *Yang v. ACBL Corp.*, 427 F. Supp.2d 327, 335-36 (S.D.N.Y. 2005), in which case the employer must proffer evidence sufficient to rebut that recollection. *See Anderson*, 328 U.S. at 688. Plaintiff's proof need not be precise, and if the court finds the testimony credible, it may make an award based on an approximation of the employee's losses. *E.g., Reich v. South New England Telecomm. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997).

*Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 254-55 (S.D.N.Y. 2008).

Defendants dispute that this standard is applicable here because "where an employee's time records are inaccurate 'solely due to the [employee]'s deliberate failure to accurately report the time she worked,' … *Mt. Clemens* does not apply, and that employee must 'provide specific facts establishing when, and for how long, she performed the off-the-clock tasks for which she now seeks compensation.'" Def. Mem. at 7 (quoting *Joza v. WW JFK LLC*, 2010 U.S. Dist. LEXIS 94419 (E.D.N.Y. Sep. 9, 2010)). In further support of their position, Defendants cite *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159 (W.D.N.Y. 2007), where the court found that the burden did not shift under *Mt. Clemens* because, as Defendants put it, the "plaintiffs had the ability to record the time on the timesheet." Def. Mem. at 7. The other cases Defendants cite involve a plaintiff unilaterally electing not to enter in their hours. *See Brown v. Scriptpro, LLC,* 700 F.3d 1222 (10th

3

Cir. 2012) ("plaintiff could have easily entered his hours"); *see also White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012) (finding "[n]o evidence that [defendants] discouraged employees from reporting time worked during meal breaks[…]").

Here, however, Plaintiff exercised *no control* over his time sheets, because the record reveals that employees were *essentially instructed to reproduce their schedules on their time sheets*, rather than stating their actual beginning and end times. In his deposition, Defendant Gowkarran Budhu testified as follows:

> **Q.** So I believe people, when they're filling out their time records, they were required to provide rounded times. Is that accurate?
> **MR. MIZRAHI:** Objection to the form of that question. Tony, you may respond.
> **THE WITNESS:** No. *Your shift is given to you*. You start at 8:00 and end at 4:30, for example. You're going to be at, you know, Battery Tunnel bathroom job or you're going to be at parks and recreation job. You show up at that time. You leave at that time. *And that should be on your time sheet*.

**Exhibit 4,** Deposition Transcript of Gowkarran Budhu ("Budhu Dep.") at 25:5-17 (emphasis added).

> **Q.** Now do you see that his hours are rounded to the nearest whole hour?
> **MR. MIZRAHI**: Objection to the form of that question. Tony, you may respond.
> **A**. *That's his shift*. That's what time he *should* be there, and that's what time he *should* be leaving there.

Id. at 26:1-8 (emphasis added).

> **Q**. But do you agree an individual should be logging in their actual time started? For example, they might have gotten in a minute or two early, right, and started working. Do you think that they should be clocking in those times?
> **MR. MIZRAHI**: Same objection. Tony, you may respond.
> **A.** They should clock in when they're *supposed to be there*, just like a time clock.

Id. at 27:6-15 (emphasis added).

This testimony clarifies that Plaintiff and other employees were prohibited from writing anything down in their timesheets other than the times their schedule said they *should* have been working—as opposed to the time they *actually* worked. The "shift [that] is given to you" is "what

4

should be on your time sheet." As can be gleaned by the unnatural, indeed robotic, on-the-hour time entries submitted by Plaintiff—"just like a time clock," as Defendant Budhu says—Plaintiff followed Defendants' policy to the letter, reproducing his schedule on his time sheet rather than recording actual time worked. Given that Plaintiff's time entries were precisely what Defendants demanded they be, Defendants cannot now argue that Plaintiff willfully compromised the accuracy of their records and that they are, therefore, relieved of the burden of rebutting Plaintiff's recollections that he worked unpaid overtime hours, per *Mt. Clemens*. Plaintiff's time sheets are not accurate representations of actual hours worked, but "where the employee's falsifications were carried out at the instruction of the employer or employer's agents, the employer cannot be exonerated by the fact that the employee physically entered the erroneous hours into the timesheets." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011).

### III. PLAINTIFF'S ALLEGATIONS OF UNPAID OVERTIME WORK ARE SUFFICIENT UNDER *LUNDY*

Defendants argue that Plaintiff has failed to "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." Def. Mem. at 8 (quoting *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). This is self-evidently false. A quick glance at **Exhibit 2** and **Exhibit 3** reveals many weeks where Defendants' own records show Plaintiff working at least 40 hours, usually significantly more. These records are reproduced in the following chart:

| Month and year | Workweek | Hours worked per week |
|---|---|---|
| January 2017 | January 2017: January 2 – 6; January 16 – 20 | 40, 40 |
| May 2017 | All weeks of May** | 54, 48, 48, 64 |
| June 2017 | All weeks of June | 52.5, 53, 67, 60 |
| July 2017 | July 10 – 14; July 17 – 21; July 24 – 29 | 49, 43.5, 46.5 |
| August 2017 | All weeks of August | 46, 40, 43, 40 |
| September 2017 | September 18 – 22; September 25 – 29 | 52, 61 |
| October 2017 | October 2 – 6; October 16 – 20 | 65, 74 |
| November 2017 | November 27 – December 1, 2017 | 54 |

5

| December 2017 | December 4 – 8; December 11 – 15; December 18 – 24 | 67, 56, 72 |
| January 2018 | January 22 – 26 | 61 |
| February 2018 | February 5 – 9; February 12 – 16; February 26 – March 3 | 48, 55, 48 |
| March 2018 | All weeks of March | 64, 44.5, 40, 48 |
| April 2018 | All weeks of April | 40, 46.5, 40, 48 |

\*\* Workweek of May 14 – May 21 not provided.

*See* **Exhibit 2,** Plaintiff's 2017 Wage and Hour Records; *see* **Exhibit 3,** Plaintiff's 2018 Wage and Hour Records.

As discussed above, Plaintiff has alleged that, in addition to these recorded hours, which are simply reproductions of his anticipated shifts, he was required to work 5-10 minutes before each shift and 10-25 minutes after each shift, time that he could not record and therefore went uncompensated. Given that Plaintiff was already working at least 40 hours a week apart from this off-the-clock work, it is clear that the unpaid hours were indeed overtime hours, thus satisfying the *Lundy* pleading standards.

### IV. THERE IS NO GENUINE DISPUTE THAT PLAINTIFF PERFORMED UNPAID OVERTIME LABOR BETWEEN OCTOBER 30, 2017 AND MAY 18, 2018

Given that the *Mt. Clemens* standard applies, it is Defendants' burden to rebut Plaintiff's allegations that he daily performed 15-35 minutes of overtime work for which he was never compensated. However, Defendants both *have not* and *cannot* produce any evidence rebutting these allegations. Defendants cannot provide such evidence because they have admitted that their "timesheets" are merely reproductions of employee schedules, because employees were instructed to make them that. That is, Defendants' policies *ensured* that there would be no record of actual time worked and, hence, no record that could substantiate Plaintiff's allegations of unpaid overtime. Given that this situation is entirely of Defendants' own making, the Court must credit those allegations as established fact. In addition, common sense dictates that Defendants' records could not possibly be accurate representations of time worked, since the exigencies of real-world

6

environments make it impossible for employees to operate "just like a time clock," as Defendant Budhu insists they must. Sometimes, it is a busy day and employees must begin early to complete the day's tasks. Sometimes, a task that must be completed that day will require employees to work 10-25 minutes beyond their scheduled shifts.

Moreover, Defendants do not actually attempt to deny Plaintiff's allegation that he performed unpaid work outside his official schedule. Plaintiff's Rule 56.1 Statement of Material alleged the following:

> During the relevant time period, Defendant GOWKARRAN BUDHU only permitted employees to log in their scheduled shift start time and scheduled shift end time, rather than actually putting down the exact times they worked., even if employees arrived and worked slightly before their scheduled shift or worked slightly after their scheduled shift.

*Id*. ¶ 16

> During the relevant time period, Defendant GOWKARRAN BUDHU, Defendants only compensated employees for their scheduled hours and not their actual time worked if they clocked in before their shift started or if they clocked out after their shift ended.

*Id*. ¶ 17.

Defendants' response to both allegations, excluding citations, is as follows:

> **Response:** Consistent with Thermo Tech's written policies, summarized in the Employee Manual, all non-exempt employees are responsible for accurately recording all of their time worked (including any overtime)….
>
> Consistent with Thermo Tech's written policies, summarized in the Employee Manual, all off-the-clock work is strictly prohibited, and is considered noncompensable. …

Dkt. No. 140 ¶¶ 16-17

First, Defendants do not actually deny the allegations and instead change the subject from Defendants' actions to employees' responsibilities as defined in the employee handbook, which tells us nothing about what actually transpired at Defendants' workplaces. Second, Defendants'

7

characterization of those responsibilities—as involving "accurately recording all of their time worked"—is flatly contradicted by the deposition testimony quoted above, according to which the "shift [that] is given to you" is "what should be on your time sheet." Employees are required to write down the time when they "should" begin and end work, not the time when they actually did so. Finally, Defendants conclude their response by admitting to a flatly illegal policy according to which off-the-clock work is categorically noncompensable. Employers may, of course, prohibit off-the-clock work, but they must still compensate any work that they knew or should have known was taking place, even if off-the-clock. *See Gordon v. Kaleida Health*, 299 F.R.D. 380, 392 (W.D.N.Y. 2014) ("Constructive knowledge can be imputed to the employer when it has reason to believe that its employee is working beyond his shift.").

Defendants thus (a) ensured that some of the work Plaintiff performed would be off-the-clock, by requiring him (and other employees) to just reproduce his predetermined work schedules in his time records, and (b) refused to compensate the off-the-clock work as a matter of policy. *At no point do Defendants actually assert that the time sheets submitted by Plaintiff are accurate representations of the time he actually worked*, which they could not do with a straight face, given that actual human beings and the situations in which they find themselves are almost never so robotically consistent. Instead, Defendants either change the subject to their written policies or blame Plaintiff for inaccuracies fostered by those policies. Given these responses, Plaintiff's allegations must be credited and summary judgment must be granted.

Nor do Defendants ever deny Plaintiff's allegation that "Defendants did not maintain records to demonstrate the precise start and end times worked by Plaintiff each shift." Plaintiff's Rule 56.1 Statement ¶ 19. Instead of denying this and, correspondingly, asserting that the records in **Exhibit 2** and **Exhibit 3** are accurate, Defendants' Counter-Statement just throws out the same

8

stock responses quoted above, adding only, "Thermo Tech maintained, *inter alia*, payroll records, time keeping records, sign-in, sign-out sheets, text messages, and emails – which accurately capture the performance of compensable work of its employees." Dkt. No. 140, ¶ 20. This is technically true under Defendants' unlawful definition of compensable work. Since Defendants have erroneously determined that off-the-clock work is *per se* noncompensable, the time sheets, by definition, "capture the performance of compensable work" as Defendants understand it. But the issue on the instant motion is whether the time sheets capture all compensable work *as the law understands it*. Defendants' admissions clarify that they do not.

### V. DEFENDANTS' VIOLATIONS WERE WILLFUL, ENTITLING PLAINTIFF TO A THREE-YEAR LIMITATIONS PERIOD AND LIQUIDATED DAMAGES

The FLSA provides for a two-year statute of limitations on actions to enforce its provisions. *See* 29 U.S.C. § 255(a). However, when the "cause of action aris[es] out of a willful violation," the limitations period is extended to three years. *Id.*; *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999). In order to determine that a defendant's violation of the FLSA was willful, the court must find that a defendant "either knew or showed reckless disregard for whether the conduct was unlawful under [the] FLSA." *Keun-Jae Moon v. Joon Gab Kwon*, 248 F.Supp.2d 201, 231 (S.D.N.Y. Sept. 9, 2002).

Here, it is clear that, at a minimum, Defendants displayed reckless indifference for the requirements of the FLSA. First, as noted above, Defendants have admitted to the unlawful policy of deeming off-the-clock work categorically non-compensable, when the law requires that such work be compensated if the employer knows or has reason to know it is taking place. Second, Defendants have also acknowledged time-keeping protocols that ensure time sheets will simply be reproductions of predetermined employee schedules, thus preempting the generation of any records that would allow Defendants to verify that employees are, in fact, being properly

9

compensated. These are not the policies of an employer that scrupulously makes its best efforts to comply with the FLSA.

Defendants cannot argue that they honestly believed they were acting in compliance with the FLSA because "[t]he employer bears the burden of proving good faith and reasonableness by 'show[ing] that it took active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them.'" *Jeong Woo Kim v. 511 E. 5th St., LLC*, 133 F. Supp. 3d 654, 667 (S.D.N.Y. 2015). Here, there have been no active steps taken. Defendant Budhu has admitted that he was responsible for ensuring that employees were properly paid, and he has also admitted that he does not have a law or accounting degree. *See* Def. 56.1 Counter-Statement ¶¶ 13, 15. As to whether he ever consulted an attorney regarding wage and hour compliance, he can only state that he "*may have consulted an attorney before implementing the Employee manual.*" *Id*. ¶ 14 (emphasis added). Even if this happened, that would not be enough to establish good faith under the FLSA. *See Copantitla v. Fiskardo Estiatorio, Inc*., 788 F. Supp. 2d 253, 316-317 (S.D.N.Y. 2011) ("Defendants point to no advice that the accountant with whom Ziotas consulted gave them that would have led them to think that that either their failure to inform employees that they were taking a tip credit or their failure to calculate overtime properly were legal.").

Dated: New York, New York  
      September 26, 2024

Respectfully submitted,

By:   */s/ C.K. Lee*  
      C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**  
C.K. Lee (CL 4086)  
148 West 24th Street, 8th Floor  
New York, NY 10011  
Tel: (212) 465-1188  
Fax: (212) 465-1181  
*Attorneys for Plaintiff,*  
*FLSA Collective Plaintiffs, and the Class*